1  JANE DOE
2  c/o Secretary of State, Safe at Home
3  P.O. Box 1198
   Sacramento, CA 95812
4

5

6

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
8  **SAN JOSÉ DIVISION**

9  JANE DOE, AN INDIVIDUAL,                CASE NO.: 25-CV-03490-PCP-NMC

10              PLAINTIFF,
                                           **PLAINTIFF JANE DOE'S**
11     V.                                  **OPPOSITION TO STANFORD,**
                                           **FENTON, AND SMITH'S**
12  JASON A. SMITH, ET AL.                 **MOTION TO DISMISS THE**
                                           **COMPLAINT WITH NO LEAVE**
13                                         **TO AMEND**
14

15

16              DEFENDANTS.               Hearing Date: September 4, 2025

17                                        Time: 10:00 a.m.

18                                        Courtroom: 8

19                                        Complaint Filed: April 21, 2025

20                                         Before the Honorable P. Casey Pitts

21

22

23         **COMES NOW** the Plaintiff JANE DOE and hereby files this Opposition to the
24  Notice of Motion and Motion to Dismiss the Plaintiff's Complaint with No Leave to Amend,
    filed by Defendants The Board of Trustees of the Leland Stanford Junior University (sued as
25  Stanford University Department of Safety) ("Stanford"), Jason A. Smith, and Eric Fenton (the
    "Stanford Defendants" or "Defendants").
26

27

28

## TABLE OF CONTENTS

Page

I.    STATEMENT OF ISSUES TO BE DECIDED……………………………………………1

II.   PREFACE, INTRODUCTION, CURRENT POSTURE.…………………………… 1-3

III.  ARGUMENT

a.  Preliminary Matters and Opposing Counsel's Overarching Arguments

    i.  As a Preliminary Matter, the Court Should Ignore the Opposing Counsel's Meritless and Inflammatory Remarks about the Plaintiff's Character and Her *Ad Hominem* Attacks against the Plaintiff's Person and Should Admonish the Counsel to Center her Pleadings on the Law……………………………………………………………3-5

    ii.  Although Opposing Counsel Alleges to be Taking the Allegations of the Complaint as Factually True, as Required by Case Law, She Persistently Attempts to Dispute the Factual Allegations of the Complaint…………………………………………5-7

    iii.  The Reasonable Person Standard is a Person in the Same Shoes of the Plaintiff and is Not Isomorphic to Opposing Counsel or the Defendants…………………………7, 8

b.  Standard for Motion to Dismiss……………………………………………8-9

c.  Plaintiff Has Plead Sufficient Facts to Establish Standing to Bring this Action, Indicating Multiple Injuries Traceable to Defendants' Actions

    i.  Ms. Doe was Seized, Arrested, or was in Custody……………………………… 9-14

    ii.  Smith's Deprivation of the Plaintiff's Liberty was Not Consensual and Caselaw Supports that Conclusion…………………………………………………………… 14

    iii.  Ms. Doe Has Established that Defendant Smith's Actions Were in Retaliation of Her First Amendment Right to Petition and her First Amendment Right to Freely Express Herself…………………………………………………………… 14-17

    iv.  Ms. Doe's Fourteenth Amendment Claim Succeeds…………………………… 18

    v.  Ms. Doe's Fifth and Sixth Amendment Claims Succeed…………………………19-21

    vi.  Ms. Doe's "*Franks v. Delaware*" Claim Similarly Succeeds………………… 20-21

vii.  Ms. Doe Succeeds on a Section 1985 Claim under *Village of Willowbrook v. Olech*……………………………………………………………………………… 21

viii.  Fenton and Smith Are Employed by a Private University and thus Cannot Enjoy Qualified Immunity (or Good Faith Immunity) and They Fail under the *Lugar* and *Filarsky* Test……………………………………………………………… 21-27

ix.  Even if Smith and Fenton Enjoyed Qualified Immunity, They Fail under the *Harlow* Test…………………………………………………………………………27-28

x.  Ms. Doe Generally Succeeds on Her State Law Claims………………………… 28

xi.  Ms. Doe's *Respondeat Superior* and Canton Claim……………………………… 29

xii.  Amendment, if Needed, Would Not be Futile………………………………..29-30

IV.      CONCLUSION……………………………………..…...…………………………… 30

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

## TABLE OF AUTHORITIES

Page

### Cases

*Akhtar v. Mesa,*
 698 F.3d 1202 (9th Cir. 2012) …………………………………………… 29

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009) …………………………………………… 1, 8, 20

*Auto Equity Sales v. Superior Court*
 57 Cal.2d 450 (1962) …………………………………………10

*Barnett v. Centoni*
 31 F.3d 813 (9th Cir. 1994) …………………………………..… 6, 8

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007) …………………………………..…………….. 1, 29

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*
 323 F.3d 1198 (9th Cir. 2003) ………………………………… 18

*Bostock v. Clayton County* (2020)
 590 U.S. 644……………………………………………………… 21

*Boyle v. Torres*
 756 F. Supp. 2d 983 (N.D. Ill. 2010) ……………………………… 21

*Bracken v. Okura*
 869 F.3d 771 (9th Cir. 2017) …………………………………… 22, 24, 26

*Brendlin v. California*
 551 U.S. 249 (2007) ………………………………………….. 11

*Bretz v. Kelman*
 773 F.2d 1026 (9th Cir. 1985) ………………………………… 18

*Brewer v. Williams*
 430 U.S. 387 (1977) ………………………………….…...…… 20

*Brower v. Cnty. of Inyo*
 489 U.S. 593 (1989) ……………………………………… 9

*Brunette v. Humane Society of Ventura County*

294 F.3d 1205 (9th Cir. 2002) …………………………………………………… 22

*Byars v. United States*

273 U.S. 28 (1927) ………………………………………………………… 17

*Byrd v. Phoenix Police Dep't*

885 F.3d 639 (9th Cir. 2018) …………………………………..…………… 8

*Calhoun v. Stahl*

254 F.3d 845, 845 (9th Cir. 2001) ……………………………………..……… 3

*California v. Beheler*

463 U.S. 1121 (1983) ……………………………………………..……… 12, 13, 14

*California v. Hodari D.*

499 U.S. 621 (1991) ……………………………………..………….. 1, 14

*Cato v. United States*

70 F.3d 1103 (9th Cir. 1995) ……………………………………..……… 29

*Chavez v. Martinez*

538 U.S. 760 (2003) ………………………………………………..…….. 19

*Cooper v. Dupnik*

963 F.2d 1220 (9th Cir. 1992) ……………………………………………… 19

*Cooper v. Pickett*

137 F.3d 616 (9th Cir. 1998) …………………………………..…… 6, 15

*Crawford-El v. Britton*

523 U. S. 574 (1998) ………………………………………………… 15

*Dees v. County of San Diego*

960 F.3d 1145 (9th Cir. 2020) ……………………………………...…… 9

*Denton v. Hernandez*

504 U.S. 25 (1992) ………………………………………………… 7, 30

*Dred Scott v. Sandford*

60 U.S. (19 How.) 393 (1857) …………………………………..…… 4

*Ellison v. Brady*

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH
NO LEAVE TO AMEND

924 F.2d 872 (9th Cir. 1991) ……………………………………...………... 7

*Empress LLC v. City of San Francisco*

419 F.3d 1052 (9th Cir. 2005) ……………………...……………….. 29

*Escobedo v. Illinois*

378 U.S. 478 (1964) ……………………………………………………… 20

*Estelle v. Gamble*

429 U.S. 97 (1976) …………………………………………………… 6, 8

*Evans v. McKay*

869 F.2d 1341 (9th Cir. 1989) ……………………………………… 29

*Faretta v. California*

422 U.S. 806 (1975) ……………………………………………………... 4

*Filarsky v. Delia*

566 U.S. 377 (2012) ………………………………………… 21, 24, 25, 26

*Florida v. Bostick*

501 U.S. 429, 437 (1991) ……………………………………………… 9

*Freeman v. City of Santa Ana*

68 F.3d 1180 (9th Cir. 1995) ……………………………………… 18

*Galbraith v. Cnty. of Santa Clara*

307 F.3d 1119 (9th Cir. 2002) …………………………………… 29

*Giordenello v. United States*

357 U.S. 480 (1958) ………………………………………...……… 17

*Gonzaga University v. Doe*

536 U.S. 273 (2002) ……………………………………………………… 3

*Graham v. Connor*

490 U.S. 386 (1989) …………………………………………………… 9

*Gumataotao v. Dir. of Dep't of Revenue & Taxation*

236 F.3d 1077 (9th Cir. 2001) …………………………………… 6, 15

*Hall v. City & Cnty. of Honolulu*

2025 U.S. Dist. LEXIS 34369, 2025 WL 623811 …………………….……… 18

*Hargrove v. City of Philadelphia*

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH
NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

No. CIV. A. 93-5760, 1995 WL 584490, at *2 (E.D. Pa. Oct. 3, 1995) ……………... 21

*Harlow v. Fitzgerald*

457 U.S. 800 (1982) ……………………………………………………...… 1, 27

*Harper v. Franklin & Marshall Coll.*

No. 10-2647, 2011 WL 2746644, at *5 (E.D. Pa. July 14, 2011) ……………...…....… 21

*Hart v. O'Brien*

127 F.3d 424, 449 (5th Cir. 1997) …………………………………………...…… 21

*Hartman v. Moore*

547 U.S. 250 (2006) …………………………………………………… 1, 15, 16, 17

*Hebbe v. Pliler*

627 F.3d 338, (9th Cir. 2010) ………………………………………………… 8

*Henderson v. Fisher*

631 F.2d 1115 (3d Cir. 1980) ……………………………………………..…… 21

*Hervey v. Estes*

65 F.3d 784 (9th Cir. 1995) ………………………………...…… 20, 28

*Hess v. Garcia*

72 F.4th 753 (7th Cir. 2023)  …………………………………..…… 10

*Howerton v. Gabica*

708 F.2d 380 (9th Cir. 1983)  …………………………………...………… 23

*Hughes v. Pair*

46 Cal. 4th 1035 (2009) ………………………………….………… 28

*Jacobsen v. Filler*

790 F.2d 1362 (9th Cir. 1986) …………………………………..……… 5

*Jensen v. Lane Cty.*

222 F.3d 570 (9th Cir. 2000) ………………………...…… 22, 24, 26

*Johnson v. Knowles*

113 F.3d 1114 (9th Cir. 1996) ……………………………………………… 22

*Johnson v. Univ. of San Diego*

No. 10CV0504-LAB (NLS), 2011 WL 4345842, at *7 (S.D. Cal. Sept. 16, 2011) ….. 21

vii

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

*Kentucky* v. *King*
        563 U. S. 452 (2011) ……………………………………………..…… 7

*Kirtley v. Rainey*
        326 F.3d 1088 (9th Cir. 2003) ……………………………………..…… 22

*Kisela v. Hughes*
        584 U.S. 100 (2018) ……………………………………………….…… 28

*Klunder v. Brown Univ.*
        No. 10-410 ML, 2011 WL 2790178, at *7 (D. R.I. Jul. 13, 2011) …………………..…… 21

*Lacey v. Maricopa Cnty.*
        693 F.3d 896 (9th Cir. 2012) …………………………………….…….. 18

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*
        507 U.S. 163 (1993) ………………………………………………….. 29

*Lee v. City of Los Angeles*
        250 F.3d 668 (9th Cir. 2001) …………………………………...…….. 29

*Lindke v. Freed*
        601 U.S. 187 (2024) …………………………………………….…… 16

*Liteky v. United States*
        510 U.S. 540, 548, (1994) …………………………………………….. 7

*Lugar v Edmondson Oil Co., Inc*
        457 U.S. 922 (1982) …………………………………………. 21, 22, 23, 24

*Lyng* v. *Castillo*
        477 U. S. 635 (1986) ……………………………………………….. 8

*Marks v. United States*
        430 U.S. 188 (1977) ……………………………………………….. 19

*Massachusetts Bd. of Retirement* v. *Murgia*
        427 U. S. 307 (1976) ……………………………………………….. 8

*McGinest v. GTE Service Corp.*
        360 F.3d 1103 (9th Cir. 2004) …………………………………..…….. 8

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*
        192 F.3d 1283, (9th Cir. 1999) …………………………………….…… 28

*Mt. Healthy City School District Board of Education v. Doyle*
    429 U.S. 274 (1977) …………………………………………………... 15, 16

*Nathanson v. United States*
    290 U.S. 41 (1933) …………………………………………………… 17

*Nieves v. Bartlett*
    587 U.S. 391 (2019) …………………………………………...…. 1, 15, 16

*O'Keefe v. Van Boening*
    82 F.3d 322 (9th Cir. 1996) ……………………………………..……. 16

*Oregon v. Mathiason*
    429 U.S. 492 (1977) ………………………………….…………… 12, 14

*Owasso Independent School District v. Falvo*
    534 U.S. 426 (2002) …………………………………..………...………. 3

*Park v. Thompson*
    851 F.3d 910 (9th Cir. 2017) …………………………………..…… 19

*Parrino v. FHP, Inc.*
    146 F.3d 699 (9th Cir. 1998) …………………………………..…… 15

*Pearson v. Callahan*
    555 U.S. 223, 231 (2009) ……………………………………… 23, 27

*Pennsylvania v. Muniz*
    496 U.S. 582 (1990) ………………………………………………… 4

Phillips v. Osborne
    444 F.2d 778 (9th Cir. 1971) ………………………………………..23

*Pierson v. Ray*
    386 U.S. 547 (1967) ……………………………………..……… 23

*Prescott v. Rady Children's Hospital San Diego*
    265 F. Supp. 3d 1090 (SD Cal. 2017) ……………………………………..21

*Rhode Island v. Innis*
    446 U.S. 291 (1980) ………………………………………….……… 20

*Richardson v. McKnight*
    521 U.S. 399 (1997) …………………………….…………… 24, 25, 26

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH
NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

*Rizzo v. Dawson*
    778 F.2d 527 (9th Cir. 1985) ………………………………………..…… 30

*Rodriguez v. Steck*
    795 F.3d 1187 (9th Cir. 2015) ……………………………………….……. 29

*Salmon v. Blesser*
    802 F.3d 249 (2th Cir. 2015) …………………………………..……. 10

*San Antonio Independent School Dist.* v. *Rodriguez*
    411 U. S. 1, 28 (1973) ……………………………..……………. 4

*Sanderlin v. Dwyer*
    116 F.4th 905 (9th Cir. 2024) ……………………………………… 6, 10, 11

*Scott v. Nw. Univ. Sch. of Law*
    No. 98 C 6614, 1999 WL 134059, at *3, *5–6 (N.D. Ill. Mar. 8, 1999) …………… 21

*Seidner v. de Vries*
    39 F.4th 591 (9th Cir. 2022) ………………………………………..… 9

*Stevens v. Martinez*
    2025 U.S. Dist. LEXIS 113183 (E.D. Cal. June 13, 2025)…………………….. 21

*Sutton v. Providence St. Joseph Medical Center*
    192 F.3d 826 (9th Cir. 1999) ………………………………………… 22

*Tay v. Dennison*
    457 F. Supp. 3d 657 (S.D.Ill. 2020)………………………………………21

*Terry v. Ohio*
    392 U.S. 1 (1968) ……………………………………………. 1, 9, 10, 14

*Torres v. Madrid*
    592 U.S. 306 (2021) ……………………………… 1, 9, 10, 11, 14, 15, 30

*United States v. Carey*
    929 F.3d 1092 (9th Cir. 2019) …………………………………………. 7

*United States v. Chan-Jimenez*
    125 F.3d 1324 (9th Cir. 1997) …………………………………………. 9

*United States v. Delaney*

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH
NO LEAVE TO AMEND
Case No. 5:25-CV-03490-PCP-NMC

955 F.3d 1077, 446 U.S.  App. D.C. 272 (D.C. Cir. 2020) …………………..……… 10

*United States v. Smith*

794 F.3d 681 (7th Cir. 2015) …………………………………………………… 10

*Village of Willowbrook v. Olech*

528 U.S. 562 (2000) ………………………………………………………… 21

*Villanueva v. California*

986 F.3d 1158 (9th Cir. 2021) …………………………………..………… 12

*Watison v. Carter*

668 F.3d 1108 (9th Cir. 2012) …………………………………………… 8

*West v. Davis*

767 F.3d 1063 (11th Cir. 2014) ………………………………………… 10

*Wyatt v. Cole*

504 U.S. 158 (1992) ……………………………………………………… 24, 26

## Constitutions

United States Constitution

Amendment I ………………………………………………….. 14, 17

Amendment IV………………………………………………… 9, 14

Amendment V ………………………………………………… 19, 20

Amendment VI………………………………………………… 19, 20

Amendment XIV ……………………………………………… 17, 18

## Statutes and Codes

United States Code

Title 28, Section 1654…………………………………………………… 4

Title 42, Section 1983……………………………………………… *passim*

Title 42, Section 1985……………………………………………………21

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether the Plaintiff's Complaint complies with the heightened pleading standard as set in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
2. Whether the Plaintiff was seized or in custody within the meaning of *Terry v. Ohio*, 392 U.S. 1 (1968) (*Terry*), *California v. Hodari D.*, 499 U.S. 621 (1991) (*Hodari D.*), *Torres v. Madrid*, 592 U.S. 306 (2021) (*Torres*).
3. Whether the Plaintiff satisfies the actionable First Amendment retaliation by seizure test found in, *inter alia*, *Hartman v. Moore*, 547 U.S. 250 (2006) and *Nieves v. Bartlett*, 587 U.S. 391 (2019).
4. Whether the university defendants are entitled to qualified immunity or good faith immunity as those employed by a private university.
5. If university officer defendants are to be entitled to qualified immunity, whether they have satisfied the test found in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

### II.    PREFACE, INTRODUCTION, CURRENT POSTURE

In FRANTZ KAFKA's now-classic novel, DER PROZEß, the protagonist Josef K. is woken up to an unknown and unnamable encounter with two strange men. As he gets up and is about to gather his belongings, he is made to realize that he is under arrest. When he inquires as to why, he receives no answer. "Wir sind nicht dazu bestellt,"[1] says one of the men (8; 1995 Reclam ed.). "Das Verfahren ist nun einmal eingeleitet, und Sie werden alles zur richtigen Zeit erfahren[2]," continues he (8). Bewildered as any would be, and distressed by the message the men have carried, K. tries to comfort himself with the knowledge that 'he lives in a constitutional state, that peace reigns everywhere, that all laws are upheld,' and wonders to himself, 'who would dare to attack him in his home?' ("lebte doch in einem Rechtsstaat, überall herrschte Friede, alle Gesetze bestanden aufrecht, wer wagte, ihn in seiner Wohnung zu überfallen?" (10)). He, thus, demands an answer one more time: "Wie kann ich denn verhaftet sein, und gar auf diese Weise?"[3] (12).

---

[1] 'We were not sent to tell that to you' [Tr]. All translations from German to English are the Plaintiff's unless noted otherwise.
[2] 'The proceedings are now underway and you will find out everything at the right time' [Tr].
[3] 'How can I be under arrest, and in ways such as these?' [Tr].

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH
NO LEAVE TO AMEND

"Nun fangen Sie also wieder an" ['So now you start again'], scolds the guard (12), and continues, "Solche Fragen beantworten wir nicht" (12) ['We do not answer such questions.']. Still adamant for a response, K. proceeds to provide some 'papers' to the men and demands some paperwork ("Verhaftbefehl") justifying his arrest to be presented to him. "Du lieber Himmel!" (12) ['Good heavens!'] exclaims one of the men, telling K. that he is acting worse than a child ["Sie führen sich ärger auf als ein Kind" (12)). And he concludes: "Es gibt darin keinen Irrtum" ['There is no error in this'] (13). He assures K., "Unsere Behörde" ['our office,' or 'our authority'], 'does not seek the guilt in the population, but is, as the law says, attracted by the guilt and must send us guards.'[4] And the guard, sternly as one could be, proclaims, "Das ist Gesetz. Wo gäbe es da einen Irrtum?" ['That is the Law. Where could there be an error in it?'] (13). K. counters, "**Dieses** Gesetz kenne ich nicht" ['I do not know **this** law'] (13; emphasis added). And he continues, "**Es besteht wohl auch nur in Ihren Köpfen**" ['**It probably only exists in your heads**.'] (13; emphasis added). The guard retorts, "Sie werden es zu fühlen bekommen" (13) ['You will get to feel it [eventually]'].

If the Opposing Counsel's cherry-picked, misquoted, misattributed, and misrepresented case law truly imparts upon a case law in the Ninth Circuit where the events that preceded the Complaint are legally permissible—or, as Opposing Counsel solipsistically proclaims on behalf of the Judiciary, if these events are truly the trivialities (*de minimis*) with which the law does not concern itself (*non curat lex*), and if these events are not isomorphic to the events that Kafka's protagonist had to encounter, then this Nation's decline into Kafka-esque lawlessness is already complete and every person—every person—in these United States is simply one encounter with an armed bully that acts on behalf of and is sanctioned by the state away from having all of their liberties be subjected to arbitrary deprivation. Because we do not live in such a nation (**yet**), and because Opposing Counsel misrepresents the case law, as the Plaintiff shall illustrate *infra*, Stanford Defendants' Motion must be denied. Precisely because one needs an answer to the question, "Quis custodiet ipsos custodes?" (JUVENAL, SATURAE, Satire VI, lines 347–348) to be able to live peacefully in civil society and because the answer to that question is this Court, the Motion should be denied. To suggest otherwise is a solemn mockery of the laws of this Nation.

---

[4] "sucht doch nicht etwa die Schuld in der Bevölkerung, sondern wird, wie es im Gesetz heißt, von der Schuld angezogen und muß uns Wächter ausschicken" (13).

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

That having been established, the instant Complaint was filed by the Plaintiff on April 21, 2025; filed concurrently therein was a Motion for Leave of the Court to Proceed *In Forma Pauperis*. On April 22, 2025, this Court (The Honorable Virginia K. DeMarchi) granted, after having completed the necessary pre-screening process of complaints found in 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's Motion. *See*, Dkt No. 5 ("**Having reviewed** the Motion and the **Complaint**" (*Ibid.*; emphasis added.)) *See*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (*per curiam*) (finding that pre-screening of complaints is not only applicable to prisoners proceeding *in forma pauperis* but to all *pro se* parties attempting to take leave to appear *in forma pauperis*). On June 13, 2025, the Stanford Defendants filed the instant Motion to Dismiss.

## III.    ARGUMENT

### a.   Preliminary Matters and Opposing Counsel's Overarching Arguments

#### i.   As a Preliminary Matter, the Court Should Ignore the Opposing Counsel's Meritless and Inflammatory Remarks about the Plaintiff's Character and Her *Ad Hominem* Attacks against the Plaintiff's Person and Should Admonish the Counsel to Center her Pleadings on the Law

Rather than appropriately and **civilly** defending her clients, Opposing Counsel's defense strategy, rather, seems to be launching one *ad hominem* attack after another, hoping that her evident lack of cogent legal knowledge (and her kindergartner-level argumentation ability) will be blurred by such personal attacks. In a rare moment where Opposing Counsel perhaps shows (only transiently, however) a scintilla of legal knowledge, perhaps aware that there is no private cause of action arising from Family Educational Rights and Privacy Act of 1974, as established in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), Opposing Counsel proceeds to disclose in the Public Record information (enrollment status and grade level[5]) that must have been kept confidential by her clients under the forenamed Act. Opposing Counsel maintains that this piece of information is very crucial to this Court's adjudication (one that, she maintains, the Plaintiff occluded[6]). Why, one wonders? Because if our courts turn into the vision of the courts

---

[5] Pursuant to *Owasso Independent School District v. Falvo*, 534 U.S. 426 (2002), federal law classifies this piece of information as confidential.

[6] *See*, "Although she avoids saying so directly, [Ms.] Doe is an undergraduate [student] at Stanford" (Mot. to Dismiss, at p. 2; annotation added in brackets). Although the Plaintiff has not attended law school (yet) and will do so in a year or so, and, as such, is unsure if literacy is a

the Opposing Counsel's corrupt and repugnant understanding of the legal and juridical certainly maintains, courts' adjudication over disputes brought before them should *solely* depend on *who* appears before them, not the legal arguments they are able to produce. In a *Dred Scott-esque* fashion, Counsel maintains, then, that our federal courts should exclude or not take seriously arguments made by litigants belonging to certain demographic traits (in the instant case, *pro se* litigants or those who have not been formally trained in law, but, of course, the exclusion criterion is one that is changeable by the Opposing Counsel's daily whims and desires). *See*, *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857) (finding that no Black[7] American has standing to appear before a federal court). In the Opposing Counsel's corrupt mind, 28 U.S.C. § 1654 should be annulled; the entire common law history that allowed *pro se* litigants the right to appear for more than 250 years should be set aside, and, certainly, our Supreme Court in *Faretta v. California*, 422 U.S. 806 (1975) was wrong, gravely wrong. ["In the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation" (*Id.*, at p. 812).]. Should someone take those justices aside and enlighten them with the superb legal vision of the Opposing Counsel?

What is more, our courts should turn into simple *salons*[8] of early modern France, where *only* the wealthy—*id est,* those that can afford Counsel's 3-figure hourly billable—and the

---

required trait for law school attendance, the Plaintiff did not 'avoid' saying anything directly. *See*, "Ms. Doe moved to the County of Santa Clara two years ago to attend college, is studying Philosophy, and aspires to be a scholar of constitutional law" (Complaint, at ¶ 1; emphases added). College in American English would refer to undergraduate education. Studying philosophy (which cannot be logically studied in a law school) also implies an undergraduate course of study. That Opposing Counsel is unaware of how legal education functions in the United States or that she appears to be illiterate is not equivalent to the Plaintiff 'avoiding' saying something 'directly.'

[7] Obviously, the Plaintiff is not equating the social struggles of Black people and people of limited means. And poverty does not form a suspect class. *See San Antonio Independent School Dist.* v. *Rodriguez*, 411 U. S. 1, 28 (1973). This does not change the analysis that Opposing Counsel attempts to exclude certain demographic populations from access to the courts.

[8] If not *salons*, then Opposing Counsel wishes federal courts (and this Court) to become a Star Chamber. The Framers of our Constitution wanted to avoid that very legal apparatus to be present in these United States, however. *See*, *Pennsylvania v. Muniz*, 496 U.S. 582, 595–98 (1990). *See,* generally*, Faretta, supra*, 422 U.S. at p. 821-22 ["the Star Chamber has, for

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

socially powerful are able to appear. As such, our courts should become a **playground** for the rich and the socially powerful: If an abused woman, for instance, is to need a domestic violence restraining order, no luck for her, unless she can afford Opposing Counsel's billable. Prisoners whose labor are awarded 7 cents an hour who might have had their civil liberties infringed upon by their custodians? No luck; no such luck.

Luckily, our case law is written by people who have a less cruel vision of justice in their mind: "A litigant who chooses *himself* [*sic*] as legal representative should be treated no differently" than one represented by an attorney. *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986); original italics retained. As such, this Court is obligated to treat the Plaintiff as it would treat a litigant with an attorney. The Court should further ignore Opposing Counsel's personal attacks on the Plaintiff's person and perhaps admonish her to center her pleadings on the law. Opposing Counsel's undeniable talent in *undignified* personal attacking should perhaps be saved for another forum that will appreciate such empty rhetoric. Further, Opposing Counsel's implied argument that those trained formally in law are intellectual superior or that the knowledge imparted upon them is one that cannot be retained by others is a fiction that perhaps makes her feel good about her life, but it is, nonetheless, a fiction.

ii. **Although Opposing Counsel Alleges to be Taking the Allegations of the Complaint as Factually True, as Required by Case Law, She Persistently Attempts to Dispute the Factual Allegations of the Complaint**

Among many, many, many other factual disputes Opposing Counsel inappropriately included in her pleading and around which she centered her pleading, Opposing Counsel maintains that the Plaintiff is a liar. *See, inter alia,* "In this and other cases she has filed against

centuries, symbolized disregard of basic individual rights. The Star Chamber not merely allowed, but required, defendants to have counsel. The defendant's answer to an indictment was not accepted unless it was signed by counsel. When counsel refused to sign the answer, for whatever reason, the defendant was considered to have confessed" (*Ibid*.)]. Since the Plaintiff is writing an honors thesis on the early Rehnquist Court and that court's relation to and understanding of the common law tradition, the Plaintiff was made aware during research that scholarly consensus that will be too lengthy to be cited herein seems to agree that counsel that appeared in Star Chamber often declined to sign an indictment if an accused person was not able to afford the counsel's representation fee, thereby forcing indigent litigants to have no choice but to confess to a crime.

Stanford, Stanford students, and Stanford employees, she persistently applies inapplicable legal theories onto non-existent 'facts.'" (Mot. to Dismiss, at p. 2, fn. 1). *See*, further, "The allegations are not true, however. The entire interaction, which lasted about three minutes, was recorded by a CCTV system at SPDS. The tape shows that Officer Smith maintained the same distance from Doe throughout, and that Doe let herself out by using a push bar on the door, which was not locked from the inside in the first place" (Mot. to Dismiss, at p. 3, fn. 3[9]). Very well, the Plaintiff might be. **A Motion to Dismiss is not a contrived Motion for Summary Adjudication by ambush**. Although Opposing Counsel attempts to put her factual disagreements in the blanket of not raising them herein, she *does* raise them in the instant motion.

"In determining whether a complaint states a claim, **all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff**." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994; emphasis added) (*per curiam*); *see also Estelle v. Gamble*, 429 U.S. 97, 99 (1976). When resolving a motion to dismiss for failure to state a claim, a district court may not consider materials outside the complaint and the pleadings. *See Gumataotao v.*

---

[9] Since the Opposing Counsel has taken the liberty to raise factual allegations in her Motion to Dismiss, ignoring a century of case law, perhaps the Plaintiff should retort back. The Plaintiff contacted Defendant Fenton's immediate supervisor, Chief of Police Wilson, a day after the incident, wherein she confirmed that there are no CCTV cameras in the area in which the events preceding this Complaint have transpired. So, either Counsel or her clients are lying. Given that the Opposing Counsel has a penchant for being a liar (See, Plaintiff's Motion for Sanctions), the Plaintiff assumes that the lying party is the former. (The other option is, of course, that the Opposing Counsel is suffering from a hallucination-producing disease.) It is also telling that Opposing Counsel confirms, transiently, that Smith's bodycam was turned off despite Smith's allegations that it was turned on (why does she mention the CCTV footage but not the bodycam footage?). For some reason, these police bodycams always appear to be non-functional every time a police officer is sued in their official capacity or when it is alleged that they abused their authority. What a lucky coincidence that must be? Even if, assuming, *arguendo*, that the Plaintiff pushed a bar to open the door, that does not establish that Smith did not deprive the Plaintiff of her liberty before permitting her to go or that he unlocked the door that made it possible for the Plaintiff to be able to push the door open. Further, in *Sanderlin v. Dwyer*, the Ninth Circuit held that the defendant seized the plaintiff when he "intentionally applied physical force, and as a result, [the plaintiff's] 'freedom of movement [was] restrained.'" 116 F.4th 905, 912 (9th Cir. 2024) (citation omitted). It did not matter that the defendant's incapacitation of the plaintiff was limited in duration nor was it relevant that the plaintiff was able to walk away. *Ibid.*

*Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001); *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998). As such, even if assuming, *arguendo*, that the Plaintiff's factual allegations are "hyperbole[s]" (Mot. to Dismiss, at p. 2), the Court, at this stage, is obligated to treat such facts as true. A complaint may not, further, be dismissed as frivolous merely because the allegations are **unlikely**. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). The case is different, however, if the allegations are 'delusional.' *Ibid*. For instance, if the Plaintiff alleged that Defendant Smith transported the Plaintiff and himself to the planet Mars and locked her in a space mission cabin, such a claim would have been delusional. The allegation that Defendant Smith locked the Plaintiff in a room in a police precinct is not 'delusional.' Opposing Counsel either disputes factual allegations or maintains that they are unlikely, neither of which are relevant to the instant standard under which the Opposing Counsel's motion must be assessed.

### iii.   The Reasonable Person Standard is a Person in the Same Shoes of the Plaintiff and is Not Isomorphic to Opposing Counsel or the Defendants

Throughout the Complaint, Opposing Counsel maintains that because *she* would not have been alarmed by the conduct that preceded the Complaint, a reasonable person would not have been alarmed. Alarmed by the Opposing Counsel's arrogant solipsism, the reasonable person standard is not one that depends on the daily moods of the counsel representing a defendant.  The reasonable person standard is " an objective basis." *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Liteky v. United States*, 510 U.S. 540, 548, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). *See,* further,  *Kentucky* v. *King*, 563 U. S. 452, 464,  131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011) ("Legal tests based on reasonableness are generally objective, and this Court has long taken the view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." (internal quotation marks omitted)). Further, although in slightly different contexts, the reasonable person standard, at least in the Ninth Circuit, is assumed to be someone that shares the same social standing as the Plaintiff whose reasonableness is under question.

*See, exempli gratia,* "We adopt the perspective of a reasonable woman primarily because we believe that a sex-blind reasonable person standard tends to be male-biased and tends to systematically ignore the experiences of women. The reasonable woman standard does not

establish a higher level of protection for women than men" *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). Put differently, reasonable person standard must be construed as one that is "from the perspective of a reasonable person belonging to the [same group] of the Plaintiff" (*McGinest v. GTE Service Corp.* 360 F.3d 1103, 1115 (9th Cir. 2004)). As such, the reasonable person standard here is a 21-year-old woman attending college, not a (presumably) mid-40s[10] defense attorney.

###    b.  Standard for Motion to Dismiss

Generally, there is "an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (section 1915A dismissal); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (motion to dismiss). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). "In determining whether a complaint states a claim, all allegations of material fact **are taken as true and construed in the light most favorable to the plaintiff**." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam); emphasis added; *see also Estelle v. Gamble*, 429 U.S. 97, 99 (1976). "Dismissal is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison*, 668 F.3d at 1112.

Despite this standard that gives the Plaintiff the benefit of every doubt and construes all facts in the light most favorable to the Plaintiff, "to survive a motion to dismiss, a complaint must [still] contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

---

[10] Obviously, age does not form a suspect class. *See Massachusetts Bd. of Retirement* v. *Murgia*, 427 U. S. 307, 313– 314 (1976) (*per curiam*). Although the Ninth Circuit elucidated the reasonable woman and reasonable Black person standard as it found these groups to be "historical[ly] […] subjected to discrimination" *Lyng* v. *Castillo*, 477 U. S. 635, 638 (1986), the analysis of the same social standing stands.

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009). Although *Ashcroft* and *Iqbal, supra,* indeed did raise the pleading standard for complaints substantially, this Court must still balance the demands of *Ashcroft* and *Iqbal* with the most favorable construction of pleaded facts.

As the Plaintiff shall elucidate *post* and *infra*, Opposing Counsel either misquotes the Complaint or intentionally misconstrues the Complaint by erroneous paraphrasing and cherry-picked contrived quotes. No reasonable person would be able to produce the "schizophrenic" *Torres*, *infra*, 592 U.S. at 332 (Gorsuch, J., dissenting) reading of the Complaint Opposing Counsel has produced. If, assuming, *arguendo*, *Ashcroft* and *Iqbal* did, indeed, raise the pleading standard as much as Opposing Counsel makes it out to be, then 99% of all the Complaints filed in district courts—ones that have survived a Motion to Dismiss—should be dismissed. Because the standard for a dismissal motion for failure to state facts upon which relief could be granted is not as high as Opposing Counsel makes it out to be, and because raising it that far would result in the impossibility of demanding plaintiffs to plead every fact to the most minute detail before discovery, the Defendants motion must be denied.

### c. Plaintiff Has Plead Sufficient Facts to Establish Standing to Bring this Action, Indicating Multiple Injuries Traceable to Defendants' Actions
#### i. Ms. Doe was Seized, Arrested, or was in Custody

"Before addressing [an officer's] use of force, [courts] must decide whether [the plaintiff] was seized, thereby implicating the Fourth Amendment" *Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022). The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force **or show of authority**, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (omissions in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); emphasis added). This may occur through **coercion, physical force**, or a **show of authority**. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he [*sic*] **was not at liberty to ignore the**

**police presence and go about his [*sic*] business**.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991); emphasis added; *see also Dees v. County of San Diego*, 960 F.3d 1145, 1154 (9th Cir. 2020) (holding that a seizure occurs if, in view of all circumstances surrounding incident, a reasonable person would have believed she was not free to leave). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).

Thus, put differently, a seizure occurs any time an "officer accosts an individual and restrains his freedom to walk away." *Terry*, *supra,* 392 U.S. at 16. **"[A] mere touch can be enough for a seizure**," and "**brief seizures are seizures all the same**." *Torres*, *supra,* 592 U.S. at 317-18; emphasis added. Accordingly, courts have not hesitated to hold that a seizure occurred when an officer uses physical force in any way that restricts or otherwise limits the ability of an individual to move about freely, even if the restriction is limited in nature or time, and even where the force is not applied for the purpose of effectuating an arrest. *See, exempli gratia, Salmon v. Blesser*, 802 F.3d 249, 254 (2d[11] Cir. 2015) (holding that a seizure occurred where officer used "painful force to control [the plaintiff's] movements")*; Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023) ("Physically grabbing someone is likely to be a seizure because it is likely to restrict movement, at least briefly."); *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (holding that a seizure occurred where sheriff physically grabbed plaintiff's wrist for brief time); *United States v. Delaney*, 955 F.3d 1077, 1083, 446 U.S. App. D.C. 272 (D.C. Cir. 2020) (recognizing that "officers need not totally restrict a citizen's freedom of movement" to effectuate seizure (quoting *United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015)).

As quoted *supra,* in *Sanderlin v. Dwyer*, the Ninth Circuit held that the police officer defendant seized the plaintiff when he "applied physical force, and as a result, [the plaintiff's] 'freedom of movement [was] restrained.'" 116 F.4th 905, 912 (9th Cir. 2024) (citation omitted). It did not matter that the defendant's incapacitation of the plaintiff was **limited in duration** nor

---

[11] Pursuant to *Auto Equity Sales v. Superior Court*, 57 Cal.2d 450 (1962), when this Court is analyzing state law claims and is applying state law as the substantive law under the *Erie* doctrine, binding precedent from any branch of the Court of Appeal applies horizontally and vertically. In federal law, indeed, such horizontal precedent does not exist. As such, when and the Plaintiff cites opinions outside of the Ninth Circuit, it is for persuasive—not binding—force.

was it **relevant that the plaintiff was able to walk away**. *Ibid.* The defendant's subjective intent was irrelevant. *Ibid.*

Against this backdrop, Opposing Counsel omits certain parts of the Complaint and misquotes the Complaint. Again, as established *supra*, the Court is obligated to view facts of the Complaint in a light **that is most favorable to the Plaintiff**. Viewing the allegations of the Complaint in this way, a reasonable person in the Plaintiff's shoes would have thought that their ability to go about their business was infringed by Defendant Smith's conduct. The Complaint alleges, *inter alia*, that Defendant Fenton entered the Plaintiff's residence without a warrant ["SMITH told Ms. Doe that she attempted to enter and search for Ms. Doe in what SMITH alleged to be Ms. Doe's university dormitory. Upon querying why SMITH attempted to do so, SMITH indicated that he was conducting an investigation that required Ms. Doe's interrogation" (Complaint, at ¶ 14)]. Viewed in this light, Opposing Counsel's suggestion that Defendant Smith's continuous questioning over the Plaintiff's current physical location, it is not a "complete speculation" (Mot. to Dismiss, at p. 8) that Defendant Smith would attempt to enter her San Francisco residence without a warrant or probable cause or that Smith would enter the Plaintiff's dormitory residence again when the Plaintiff is present in her dormitory during weekdays, which would have been a day after (as the conduct occurred on a Sunday). The Complaint further alleges that Defendant Smith **mandated** the Plaintiff to appear in the police station by 5PM of the same day in which he made the phone call (*Complaint*, at ¶14-15). The Complaint further alleges that the Plaintiff inquired whether there was a warrant for her arrest or whether she was obligated to appear in the police station, to which Defendant Smith did not clarify that there was no warrant for her arrest and that she did not need to appear, **in an open attempt to, by show of authority, lure her into a police station.** (*Complaint*, at ¶ 19-21). Again, the Complaint alleges that Defendant Smith **did indicate to the Plaintiff that her presence in the police station that day was mandatory, not optional.** Viewed from the eyes of a reasonable 21-year-old person, Smith's conduct would have caused such a reasonable person to conclude that they could not go about their business as usual.

The Complaint further alleges that Defendant Smith was wholly aware of the fact that the door through which the Plaintiff would enter the location Defendant Smith, by show of force and

authority, mandated and forced her to enter would result in the Plaintiff being locked inside. *Complaint,* at ¶ 24. As such, Smith's forceful, non-consensual luring of the Plaintiff into a locked police station was an **intentional** show of authority. Similarly, in *Sanderlin, supra*, the police officer defendant argued "that he could not have seized [the Plaintiff] because his actual intent in firing the foam baton was to force him to leave the area, not to restrain Sanderlin or apprehend him.  Panighetti is correct that under the Supreme Court's recent decision in *Torres*, "[a] seizure requires the use of force *with intent to restrain*." *Id.* at 317. **But *Torres* is equally clear that our inquiry centers on "whether the challenged conduct *objectively* manifests an intent to restrain**." *Id.*; *see also Brendlin v. California,* 551 U.S. 249, 260 (2007) ("[W]e have repeatedly rejected attempts to introduce . . . subjectivity into Fourth Amendment analysis."); *accord Villanueva v. California*, 986 F.3d 1158, 1166 (9th Cir. 2021) ("The intent that counts under the Fourth Amendment is the intent conveyed, not the officers' subjective intent." (quotation marks omitted))" (*Sanderlin, supra,* at 116 F.4th 912-13; emphasis added by bolding). Viewed in this light, luring someone into a police station room where the police officer is aware that the door would be locked when the lured person enters that room, an objective analysis would conclude that such a person intentionally intended to restrain that person's ability to walk away—*id est*, leave the locked room. As such, Opposing Counsel's contention that Smith did not intend to restrain the Plaintiff's movement (Mot. to Dismiss, at p. 8) **when he forced the Plaintiff to enter into a room he knew would be locked** is not reasonable and contrary to the allegations of the Complaint. Again, Opposing Counsel is disputing the factual allegations of the Complaint. Even if assuming, *arguendo*, that Smith did not intend to restrain the Plaintiff's movement, such a subjective analysis is irrelevant.

Further, the Complaint alleges that while Defendant Smith indicated to the Plaintiff that she was "not under arrest, but [that Defendant Smith] will ask [the Plaintiff] some questions" (*Complaint,* at ¶ 36). Again, Defendant Smith **did not indicate to the Plaintiff that she was not required to answer those questions or that she was free to leave.** Compare this, for instance, with *Oregon v. Mathiason*, 429 U.S. 492 (1977) (*Mathiason*) and *California v. Beheler*, 463 U.S. 1121 (1983) (*Beheler*), where the questioned party **was told that they were free to leave and that they were free to not come to the police station for questioning.** *See,* "the officer told defendant he was not arresting him at this time; he was released to go about his job and return to

his family." *Mathiason, supra,* 429 U.S. at 494. *See,* similarly, "he admitted that his earlier interview with the police had been given voluntarily" *Beheler, supra,* 463 U.S. 1122. Notably, both *Beheler* and *Mathiason* address the question as to whether a *Miranda* warning pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966) is required when the questioned party **later admits** that their questioning was done voluntarily (and whether a confession voluntarily given to the police without *Miranda* warning is admissible in a criminal trial). The instant case is not one that questions whether *Miranda* warning was necessary, nor is it a criminal proceeding. As such, the question for this Court is to determine solely whether the Plaintiff was seized or in custody to implicate Fourth Amendment protections.

Again, notably, after *Beheler,* the State of California started advising police officers to issue a Beheler Admonishment in cases similar to *Beheler*. The Admonishment is supposed to advise the interviewee that they are not under arrest, that they do not need to answer any questions, that they are free to leave any time and stop answering questions, and ends with the question along the lines of, "Having understood these rights, do you still wish to speak with me voluntarily?" Even though the question in the instant case is not whether a *Miranda* warning was necessary, Defendant Smith's statement as contained in Complaint, at ¶ 36, fell short of such a warning **that would have implicated voluntariness.** Having placed the Plaintiff in a locked room, and having aggressively walked toward the Plaintiff (Complaint, at ¶ 47-56), and having prevented the Plaintiff from knowing that she is free to leave any time, Defendant Smith seized the Plaintiff. As the Supreme Court wrote more than a decade ago, "[w]hen police actions do not show an unambiguous intent to restrain or when an individual's submission takes the form of passive acquiescence, the test for telling when a seizure occurs is whether, in light of all the surrounding circumstances, a reasonable person would have believed he [*sic*] was not free to leave" *Brendlin, supra,* 551 U.S. at 251. Here, no reasonable 21-year-old woman who received a cryptic call from a 6'4" police officer with a gun who has repeatedly asked them where they were after having told such a person that he entered their residence on a Sunday morning without a warrant or probable cause and having mandated them to appear in a police station by 5 PM of the same day, having locked them in a police precinct room, and having aggressively walked to them would have believed that they were free to leave. **As such, Smith either seized the Plaintiff when he made the phone call and by show of his authority coerced the Plaintiff to**

**come to the police station or if assuming, *arguendo*, that no seizure occurred then, he did seize the Plaintiff when he locked the Plaintiff in a room**.

Even though the Plaintiff had every desire to leave and not to go to the police station to be heckled by a bully-sanctioned-by-the-state, even if the Plaintiff, assuming, *arguendo*, "ha[d] no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter" *Brendlin, supra*, 551 U.S. at, 251 (internal quotation marks omitted). In the instant case, no reasonable person would have felt that they were free to terminate the contact by ignoring Smith's phone call that mandated the Plaintiff's presence in the police station, nor would such a reasonable person would have been able to terminate the contact when a 6'4" bully with a gun was marching toward them in a locked room. Even if this Court was performing a *Miranda* analysis under *Beheler* or *Mathiason* (which it should not perform in the instant case), the result would be the same. Performing a Fourth Amendment seizure analysis under *Brendlin*, *Torres*, *Terry*, the Plaintiff was seized. The Plaintiff wishes to direct this Court's attention to the majority opinion of Justice Scalia in *Hodari D.* that addresses the common law historical origins of the single-touch or coercion standard for determining seizure. Opposing Counsel's main argument, it seems, that the majority opinion in *Torres* "resort[s] to […] a schizophrenic reading of the word 'seizure'" *Torres*, *supra*, 592 U.S. at 332 (Gorsuch, J., dissenting), and that the Plaintiff echoes such a 'schizophrenic' understanding of the word 'seizure.' Lucky for those of us who actually do care about the rule of law, Opposing Counsel's subjective dissatisfaction with binding precedent of the United States Supreme Court (and her argument that the five justices of the Supreme Court and the Plaintiff are schizophrenic) is not a 'legal argument' worth any weight.

### ii. Smith's Deprivation of the Plaintiff's Liberty was Not Consensual and Caselaw Supports that Conclusion

As established *supra*, Smith's depravation of the Plaintiff's Fourth Amendment rights was not voluntary. No reasonable person in the Plaintiff's shoes would have been able to ignore Smith's coercion of the Plaintiff, by show of his authority, to appear in the police precinct. *See,* again, *Brendlin, supra*, 551 U.S. at 251.

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

### iii. Ms. Doe Has Established that Defendant Smith's Actions Were in Retaliation of Her First Amendment Right to Petition and her First Amendment Right to Freely Express Herself

Opposing Counsel's continued misreading of the Complaint is preposterously biased: she omits certain parts of the Complaint that do not aide her corrupt misreading of caselaw and misconstrues and misquotes certain parts of the Complaint by erroneous paraphrasing. **No reasonable person, aware of the fact that the Court is obligated to construe the Complaint in a light that is most favorable to the Plaintiff, would be able to produce the corrupt reading Opposing Counsel has produced**.

As the Plaintiff establishes *supra*, she was either seized or was in custody within the meaning of the seizure test most recently enunciated by our Supreme Court in *Torres*. The Supreme Court has repeatedly found that actionable retaliation may include a law enforcement action such as seizure, arrest, or prosecution. The pertinent test elucidated by the Supreme Court began in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977) (*Mt. Healthy*) and solidified in *Hartman v. Moore*, 547 U.S. 250 (2006) (*Hartman*) and *Nieves v. Bartlett*, 587 U.S. 391 (2019) (*Nieves*).

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Hartman*, *supra*, 547 U. S. at 256. If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Ibid.* (citing *Crawford-El v. Britton*, 523 U. S. 574, 593, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Mt. Healthy, supra*, 429 U. S. at 283-284. Here, the Plaintiff alleges that Smith seized the Plaintiff because of her First Amendment protected right to petition the government for redress of grievances and her First Amendment right to free speech by retaliating against her for communicating with the Clerk of the Court[12] for the Superior Court of California.  Under *Mt.*

---

[12] Although the Plaintiff did, indeed, mail out Appendices A, B, C with the Complaint to the Clerk of this Court, the Clerk seems to not have filed those Appendices for reasons unbeknownst to the Plaintiff. Although Oppositions are usually not avenues through which new evidence can be introduced, given that this is a clerical error, the Plaintiff attaches Appendix A to this

*Healthy*, the Plaintiff has the burden to establish that her speech was protected under the First Amendment. *See*, "in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' - or, to put it in other words, that it was a 'motivating factor'" *Mt. Healthy, supra*, 429 U.S. at 287. Here, the Plaintiff's communication with the clerk of the court was resolutely protected speech. Communication with government officials is protected speech. *See, inter alia, Lindke v. Freed*, 601 U.S. 187 (2024). The Plaintiff's communication with the Clerk of the Court in an action in which she is a Plaintiff is an extension of her right to petition the government as it directly relates to her Complaint. *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (finding that "the **right to petition** the government . . . includes a reasonable right of access to the courts"). Plaintiff, thus, satisfies the first prong of the *Mt. Healthy* standard.

Under *Hartman*, the Plaintiff had the burden to establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, *supra*, 547 U. S., at 259. Although the Plaintiff still remains partially confused by what the Supreme Court attempted to establish in *Nieves* (the multiple concurrences and a rather lengthy dissent that partially concurs in judgement do not help clarity), it is the Plaintiff's reading of *Nieves* that *Nieves* relaxed the absolute probable cause requirement and the but-for test that was established in *Hartman*. (Perhaps the Court realized, after a decade, that Justice Ginsburg's worry as contained in her dissent in *Hartman* was warranted.) In the instant case, this differentiation makes very little difference as Defendant Smith did not have probable cause to detain the Plaintiff.

---

Opposition. The Plaintiff notes that this Court does not allow *pro se* litigants to initiate new actions through ECF. Had that been allowed, the Plaintiff would have had the opportunity to properly file the Complaint with its Appendices. When resolving a motion to dismiss for failure to state a claim, a district court may not consider materials outside the complaint and the pleadings. *See Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001); *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998). It is the Plaintiff's view that the Court is able to consider this Appendix because it is part of a 'pleading'—that is, this Opposition. *See*, very pertinently, *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)  (finding that a court can consider an attachment to a pleading in a motion to dismiss even if the attachment was not attached to the initial complaint.).

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

Since the *Hartman* test is partially obsolete now, Plaintiff shall first proceed to elucidate why Defendant Smith's conduct fails under the *Nieves* test. In *Nieves*, the Supreme Court elucidated that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he [*sic*] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves, supra*, 587 U.S., at 407. In this case, there are two parties that communicated with the Clerk of the Court: Defendant Prier, who communicated with the Court and learned that her pleading "was cancelled" and the Plaintiff, who communicated with the Clerk of the Court as herself to ensure that the Clerk rejects a pleadings that does not conform to the previous orders of the Court. Only one of those two parties were locked in a room, assaulted, and seized. As such, the Plaintiff "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" (*Ibid.*).

If the Court were to adopt the *Hartman* test, the Plaintiff would have had the burden to show (1) no probable cause for seizure existed and (2) that the Plaintiff's retaliation claim passed the but-for test, or, to put it differently, that there was a substantial connection between the alleged injury suffered and the protected speech in question.

In the instant case, Defendant Smith's proffered reason for detaining the Plaintiff is that Defendant Prier told Defendant Smith that she might have 'cancelled' Prier's 'papers' *See,* Complaint, at ¶ 40. Defendant Smith can show no probable cause under the circumstances to detain the Plaintiff. Among many others, *see, Byars v. United States*, 273 U.S. 28 (1927) (affiant stated he "has good reason to believe and does believe" that defendant has contraband materials in his possession); *Giordenello v. United States*, 357 U.S. 480 (1958) (complainant merely stated his conclusion that defendant had committed a crime). *See also Nathanson v. United States*, 290 U.S. 41 (1933). **Mere belief or suspicion, as is here, does not suffice**. A reasonable and competent police officer, further, would have doubted Prier's account of the events, given that Prier is involved in civil litigation with the Plaintiff. Further, the Plaintiff satisfied the but-for test found in *Hartman*. As the Supreme Court wrote, "It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action  would not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the defendant

official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee)." *Hartman, supra,* 547 U.S. at 260 (quoting *Mt. Healthy, supra,* 429 U.S. at 287). If not for the Plaintiff's protected communication with the Clerk of the Court, Defendant Smith would have not detained and seized the Plaintiff. *See,* Complaint, at ¶ 30-35. As such, the Plaintiff satisfied both prongs of the *Hartman* test, even though the current and pertinent test is the *Nieves* test.

### iv.  Ms. Doe's Fourteenth Amendment Claim Succeeds

The Plaintiff must now proceed more quickly to be able to comply with the statutory page limit for oppositions. First, *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919-920 (9th Cir. 2012) is distinguishable in facts from the instant case and has been superseded by later statute. *See, Hall v. City & Cnty. of Honolulu*, 2025 U.S. Dist. LEXIS 34369, 2025 WL 623811.

To claim malicious prosecution, a petitioner must allege "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *see also Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1204 (9th Cir. 2003) (stating that malicious prosecution "concern[s] the wrongful use of legal process"). In general, a claim of malicious prosecution is not cognizable under § 1983 "if process is available within the state judicial systems" to provide a remedy, although "we have also held that an exception exists . . . when a malicious prosecution is conducted with the intent to . . . subject a person to a denial of constitutional rights." *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc). The instant case is surely one of these exceptions.

As *Lacey* also held that getting "arrested on a criminal charge may be considered the institution of a criminal proceeding[s]" *Lacey*, *supra,* 693 F.3d at p.  919. In the instant case, the Complaint alleges at ¶ 68-73 that Defendant Smith initiated criminal proceedings against the Plaintiff by transmitting his fraudulent affidavit to the District Attorney's office. Opposing Counsel has a tendency to ignore parts of the Complaint that do not support her arguments, but that is not how courts review complaints.

At any rate, even if, assuming, *arguendo*, that Plaintiff cannot succeed on a malicious prosecution claim, the Plaintiff can still succeed on her **conjoined** substantive due process claim. *See*, *Chavez v. Martinez* 538 U.S. 760 (2003) (plurality opinion of Souter, J.).

### v.  Ms. Doe's Fifth and Sixth Amendment Claims Succeed

First, Opposing Counsel's citation of the opinion of JUSTICE THOMAS in *Chavez v. Martinez*, 538 U.S. 760 (2003) (*Chavez*) **is intentionally deceptive**[13]. The only plurality opinion in *Chavez* is JUSTICE SOUTER's opinion in Part II. Accordingly, under *Marks v. United States*, 430 U.S. 188 (1977), only the opinion of JUSTICE SOUTER is binding to lower courts as it is the narrowest one.

As such, *Cooper v. Dupnik*, 963 F.2d 1220, 1242 (9th Cir. 1992) continues to be binding on this Court on questions similar to the one the instant Complaint poses. *See,* "Thompson contends that *Haupt* [*v. Dillard*, 17 F.3d 285, 286 (9th Cir. 1994)] has been effectively nullified because it relied on *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992) (*en banc*), which was later overruled by the Supreme Court in *Chavez v. Martinez*, 538 U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003). This argument is without merit."  *Park v. Thompson*, 851 F.3d 910, 926 (9th Cir. 2017) (*Park*); annotation added in brackets to clarify in-text citations. As *Park* continues, "Critically, *Chavez* simply does not address cases in which a defendant's 'core constitutional right[s]' are violated, *see id.* at 772 let alone hold that such violations may not serve as the basis for a Section 1983 action if the defendant has been acquitted. In short, *Chavez* in no way undermines *Haupt*, and regardless of whether the *Chavez* plurality or Justice Souter's even more limited concurring opinion controls, *Haupt* remains the law of the circuit" (*Park, ibid.*).

As such, "the privilege against self-incrimination - the essential mainstay of our adversary system - is founded on a complex of values. All these policies point to one overriding

---

[13] The proper Bluebook citation method for a plurality opinion is to indicate that the portion of the opinion cited is the plurality opinion and, then, indicate the justice that authored the plurality opinion. Whereas Opposing Counsel, except in this instance, follows the proper citation method, in this case, she intentionally omits the name of the justice whose Opinion she is citing, attempting to deceive this Court to believe that she is citing the binding plurality opinion.

thought: the constitutional foundation underlying the privilege is the respect a government - state or federal - must accord to the dignity and integrity of its citizens" *Cooper, supra,* 963 F.2d at 1238. As *Cooper* continues, "Today, then, there can be no doubt that the Fifth Amendment privilege **is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves**" (*Id.*, at p. 1239; italics omitted; emphasis added). The Plaintiff's Fifth Amendment claim, thus, survives.

Having established *supra* that the Plaintiff was seized and was in custodial interrogation, it is well-established that right to counsel applies in such instances. *See, Escobedo v. Illinois,* 378 U.S. 478 (1964).[14] The facts of the instant case closely resemble the facts of in *Brewer v. Williams*, 430 U.S. 387 (1977). *See*, particularly, ***Rhode Island v. Innis***, 446 U.S. 291 (1980), where the Supreme Court held that the Sixth Amendment is applicable to "not only express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (*Id.*, at p. 301). Here, it is not only that Defendant Smith should have known that his questioning could have implicated a confession, but Defendant Smith also ***intentionally seems to have asked questions to coerce and doctor a 'self-confession'.*** *See*, Complaint at ¶ 67-69.

### vi.   Ms. Doe's "*Franks v. Delaware*" Claim Similarly Succeeds

Opposing Counsel is obviously, once again, mistaken on caselaw, but the Plaintiff need not address or reach to the legal merits of the Opposing Counsel's legal arguments because she misrepresents, once again, the allegations of the Complaint. She notes, "[Ms.] Doe does not allege that Officer Smith signed a search warrant affidavit" (Mot. to Dismiss, at p. 10). Ms. Doe does allege so, however. Complaint, at ¶ 43-45. Further, Smith need not "sign" a warrant affidavit to trigger a *Franks* claim. Such a claim is triggered when "law enforcement officer [] deliberately or recklessly *misstate[s] facts*" *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995).

---

[14] To repeat, because this is not a criminal proceeding in which the Plaintiff is seeking the exclusion of a certain testimony, the Plaintiff shall not address the effects of *Miranda* on any of the cases cited hereunto, particularly on *Escobedo*.

Opposing Counsel puts the verb 'sign' in an opinion that does not even mention that verb once. *See,* "governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, **regardless of whether he signs the affidavit**." *Hart v. O'Brien* 127 F.3d 424, 449 (5th Cir. 1997); emphasis added.

### d. Ms. Doe Succeeds on a Section 1985 Claim under *Village of Willowbrook v. Olech*

Opposing Counsel maintains that the Plaintiff must have been discriminated against—or that the Defendants must have had a discriminatory animus against—the Plaintiff for her to be able to succeed under a Section 1985 claim and that this requires her to be part of a group that forms (it is implied) quasi-suspect or suspect class. Although Smith's misgendering of the Plaintiff would satisfy this test[15], which was alleged in the Complaint, because the Plaintiff did not underscore such a discrimination claim enough in the first draft of the Complaint, the Plaintiff concedes, the Plaintiff shall forego that argument for the time being, **without waiving it in any way**. Obviously, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) renders any of Opposing Counsel's arguments moot. The Complaint alleges that Smith targeted the Plaintiff *because she is Jane Doe*, thereby implicating a "group of one" that could form a claim for equal protection of the law.

---

[15] *See*, *Prescott v. Rady Children's Hospital San Diego*, 265 F. Supp. 3d 1090, 1098–1100 (SD Cal. 2017) (finding that the mother of a transgender boy had a cognizable Affordable Care Act Section 1557 claim against a hospital whose staff misgendered her deceased son, finding that it caused her son incredible anxiety that substantially and directly contributed to the son's almost-subsequent suicide at the age of 14). Precisely, "After today's decision, plaintiffs may claim that the failure to use their preferred pronoun violates one of the federal laws prohibiting sex discrimination." (*Bostock v. Clayton County* (2020), 590 U.S. 644, 696 (Alito, J., dissenting). *See*, futher, *Tay v. Dennison* (S.D.Ill. 2020) 457 F. Supp. 3d 657, 683 (finding that the persistent misgendering of a trans female prisoner, including calling her 'mister,' violated the prisoner's Equal Protection rights under the Fourteenth Amendment); *See*, also, *Stevens v. Martinez*, 2025 U.S. Dist. LEXIS 113183 (E.D. Cal. June 13, 2025) (finding that a transgender female prisoner pleaded a sufficiently-cognizable claim on which she would likely prevail when she alleged that a prison counselor misgendering her three times constituted a Section 1983 violation under the Equal Protection Clause of the Fourteenth Amendment of the federal constitution).

e. **Fenton and Smith Are Employed by a Private University and thus Cannot Enjoy Qualified Immunity (or Good Faith Immunity) and They Fail under the *Lugar* and *Filarsky* Test**

First, as the Plaintiff alluded in her Complaint, there is no settled law in the Ninth Circuit as to whether private university campus police would be liable under a Section 1983 analysis as a person acting under color of the law. Although the Plaintiff can explicate on this issue more if the Court wishes parties to do so and, thus, **suggests that the Court considers issuing a *sua sponte* Order for Supplemental Briefing**[16], the Defendants do not dispute or allege that Defendant Smith could not be held liable under a Section 1983 action analysis as an actor acting under the color of law.

If the Defendants were to dispute Defendant Smith's 'acting under the color of law' status, the Defendants would fail under the Ninth Circuit test. The Ninth Circuit recognizes at least four different criteria or tests to evaluate whether a private actor has engaged in "significant" state action: (1) public function, (2) joint action, (3) compulsion or coercion, and (4) governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003); *see also Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999); *Johnson v. Knowles*, 113 F.3d 1114, 118, (9th Cir. 1996); Howerton, 708 F.2d at 382-83. In *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205 (9th Cir. 2002), the Ninth Circuit potentially expanded those criteria by applying what it called the 'symbiotic relationship' test. **Defendant Smith as a deputy of the department of public safety patrolling Stanford University campus with powers almost identical to a city police officer—including, *inter alia*, power to openly carry**

---

[16] On this issue*, in an infinite split with one another, see, inter alia, Scott v. Nw. Univ. Sch. of Law*, No. 98 C 6614, 1999 WL 134059, at *3, *5–6 (N.D. Ill. Mar. 8, 1999), *Boyle v. Torres*, 756 F. Supp. 2d 983, 993–95 (N.D. Ill. 2010), *Harper v. Franklin & Marshall Coll.*, No. 10-2647, 2011 WL 2746644, at *5 (E.D. Pa. July 14, 2011), *Hargrove v. City of Philadelphia*, No. CIV. A. 93-5760, 1995 WL 584490, at *2 (E.D. Pa. Oct. 3, 1995); see, also, *Henderson v. Fisher*, 631 F.2d 1115, 1118 (3d Cir. 1980). *See, also, Klunder v. Brown Univ.*, No. 10-410 ML, 2011 WL 2790178, at *7 (D. R.I. Jul. 13, 2011). *See,* further, *Johnson v. Univ. of San Diego*, No. 10CV0504-LAB (NLS), 2011 WL 4345842, at *7 (S.D. Cal. Sept. 16, 2011). *Klunder* seems to have found that Brown University campus deputies were private actors that acted under the color of the law because they performed functions akin to city police officers and that they were entitled to neither qualified or good-faith immunity. The Plaintiff was unable to find any opinion issued by this district court addressing this issue.

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

Case No. 5:25-CV-03490-PCP-NMC

**a gun, interrogate suspects, and perform arrests—satisfies, at the very least, the public function, compulsion or coercion, governmental nexus, and symbiotic relationship test**.

That Defendant Smith, *inter alios*, come under a Section 1983 analysis as a state actor, however, **does not mean that he is entitled to qualified immunity.** *See,* "As a preliminary matter, a finding of 'state action' on the part of Dr. Robbins does not require this court to find that he is entitled to qualified immunity" *Jensen v. Lane Cty.*, 222 F.3d 570, 576 (9th Cir. 2000) (*Jensen*) (quoting *Wyatt, infra,* and *Richardson, infra*). *See,* also, "State action for § 1983 purposes is not necessarily co-extensive with state action for which qualified immunity is available" *Bracken v. Okura*, 869 F.3d 771, 775 (9th Cir. 2017). Again, page limitations prevent the Plaintiff from explicating this issue as much as she wishes to, but the appropriate test elucidated by the Supreme Court started in *Lugar v Edmondson Oil Co., Inc* 457 U.S. 922 (1982). The pertinent part to the instant question is a mere footnote[17] at *Lugar, supra,* 457 U.S. at 922, fn. 23. The Ninth Circuit in *Howerton v. Gabica*, 708 F.2d 380, 381 (9th Cir. 1983) wrote, *ironically,* its own footnote on the footnote in *Lugar.*

"The doctrine of qualified immunity protects **government officials** 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); emphasis added. *See,* also, *Pierson v. Ray*, 386 U.S. 547 (1967). 'Government' in this context is not a filler word. Defendant Smith—or, for that matter, Fenton—is not a government employee but is employed by a private university—or, to be more precise, employed by a statutory corporation within the meaning of Section 158 of the California Corporations Code. **As such, Smith is a private actor who comes under a Section 1983 action as a private actor that acted under the color of law.**

---

[17] To write a footnote on a footnote on a footnote, footnotes of an Opinion are binding. *See,* "The appellees would down-grade the significance of that language because it appears in a footnote. We think that the location, whether in the text or in a footnote, of something which the writer of an opinion thinks should be said, is a matter of style which must be left to the writer" *Phillips v. Osborne*, 444 F.2d 778, 782-783 (9th Cir. 1971).

Accordingly, the *Lugar* majority acknowledged that the Court might be treading into the realm of traditionally "private" conduct, but decided

> "this problem should be dealt with not by changing the character of the cause of action **but by establishing an affirmative defense**. A similar concern is at least partially responsible for the availability of a good-faith defense, or qualified immunity, to state officials."

*Lugar, supra,* 457 US at 942, n. 23; emphasis added.

Or, as the Ninth Circuit elucidated:

> We realize [Defendants] Gabicas may have believed they were acting within their rights. **But there is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights. *See Lugar*, 102 S. Ct. at 2757 n.23 (suggesting that compliance with statute might be raised as an affirmative defense)**; *Stypmann v. City and Cty. of San Francisco*, 557 F.2d 1338, 1341-44 (9th Cir. 1977) (private towing company held liable under section 1983 although it worked only at direction of police pursuant to municipal ordinance).

*Howerton*, *supra*, 708 F.2d at 385 n.10; emphasis added.

Since *Lugar*, the Supreme Court has tentatively and recently considered this issue in three other cases: *Wyatt v. Cole*, 504 U.S. 158 (1992) (*Wyatt*), *Richardson v. McKnight*, 521 U.S. 399 (1997) (*Richardson*), and *Filarsky v. Delia* 566 U.S. 377 (2012) (*Filarsky*). As is often the case with case law, *Filarsky* approves and disapproves a part of *Richardson* and *Wyatt.* In the Ninth Circuit, *Jensen v. Lane County* 222 F.3d 570 (9th Cir. 2000) and *Bracken v. Okura* 869 F.3d 771 (9th Cir. 2017) is also relevant. For clarity, the Plaintiff shall attempt to provide this Court an historical account.

First, the Supreme Court specifically made clear that its ruling was very narrow and tied to the facts that were presented to it and cautioned against using *Wyatt* as a means to grant qualified immunity to private actors who come under a Section 1983 action as one acting under the color of law. As the Court held:

For these reasons, we can offer no relief today. The question on which we granted certiorari is a **very narrow one**: "Whether private persons, who conspire with state officials to violate constitutional rights, have available the good faith immunity applicable to public officials." Pet. for Cert. i. **The precise issue encompassed in this question, and the only issue decided by the lower courts, is whether qualified immunity, as enunciated in *Harlow*, is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute. That answer is no.** In so holding, however, we do not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar* v.  *Edmondson Oil Co.*, 457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982), could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens. Because those issues are not fairly before us, however, we leave them for another day. Cf.  *Yee* v. *Escondido*, 503 U.S. 519, 534-538, 118 L. Ed. 2d 153, 112 S. Ct. 1522 (1992).

*Wyatt, supra,* 504 U.S. at 168-169.

As such, the Plaintiff contends that *Wyatt* is not relevant to the issue in the instant case. At any rate, if *Wyatt* was the appropriate test to use, Smith would not be entitled to qualified (or any other kind of immunity): The Court in *Wyatt* pointed out that qualified immunity was created to "preserve [government officials'] ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service" and, more broadly, to "protect the public at large, not to benefit its agents." *Wyatt, supra,* at 504 U.S. at 168. The Court concluded that private parties "hold no office" requiring them to exercise discretion and enhance the public good. The Court held, therefore, that the "nexus" between the goals of qualified immunity and private parties is "simply too attenuated" to support an extension of the immunity. *Id.*, at p. 168.

The appropriate test to employ in the instant case would be produced through a syncretic reading of *Richardson* and *Filarsky*, which only complicates the matters. Like any opinion authored by Justice Scalia, *Richardson* relies on a rigorous reading (to some and the Plaintiff, a misreading[18]) of common law historical courts, where the Court, quoting *Wyatt*, outlined a two-

---

[18]   Plaintiff's general frustration with (neo-)Scalianism has been eloquently conveyed in a recent opinion by the State of Hawai'i Supreme Court: "Judges are not historians. Excavating 18th and 19th century experiences to figure out how old times control 21st century life is not a judge's forte. [...] Here, we discuss Hawai'i's historical tradition of regulating weapons.  We try our best.  Judges are not historians.  (Except the rare case of John Papa 'Ī'ī, historian and Associate

part framework for analyzing whether a defendant was entitled to qualified immunity: (1) whether history maintains a "firmly rooted tradition of immunity" for private prison guards; and (2) whether the purposes of qualified immunity warrant its application to private prison guards in that case. *Richardson, supra,* 521 U.S. at 404, 407. The Court answered both questions in the negative, concluding that there was no 'firmly rooted tradition of immunity' afforded to private prison guards. Although *Richardson*, like *Wyatt*, attempts to have "answered the immunity question narrowly, in the context in which it arose" *Richardson*, *supra*, 521 U.S. at 413, the Plaintiff contends that **private university police is almost analogous in its operation to private prison guards.** That is not to contend, however, that private university campus deputies act like prison guards, but to underscore the reality that the Supreme Court in *Richardson* was contend in extending qualified immunity to state-employed prison guards while not extending it to private prison guards. **Accordingly, this Court should not hesitate to decline to extend immunity to private police officers[19], while immunity is extended to state-employed police officers.** Similarly, the Defendants would fail to find a (common law) history of courts awarding qualified immunity to private university public safety deputies.

Filarsky did not overrule *Richardson* but only added a nuanced element to it: *See*, "Our decisions in *Wyatt* v. *Cole*, *supra*, and *Richardson* v. *McKnight*, *supra*, are not to the contrary." *Filarsky, supra,* 566 U.S. at 392. In *Filarsky*, the Supreme Court reversed the lower court opinion not awarding qualified immunity to a private attorney that acted as a government agent in an investigation against a firefighter. *Filarsky*, at p. 380, 382-383. The Court held it does not matter that the attorney in question "worked for the government […] as a full-time employee, or on some other basis" and the purposes of qualified immunity counseled in favor of applying the doctrine to the attorney. *Id.*, at p. 389. In the instant case, **Smith was not a private person employed, part time, by the government. Smith was <u>never</u> employed by the government.** As such, although in *Filarsky*, the Supreme Court found that private persons acting, **in some capacity**, as a state agent might be awarded the same immunity that those that perform the same operations as employed by the state, the instant facts of Smith's status as government agent

---

Justice of the Supreme Court of the Kingdom of Hawai'i from 1848-1864.)" (*State of Hawai'i v. Wilson* (2024), slip op., at p. 36 and 41; emphasis added.).

[19] Neither Smith nor Fenton are police officer; they are "department of public safety deputies." Plaintiff refers to Smith as a police officer out of linguistic convenience.

OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION TO DISMISS THE COMPLAINT WITH NO LEAVE TO AMEND

should shy this Court away from *Filarsky* but closer to the historical-tradition standard found in *Richardson*. *See,* precisely, "Distinguishing among those who carry out the public's business based on the nature of their particular relationship with the government also creates significant line-drawing problems. It is unclear, for example, how *Filarsky* would be categorized if he regularly spent half his time working for the City, or worked exclusively on one City project for an entire year" *Id.*, at p. 319. Patrolling private university land is also not in aide of public benefit but ensures the safety of a **private property, like a private prison guard.**

Similarly, both pre- and post-*Filarsky*, the Ninth Circuit precedent would hold the same. As is here in the context of campus police, "Limited information has been presented on the historical availability of immunity for doctors asked by the government to make a decision to commit persons suspected of mental illness" *Jensen, supra.*, 222 F.3d at 576. *Jensen* was pre-*Filarsky*, so it only focused on a history of whether immunity was granted in similarly situated individuals. *Bracken* is post-*Filarsky* and **is very similar—almost identifcal—to the facts of the instant case.** There, the Ninth Circuit concluded that "Chung may not assert qualified immunity, because he was not serving a public, governmental function **while being paid by the hotel to provide private security[.]**" *Bracken*, *supra,* 869 F.3d at p. 775.

As the First Circuit eloquently put it, private party immunity would "**eviscerate the fragile protection of individual liberties afforded by [§ 1983**]." *Downs v. Sawtelle* 574 F.2d 1 (1st Cir 1978), *cert. denied*, 439 U.S. 910 (1978). As such, Defendant Smith cannot, as a private actor that acted under the color of law, be entitled to qualified immunity. Nor is he, as a private actor, entitled to good-faith immunity. He may, very well, assert his good intent as an **affirmative defense** but not as a bar from an action or as an immunity from this action.

Although the courts often use the terms "good-faith immunity" and "qualified immunity" interchangeably, there are significant[20] distinctions between the two. Because Smith is entitled to

---

[20] Although this remains an academic question given the facts of the instant case, the Sixth Circuit has been quite adamantly insistent on the distinction between good faith immunity and qualified immunity. *See, Duncan v Peck* 844 F2d 1261 (6th Cir 1988). If this Court rules that this distinction is relevant to an immunity determination in the instant case, the Plaintiff respectfully

neither, the Plaintiff need and will not reach what appears to be an academic question—even though it is a quite intellectually enjoyable question.

**f.  Even if Smith and Fenton Enjoyed Qualified Immunity, They Fail under the *Harlow* Test**

Even if assuming, *arguendo*, that Fenton or Smith are entitled to qualified immunity as government officials (they are not), Defendants' qualified immunity claim fails. The appropriate test to employ here is *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *See,* "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law" should be the standard to employ (*Harlow, supra,* 457 U.S. 800, 818). Even though *Pearson v. Callahan*, 555 U.S. 223 (2009) has altered this test slightly, *Harlow* is still relevant. No reasonable police officer would have, as established *supra*, entered someone's residence without a warrant or probable cause; no reasonable police officer would have locked someone in a police station who wanted to leave; no reasonable police officer would have walked or marched toward someone when they locked them in a room, and no reasonable police officer would have completed these actions because someone's protected speech did not conform to their arbitrary whims and desires.

In the instant case, the "constitutional question [is] beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Any reasonable person—**those as far removed from our courts as possible**—would know that the conduct in question is unacceptable beyond debate. As the Plaintiff has shown *supra* that she will prevail on a *Franks* claim, defendants are automatically not entitled to qualified immunity. Once it is determined that a *Franks* violation occurred, qualified immunity does not apply. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1295 (9th Cir. 1999); *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995).[21]

---

suggest to this Court to issue a *sua sponte* order for supplemental briefing so that the parties can argue accordingly on this minute differentiation.

[21] The Plaintiff notes that the Opposing Counsel does not seem to know what "a fortiori" means. *See,* Mot. to Dismiss, at p. 13. Because this pleading is not an appropriate avenue for Latin instruction—and as the Plaintiff is not a Classics professor, and, much to the disappointment of herself, does not aspire to become one—the Plaintiff waives addressing this point.

### g.  Ms. Doe Generally Succeeds on Her State Law Claims

Again, due to statutory page-limit limitations, the Plaintiff will not be able to write at length, but Opposing Counsel plainly recycles all of her arguments for federal law claims for state law claims and generally alleges that a reasonable person in the Plaintiff's shoes would have been alarmed by the conduct issue. Since the Plaintiff has addressed Opposing Counsel's attempts to render an objective standard subjective and attempts to render it as one that is based on her whims and desires, the Plaintiff finds no independent argument poised by the Opposing Counsel in this section of her Motion.

Defendant Smith's conduct, as established in the last 23 pages *supra*, is "so extreme as to exceed all bounds of that usually tolerated in a civilized community" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009). No reasonable person who wishes to live a peaceful life in civil society would be able to tolerate Defendant Smith's vigilante-ism. And allowing Smith to proceed as he did in the instant case would **be a threat to *every single* foundation of civil society that many cherish and continue to wish to partake in it.**

### h.  Ms. Doe's *Respondeat Superior* and Canton Claim

Opposing Counsel (erroneous) argues a heightened pleading standard for *Canton*, *Monell*, and *Respondeat Superior* claims. There is no heightened pleading standard with respect to the "policy or custom" requirement of demonstrating municipal liability. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993); *see also Empress LLC v. City of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005); *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 679–80 (9th Cir. 2001); *Evans v. McKay*, 869 F.2d 1341, 1349 (9th Cir. 1989).

However, despite that, the Plaintiff concedes that the facts of the Complaint do not plead, in the current draft, the necessary facts to establish a *Canton* claim against the SDPS and a *respondeat superior* claim against Fenton. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

As the Court can observe, the Complaint was drafted on the day of the Plaintiff's interaction with Smith and was filed a day after. As the Plaintiff sets forth in the Preface of the Complaint, she intended to file another Complaint about another incident with SDPS, Fenton, and Smith a year ago and intended to request the Court to take judicial notice of the facts of that Complaint and perhaps order coordination. Because that Complaint was not able to be filed yet, the Plaintiff's initial strategy failed. Accordingly, this Court should grant the Plaintiff leave to amend to amend the Eight and Tenth claim of the Complaints so that the Plaintiff can incorporate Fenton and SDPS's unconstitutional insistence to not properly supervise or train Smith.

First leave to amend is often generously granted, and the Plaintiff implores the Court to grant leave to amend.

### i.   Amendment, if Needed, Would Not be Futile

"A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) (order); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 529–30 (9th Cir. 1985); *cf. Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (suggesting that if the complaint's deficiencies could be remedied by amendment, then it is abuse of discretion to dismiss complaint without granting leave to amend). The plaintiff must also be given some notice of the complaint's deficiencies prior to dismissal. *See Cato*, 70 F.3d at 1106.

In the instant case, there appears to be no need for an amendment except for the Eight and Tenth cause of action, but even if assuming, *arguendo*, that there was a need for an amendment, it would obviously not be futile. Opposing Counsel's suggestion to the contrary is "schizophrenic[.]" *Torres*, *supra*, 592 U.S. at 332 (Gorsuch, J., dissenting).

### IV.   CONCLUSION

For the foregoing reasons, the Plaintiff prays and respectfully requests that this Court denies the Stanford Defendants' Motion to Dismiss in full.