1   JANE DOE
2   c/o Secretary of State, Safe at Home
3   P.O. Box 1198
    Sacramento, CA 95812
4   Plaintiff, In Propria Persona
5
6
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSÉ DIVISION
10
11  JANE DOE, AN INDIVIDUAL,              CASE NO.: 25-CV-03490-PCP-NMC

12              PLAINTIFF,                 PLAINTIFF JANE DOE'S COMBINED
                                          OPPOSITION TO STANFORD,
13       V.                               FENTON, AND SMITH'S MOTION
                                          FOR DISCLOSURE AND REQUEST
14  JASON A. SMITH, ET AL.                FOR JUDICIAL NOTICE
15
16
17                                        Hearing Date: September 4, 2025.
18              DEFENDANTS.               (Motion to Continue to Be Filed)
19                                        Time: 10:00 a.m.
20                                        Courtroom: 8
21                                        Complaint Filed: April 21, 2025
22
23                                         Before the Honorable P. Casey Pitts
24
25          COMES NOW before this Honorable Court the Plaintiff, JANE DOE, and
26  hereby submits this combined Opposition to the Defendants Stanford, Fenton, and Smith's
    Motion for Disclosure and Request for Judicial Notice, filed with this Court concurrently on June
27  20, 2025.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

Pages

I.    ARGUMENT
      a.  There is No Such Motion as a 'Motion for Disclosure,' Defendants Do Not and
          Cannot Cite Even One Case Law that would Support the Existence of Such a
          Motion, and the Caselaw Quoted by the Opposing Counsel Established why a
          Motion to Seal Should be Denied and Do Not Give Rise to a So-Concocted
          'Disclosure' Motion………………………………………………………….1-3
      b.  The Established Mode in Which a Judicial Notice over a Litigant's Alleged
          Vexatiousness is Taken is to Have Such an Order Be Judicially Noticed, and
          Counsel's Sinister Workaround Given the Absence of Such an Order is Novel and
          Unprecedented…………………………………………………………………..3
      c.  By Her Judicial Notice Request and Motion for Disclosure, Counsel Is Effectively
          Requesting that this Court Adjudicates the State Law Vexatiousness Statute
              i.    Defendants Fail under the State Statute…………………………………5-6
              ii.   *Younger* Abstention Prevents this Court from Adjudicating this Issue…6-7
              iii.  Even if *Younger* Abstention Did Not Apply, *Colorado River* Abstention
                    Should be Applied in the Instant Case…………………………………7-10
      d.  Opposing Counsel's Request for Judicial Notice is a Textbook Abuse of the
          Judicial Notice Procedure and Should be Denied because Counsel is Practically
          Requesting this Court to Take Judicial Notice of the Truthfulness of State Court
          Documents………………………………………………………....……………..10
      e.  Even if Opposing Counsel Were Requesting this Court to Only Judicially Notice
          the Existence of State Court Documents, such a Request Should Fail because
          Such Documents are Irrelevant to the Instant Matter……………...…………11-13
      f.  Even if Opposing Counsel Were Requesting this Court to Only Judicially Notice
          the Existence of State Court Documents, such a Request Should Fail because
          Counsel has Submitted Cropped and Doctored Exhibits………...……………13
      g.  Opposing Counsel Has Clearly Filed this Request to Attempt to Prejudice this
          Court in the Wake of Her Motion to Dismiss and Requests for Judicial Notice that
          Will Prejudice a Party Unduly Should be Denied…………………………13-14
      h.  Motion for Disclosure Should be Denied
              i.    Defendants' Motion is a Logical
                    Fallacy………………………………………..…………………………14-17
              ii.   Opposing Counsel Lacks an Iota of Understanding as to how the Safe at
                    Home Act Operates…………………………………………………..…17-19
              iii.  Pseudonymous Proceeding is Warranted (For Reasons in Addition to the
                    Safe at Home Act)
                        1.  Plaintiff is a Young Adult Proceeding Against her
                            University…………………………………………………..19-20
                        2.  In the Ninth Circuit, Transgender Status Is a Factor that Must be
                            Considered for Pseudonymous Proceeding…………..……..20-22

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND
REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC

3.   Defendants' Counsel has the Habit of Revealing Confidential
Information in the Public Record…………………….………22-23

iv.   Stanford Defendants Are Not Prejudiced and, indeed, Want Disclosure to
Precisely Chill Litigation Efforts by Strongarming the Plaintiff with Harm
she Reasonably Expects Absent Pseudonymous Litigation, and Counsel's
Online Stalking Is a Testament to That Fact……………….…………23

i.   Opposing Counsel's Main Argument Is Not that The Plaintiff Has Taken Actions
Not Supported by the Law in her Previous Cases but that the Plaintiff's Litigation
Strategy is against the Religious/Moral Views of the Opposing Counsel and that
the Plaintiff's Speech Does Not Conform to her Palatability Standard, thereby
Barring this Court's Review due to Doctrine of Ecclesiastical
Abstention………………………………………………………............23-27

II.   CONCLUSION…………………………………………………………….....28

## TABLE OF AUTHORITIES[1]

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*.
  99 F. Supp. 3d 1110 (C.D. Cal. 2015)…………………………………………………..10

*Baker v. First com Music*
  2021 U.S. Dist. LEXIS 250351, 2021 WL 6424520 (C.D. Cal. Nov. 2, 2021) ………….3

*Blye v. Cal. Supreme Court*
  No. 11-5046, 2014 U.S. Dist. LEXIS 7329  (N.D. Cal. Jan. 21, 2014) …………..……..11

*Bowers v. Hardwick*
  478 U.S. 186 (1986) …………………………………………………...…………….26, 27

*Bridges v. California*
   314 U.S. 252 (1941) …………………………………………………………………...26

*Carroll v. Gen. Mills, Inc.*
  2023 U.S. Dist. LEXIS 110049 ……………………………………………………………10

*Childs v. Paine Webber Incorporated,*
  29 Cal.App.4th 982 (1994) …………………………………………….…………….6

*Chyna v. Bayview Loan Servicing, LLC*,
   2016 U.S. Dist. LEXIS 133849 (S.D. Cal. Sept. 27, 2016) ……………………………12

*Cohen v. California*

[1] The table excludes caselaw cited in footnotes 14, 16, 17 to avoid an extremely lengthy table of authorities.

403 U.S. 15 (1971) …………………………………………………………………………25

*Colorado River Water Conservation District v. United States*
    424 U.S. 800 (1976) ……………………………………………………………………7-9

*Cooper v. Redding*
    2017 U.S. Dist. LEXIS 10942 (D. Neb. Jan. 26, 2017) …………………………….......14

*Cuellar v. Joyce*
    596 F.3d 505 (9th Cir. 2010) ……………………………………………………………11

*Del Nero v. Allstate Ins. Co.*
    2022 WL 1618839  (D. Nev. May 23, 2022) ……………………………………………18

*Demos v. U.S. Dist. Court*
     925 F.2d 1160 (9th Cir. 1991) ……………………………………………………………..5

*Dobbs v. Jackson Women's Health Organization*
    597 U. S. 215 (2022) ……………………………………………………………………25

*Doe 1 v. Nat'l Collegiate Athletic Assoc.*,
    2022 U.S. Dist. LEXIS 156695, 2022 WL 3974098  (N.D. Cal. Aug. 30, 2022)………15

*Doe v. County of El Dorado*
    2013 U.S. Dist. LEXIS 169883, 2013 WL 6230342 (E.D. Cal. Dec. 2, 2013) …………16

*Doe v. Github, Inc.*
    672 F. Supp. 3d 837 (2023) ……………………………………………………………..16

*Doe v. Kamehameha Sch.*
    596 F.3d 1036 (9th Cir. 2010) …………………………………………………...*passim*

*Doe v. Univ. Accounting Serv., LLC*,
     2022 U.S. Dist. LEXIS 38151 (S.D. Cal. Mar. 3, 2022) ………………………………19

*Does I Thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ………………………………………………………15, 21

*Donastorg v. Riverside County Sheriff's Dep't*,
     2014 U.S. Dist. LEXIS 91169 (C.D. Cal. May 7, 2014) ………………………………12

*Erie Railroad Co. v. Tompkins*
    304 U.S. 64 (1938) ………………………………………………………………………17

*Estate of Maldonado v. Sec'y of the Cal. Dep't of Corr. & Rehab.*
    2007 U.S. Dist. LEXIS 91084 (E.D. Cal. Nov. 30, 2007) ……………………...………18

-iv-

*Exxon mobile corp. v. Saudi Basic Industries Corp.*
    544 U.S. 280 (2005) ……………………………………………………………………17
*Fink v. Shemtov*
    180 Cal.App.4th 1160 (2010) ………………………………………………………….6
*Gasperini v. Center for Humanities*
    518 U.S. 415 (1996) ……………………………………………………………………..17
*Guaranty Trust Co. v. York*
    326 U. S. 99 …………………………………………………………………………….17
*Hamilton v. Alabama* (1964),
    376 U.S. 650 ……………………………………………………………………………..2
*I. G. v. Panama-Buena Vista Union Sch. Dist.*
    2025 U.S. Dist. LEXIS 12497 (E.D. Cal. Jan. 23, 2025) ………………………………..2
*In re Little*
    404 U.S. 553 (1972) …………………………………………………………………….26
*In re McDonald*
    489 U.S. 180 (1989) …………………………………………………………………….5
*Jane Roes 1-2 v. SFBSC Mgmt., LLC*
    77 F. Supp. 3d 990 (N.D. Cal. 2015) …………………………………………………15
*Jones v. Target Corp.*
    2024 U.S. Dist. LEXIS 74780 (D. Or. Apr. 1, 2024) ……………………………………2
*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*
    344 U.S. 94 (1952) ………………………………………………………………………28
*Keyes v. Coley*
    2011U.S. Dist. LEXIS 59625 (E.D. Cal. June 2, 2011) …………………………………14
*La Spina v. Wucherer*
    1996 U.S. Dist. LEXIS 16095 (S.D. Cal. Oct. 9, 1996) ………………………………11
*Meriwether v. Trs. of Shawnee State Univ.*
    U.S. Dist. LEXIS 98625 (S.D. Ohio Jan. 30, 2019) …………………………………22-23
*Middlesex County Ethics Committee v. Garden State Bar Ass'n*
    457 U.S. 423 (1982) ……………………………………………………………………..7
*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*

-v-

460 U.S. 1 (1983) ……………………………………………………………………9

*NAACP v. Claiborne Hardware Co.*

   458 U.S. 886 (1982) ……………………………………………………………26

*Pennekamp v. Florida*

   328 U.S. 331 (1946) ……………………………………………………………..26

*Price Waterhouse v. Hopkins*,

   490 U.S. 228 (1989) ……………………………………………………………..4

*Roe v. City & Cty. of S.F.*

   2024 U.S. Dist. LEXIS 68388 (N.D. Cal. Apr. 15, 2024) ………………………………15

*Roe v. San Jose Unified Sch. Dist. Bd*

   2021 U.S. Dist. LEXIS 16633 (N.D. Cal. Jan. 28, 2021) ………………………………20

*Rosa v. TASER Int'l*

   684 F.3d 941 (9th Cir. 2012) ……………………………………………………11

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*

   862 F.3d 835 (9th Cir. 2017) …………………………………...……………………9

*Tingley v. Ferguson*

   47 F.4th 1055 (9th Cir. 2022) …………………………………...…………………21

*United States v. Amaral*

   488 F.2d 1148 (9th Cir. 1973) …………………………………...…………………12

*United States v. Gonzalez-Flores*

   418 F.3d 1093 (9th Cir. 2005) …………………………………………...…………14

*United States v. Hitt*

   981 F.2d 422 (9th Cir. 1992) …………………………………...…………………14

*L. W. v. Skrmetti*

   679 F. Supp. 3d 668 (M.D. Tenn. 2023), *overruled on other grounds in United States v.*

   *Skrmetti* 605 U.S. ____ (2025) …………………………………………...……………4

*Younger v. Harris*

   401 U.S. 37 (1971) ………………………………………………………………7

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND
REQUEST FOR JUDICIAL NOTICE

## I.    PREFACE AND PROCEDURAL HISTORY

Having moved to dismiss the Plaintiff's Complaint with No Leave to Amend under a standard and generic so-called *Twiqbal* argument, perhaps realizing that the motion will not be granted (and perhaps, transiently, admitting that that said Motion was filed for the sake of filing a motion to dismiss), Opposing Counsel for Defendants The Board of Trustees of the Leland Stanford Junior University (sued as Stanford University Department of Safety) ("Stanford"), Jason A. Smith, and Eric Fenton (the "Stanford Defendants" or "Defendants") now moves this Court to disclose the Plaintiff's true identity in the Public Record and move this Court, further, for judicial notice. With **cherry-picked, *ex post facto* edited, doctored exhibits** over which the Defendants seek judicial notice, deceiving this Court to believe that such exhibits are unedited state-court documents and that this Court should substitute its own judgement with the subjective and corrupt and materially misleading account of the events of the Opposing Counsel, and with which they attempt to support their auto-concocted "Motion for Disclosure," the Defendants do not even attempt to show the mere *courtesy* to hide what is plain in sight: Their underhanded and fraudulent gamesmanship—that is, they are attempting *openly deceive* this Court and with their materially misleading account of the events, or let one avoid equivocation and forego dulcet language, lies—and hoping that the Court is deceived and hoping that the Opposing Counsel's lies will create a prejudiced picture of the Plaintiff in this Court's mind in the wake of adjudicating the Defendants' frivolous motion to dismiss.

This Court should not entertain such underhanded tactics and gamesmanship and should not entertain the offensive picture of this Court that undoubtedly exists in the Opposing Counsel's arrogant mind—*id est*, that this Court is one that could be deceived. The Plaintiff moved this Court to grant her leave to file an Opposition brief in excess of the statutory page

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limit so that the Opposing Counsel's lies could be accounted for **one by one** and that there could be created a record in the Public Record that this Opposing Counsel—a duly admitted member of State Bar of California—repeatedly lied to this Court so that there is "**a record so posterity could see how [she] went wrong"** (*Trump v. J. G. G.* 604 U.S. ___, (2025), slip. op., at p. 2 (Jackson, J., dissenting) (emphasis added)). Perhaps adjudicating that Administrative Motion before having read the Defendants' Motion—or perhaps not thinking that the Opposing Counsel would have the audacity to attempt to scheme a court of law ("Who could blame [this Court] for that failure of imagination? (*Fischer v. United States*, 603 U.S. ___ (2024), slip op., at p.1 (Barrett, J., dissenting))—understandably, the Court denied that Motion and, again, understandably, noted that it was "advis[ing] the plaintiff that she need not address the specific documents contained in defendants' requests for judicial notice" (Dkt No. 36, p. 2). The Plaintiff respectfully disagrees[2] with that assessment, however: Allowing the defendants to deceive and lie to this Court condones that practice. Plaintiff also contends that when someone's entire integrity is attacked in the Public Record, that party should be offered an opportunity to respond to such disgusting and tasteless allegations and *ad hominem* attacks. What is more, not addressing the Defendants' lies to this Court would be to allow the Defendants' Counsel to precisely achieve what she desires to achieve with her underhanded tactics: Prejudice this Court against the Plaintiff in the wake of her Motion to Dismiss. Further, the Defendants' motion for judicial notice (and Motion for Disclosure) are only supported by the fact that this Court should substitute its judgement with the misleading account of the events of the Opposing Counsel. As

---

[2] Put differently, Plaintiff did not intend to address the contents of the exhibits but merely wished to address the Opposing Counsel's material lies to this Court. However, the Plaintiff understands that a Motion for Sanctions should be a separate pleading of its own right. *See* Fed R Civ P 11 (c)(2) [providing that a "motion for sanctions must be made separately from any other motion"].

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC

1
2
3
4

such, Opposing Counsel's lies are immediately and imminently relevant as to whether the Defendants are requesting this Court to merely take judicial notice over the existence of state court documents or whether they are requesting this court to take judicial notice over the truthfulness of those claims.

5
6
7
8
9
10
11
12
13
14
15

As such, pursuant to the Standing Order of this Court ("Misrepresentations of law or fact, however subtle, may result in sanctions" (*Id*., at p. 2)) and Fed R Civ P Rule 11, the Plaintiff shall file a Motion for Sanctions with this Court so that the Opposing Counsel's deception of and to this Court is noticed by this Court and possibly sanctioned. The Plaintiff much rather preferred such conduct to be set in this Opposition and wanted to leave the sanctions portion of the request to this Court's sound discretion (and was planning to request the Court to, *sua sponte*, issue an order to show cause why the Opposing Counsel shall not be sanctioned). But since that is logistically impossible in the instant case, Plaintiff shall file that Motion for Sanctions separately; as such, the Plaintiff respectfully requests that the Court reviews that Motion contemporaneously with this Opposition.

16

## II. INTRODUCTION

17
18
19
20
21
22
23

Litigation is, indeed, an oppositional and confrontational process. Yet, many, many counsel for parties are still able to act civilly during such a stressful-for-everyone process and not take grandiose steps to slanderously—and inflammatorily—demean[3] the character of their opposing counsel or launch a 900-page *ad hominem* attack on their opponent. Why so? Because part of being an adult member of civil society demands and requires of one civility even

24
25
26
27

[3] Plaintiff assumes that Opposing Counsel does not usually take this step in her other representations, particularly because the strong emotive opposition such conduct will create. The Plaintiff assumes that the Opposing Counsel has elected to proceed in such a way because her opponent in the instant case is a 21-year-old *pro se* litigant who does not have even a scintilla of resources that are available to Opposing Counsel.

28

in the face of opposition. If not so, then what kind of a chaotic world would be available for one and for everyone? And if being opposed granted one a *carte blanche* to violently smear the integrity of their opponent, then what kind of a judicial process would be available for a litigant? One that, certainly, does not conform to the demands of our Constitution, of our civil statutes, of our procedural law, and the role of the Judiciary as a place of solemn and serious adjudication of disputes. And if litigating places one's character—one's entire integrity—at an Inquisition, then would that not chill a party's exertion over their Constitutional right to litigate? Indeed, it would.

With that in mind, Opposing Counsel now files with this Court (1) a Motion for Disclosure, and (2) Request for Judicial Notice. But why? Not because the Plaintiff has not overcome the public's common law and First Amendment right to have access to judicial proceedings (how would counsel know that without having reviewed the Plaintiff's Motion for Leave to Proceed Pseudonymously?) and the standard set in case law for the extraordinary case of proceeding pseudonymously, but Opposing Counsel argues and alleges, *inter alia*, that the Plaintiff is **such a serial and vexatious litigator** that this Court should disclose the Plaintiff's identity in the public record because the Plaintiff's legal name—and the litigation she has taken part of within the course of her entire life—is such a central part of their defense. Perhaps Plaintiff is. Perhaps she is not. Regardless, even if assuming, *arguendo*, that the defendants' meritless claims are true, this is not the correct procedure to employ. One, also, wonders, why— why would the Plaintiff's person (and not her legal arguments) would be so central to their defense? Opposing Counsel maintains that her clients have done nothing wrong—nothing wrong—than unfortunately having had the bad luck of running in life into a—for the lack of a more dulcet term—crazy like the Plaintiff. Indeed, the Plaintiff is so *non compos mentis* that the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fact that the Plaintiff is the Plaintiff should be a legal argument, itself, to dismiss this action in its entirety.

Defendants' arguments fail at every corner and should be denied. Again, Plaintiff contends that every factual allegation Opposing Counsel has made to this Court is a product of deception, but the Plaintiff shall illustrate *infra* why the Opposing Counsel's arguments fail ***even if assuming, arguendo, that those factual allegations were correct.***

## MEMORANDUM OF POINTS AND AUTHORITIES

### III.    ARGUMENTS

**a. There is No Such Motion as a 'Motion for Disclosure,' Defendants Do Not and Cannot Cite Even One Case Law that would Support the Existence of Such a Motion, and the Caselaw Quoted by the Opposing Counsel Established why a Motion to Seal Should be Denied and Do Not Give Rise to a So-Concocted 'Disclosure' Motion**

The Plaintiff directs this Court's attention to the pleading and the exhibit attached to the said pleading in Docket No. 42. There, the Plaintiff set that the Opposing Counsel filed this pleading after the Plaintiff advised the Opposing Counsel that a Motion to Proceed Pseudonymously was soon going to be filed with the Court. Opposing Counsel used that one-paragraph summary of the Plaintiff's electronic mailing to draft her so-concocted Motion for Disclosure, filing it before the Plaintiff could have filed her own Motion.

Apart from the Opposing Counsel's violent gamesmanship, for the past 70 years, the appropriate method of objecting to a litigant proceeding pseudonymously has been to wait for a Motion to Proceed Pseudonymously to be filed with the Court and properly oppose that Motion. There is no legal mechanism or motion such as a motion for disclosure[4]. A quick search of LexisNexis and Westlaw reveals that, at least in the Ninth Circuit (or for any other circuit for that matter—but the Plaintiff did not analyze all the cases from other circuits), there has never been such a motion. In cases where a court noticed that the Plaintiff was attempting to proceed under a pseudonym, the Court, itself, advised the Plaintiff to file a motion to proceed pseudonymously. *See, e.g.,* "if Zack Jones is not [the Plaintiff's] legal name and he wishes to continue litigating in that name, *he* must **file a motion to proceed under a pseudonym**

---

[4] Perhaps also confused by the non-existence of the Defendants' Motion, the Court has been calling this motion "motion to compel the Plaintiff to proceed under a legal name." There, similarly, is no such 'motion to compel' (unless it is a motion to compel regarding production of discovery.

-1-

1
2
3
explaining why extraordinary circumstances exist supporting such relief." *Jones v. Target Corp.,* No. 3:23-cv-01301-JR, 2024 U.S. Dist. LEXIS 74780, at \*4 (D. Or. Apr. 1, 2024) (emphasis added).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
In the instant case, the Defendants wish to concoct **a procedural vehicle that does not exist out of thin air**. Why? Because, Opposing Counsel maintains, "[Ms.][5] Doe has said she will file such a motion, but two months have passed since her Complaint was filed" (Mot. at 1). In most cases where a litigant is requesting leave from the Court to proceed pseudonymously, such a motion is not concurrently filed with the Complaint. *See* "On **November 21, 2024**, Plaintiff I. G. initiated this action with the filing of a complaint against Defendant Panama-Buena Vista Union School District. … On **January 8, 2025**, Plaintiff filed a motion to proceed using pseudonyms[.]" *I.G. v. Panama-Buena Vista Union Sch. Dist.*, No. 1:24-cv-01431-CDB, 2025 U.S. Dist. LEXIS 12497, at \*1 (E.D. Cal. Jan. 23, 2025) (emphasis added). Because the Opposing Counsel's general dissatisfaction with the Plaintiff's ability to comply with her auto-concocted and arbitrary deadlines that she sets out in her head out of her daily whims should not be awarded by this Court, and because the Court should not be creating an unprecedented and new procedural vehicle because of Opposing Counsel's arbitrary whims and desires, the Motion, on this basis alone, must be denied as procedurally fatal.

---

[5] Plaintiff observes that the Opposing Counsel's insistence to not use the appropriate gendered honorific when she is addressing the Plaintiff stems from plain transphobia because she uses feminine honorifics while referring to any other (cisgender) woman. On this very problem—and why it is offensive and disrespectful—*see* **Hamilton v. Alabama (1964) 376 U.S. 650** (overturning a contempt order entered by an Alabama court due to Miss Hamilton's refusal to answer questions in the Court unless she, like all other white litigants in the courtroom, be referred to with the correct honorific, concluding that a state cannot segregate its courtroom). In the instant case, Opposing Counsel wishes this Court to be segregated based on gender identity, where those of a different gender identity are treated differently in the Court, demeaned, and made into second-class citizens.

-2-

1
2
3

That said, none of the caselaw cited by the Opposing Counsel supports why ***the Defendant's auto-concocted motion be granted; they set out why a Motion to Proceed Pseudonymously <u>should not be granted.</u>*** For this reason alone, the Motion should be denied.

4
5
6

  **b.** **The Established Mode in Which a Judicial Notice over a Litigant's Alleged Vexatiousness is Taken is to Have Such an Order Be Judicially Noticed, and Counsel's Sinister Workaround Given the Absence of Such an Order is Novel and Unprecedented**

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Defendants' main and overriding point in their Motion is that the Plaintiff is vexatious because of her state litigation activity. The appropriate matter in which a *pro se* litigant's vexatiousness is taken notice of by a federal court is to have a state court order declaring the litigant vexatious be judicially noticed. *See Baker v. First com Music*, 2021 U.S. Dist. LEXIS 250351, 2021 WL 6424520, at *2 (C.D. Cal. Nov. 2, 2021) (taking judicial notice of Judicial Branch of California's Vexatious Litigant List). **Because of the absence of such an order (no court has ever declared the Plaintiff vexatious)**—and the Defendants' persistent failure in the past to have declared the Plaintiff as vexatious—the Defendants' solution is novel and unprecedented (and fraudulent): The Defendants ask this Court to find whether the Plaintiff is vexatious **because both their 'Motion for Disclosure' and judicial notice lies on that one foundational claim—that the Plaintiff is vexatious[6] and a serial litigator.** As the Plaintiff shall illustrate *infra*, this Court ***cannot*** do that. Assuming, *arguendo*, that the Court was to be able to do that, the Defendants fail to establish that the Plaintiff is vexatious.

22
23
24
25

  **c.** **By Her Judicial Notice Request and Motion for Disclosure, Counsel Is Effectively Requesting that this Court Adjudicates the State Law Vexatiousness Statute**

26
27

---

[6] Plaintiff assumes that the Defendants have been using 'serial litigator' and 'vexatious' as synonyms.

28

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC

1    As established *supra*, even though the Defendants seem to not be moving this

2    Court to enter a pre-filing order and declare the Plaintiff vexatious, both the Request for Judicial

3    Notice and Motion for Disclosure lies, as a preliminary matter, on the same contention: That the

4    Plaintiff is vexatious. *See*, among many others, "[Ms.][7] Doe is a serial litigant" (Mot. at 1). As

5

6    _____

7    [7] *See ante*, at 2, n. 6. Opposing Counsel further contends that Defendant Prier uses they/them
     pronouns. *See* Mot. at 1, n. 2. Opposing Counsel has never represented or has ever been in
     conversation with Ms. Prier. Unless Ms. Prier started identifying with a different gender in the
     past 2 months in which the Plaintiff has not been in conversation with her, Ms. Prier is a
     cisgender woman. She constantly refers to herself with she/her pronouns and has called herself a
     woman multiple times within the 2 years the Plaintiff has known her. The entire purpose of
     indicating to someone one's pronouns is that the other person is not using their gaze to make
     one's gender a guessing-game. In the instant case, that is exactly what Opposing Counsel has
     done. Rather than following how Ms. Prier refers to herself as a guiding block to refer to her with
     the correct pronouns, the Opposing Counsel maintains that because Ms. Prier does not abide by
     the Opposing Counsel's gender stereotyping and because Ms. Prier does not conform to
     Opposing Counsel's stereotypes on how a woman should look like, that must mean that she is
     not a woman. (Is this because Ms. Prier has short hair?). The entire purpose of indicating one's
     pronouns is that one's gender does not become another's violent guessing game. As such, this
     Court should refer to Ms. Prier with how she refers to herself, **honoring** her own preference
     rather than Opposing Counsel's arbitrary stereotyping of Ms. Prier's gender. *See* Complaint,
     p.11, fn. 4 (collecting authority to find that judicial officers typically refer to someone with the
     gender pronouns with which they refer to themselves). Also, if someone is going by they/them
     pronouns, the appropriate honorific with which refer to them is "Mx.," not "Ms."—as opposing
     counsel has repeatedly done. On gender-stereotyping, in a slightly different context, *see Price
     Waterhouse v. Hopkins*, 490 U.S. 228 (1989). On female masculinity, *see* JACK
     HALBERSTAM, FEMALE MASCULINITY (2018 Duke UP ed.). *See* the poignant LESLIE
     FIENBERG, STONE BUTCH BLUES (1993 Firebrand Books ed.). *See* JUDITH BUTLER,
     GENDER TROUBLE: FEMINISM and the SUBVERSION of IDENTITY (1999 Routledge ed),
     ch. 4 (arguing that supposedly 'effeminate' gay men and supposedly 'masculine' lesbian women
     do not 'copy' heterosexual women and men, respectively). *See also* MONIQUE WITTIG, THE
     STRAIGHT MIND AND OTHER ESSAYS (1992 Beacon Press ed.). The Opposing Counsel's
     conduct strikes the Plaintiff as particularly offensive because gender stereotypes often arrive in
     racialized forms and Black women's womanhood have typically been dismissed as 'too
     masculine.' Opposing Counsel subscribes to the same violent, racist, and sexist rhetoric.
     Opposing Counsel has not even done the most basic scintilla of necessary reading on gender and
     its consequences. Even if Prier was using the pronouns the Opposing Counsel alleges Prier does, it
     is **patently inappropriate to forcefully out someone** in the Public Record without their consent,
     particularly someone in their early 20s. As such, this Court might wish to, *sua sponte*, seal that
     (and this) footnote of the Opposing Counsel's pleading. *See L.W. v. Skrmetti,* 679 F. Supp. 3d
     668 (M.D. Tenn. 2023), unfortunately *overruled on other grounds in United States v. Skremetti*

-4-

such, this Court is faced with two choices: (1) Substitute its own judgement with the subjective and corrupt and misleading judgement of the Opposing Counsel, who argues that the Plaintiff is vexatious, or (2) actually adjudicate the vexatiousness statute and declare the Plaintiff vexatious. **Because if the Plaintiff is not vexatious, the entire point of the Motion for Disclosure and Request for Judicial Notice is moot**. The Plaintiff shall now illustrate why the Defendants fail under any conceivable standard.

### i. Defendants Fail under the State Statute

Although Opposing Counsel has admitted in private conversation that she is aware that she fails under the vexatiousness statute, because counsel will now deny that contention in her filings, given her penchant for being a con-woman, the Plaintiff shall illustrate why the Defendants fail under the state statute. *First*, under *In re McDonald*, 489 U.S. 180, 184 (1989) (per curiam) and *Demos v. U.S. Dist. Court*, 925 F.2d 1160, 1161 (9th Cir. 1991), because the Defendants' vexatiousness contention is based on state court filings, the appropriate standard here[8] is the state vexatiousness statute, which is found in California Code of Civil Procedure, section 391. Under Code of Civil Procedure, section 391, subd. (b) (1), a vexatious litigant is one who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona **at least five litigations other than in a small claims court** that have been (i) finally determined adversely to the person" (*Ibid*; emphasis added).

_____

605 U.S. ____ (2025) (sealing the Plaintiffs' names because they are young transgender people particularly prone to targeted violence, taking, *sua sponte*, judicial notice of FBI hate crimes statistics).

[8] Plaintiff cannot think of one legal doctrine that would veer this Court in the position of applying *federal* vexatiousness law to determine whether *state* actions are vexatious. *In re McDonald* and *Demos* tacitly and *sub silentio* establish that federal vexatiousness caselaw is only used to asses federal litigation history.

Although the Opposing Counsel lies to this Court (*See* the Plaintiff's Motion for Sanctions) and indicates that the state court litigation matters have been finalized, that is a plain lie. A particular litigation is finally determined against a party when avenues for direct review have been exhausted or the time for appeal has expired. *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 993–994; *see Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1172. In the instant case, none of the cases Opposing Counsel cites have been finally determined against the Plaintiff as there are **active** appellate procedures proceeding contemporaneously with this action. The civil restraining order matter Opposing Counsel mentions has been appealed to the appropriate appellate court (*See* the appropriate attachment to Motion for Sanctions) and will be argued before that court when briefing is complete. The defamation action is pending in the trial court. As the statute provides, small claims cases do not count toward the 5-litigation limit. The only action that has been terminated is the Plaintiff's action that was dismissed without prejudice by the Plaintiff to move the action from the state court to a federal court. If that action is to count toward that limit (which is unlikely since a dismissal without prejudice does not indicate anything on an action's merits), then the Defendants continue to fail under the statute as the statute requires a failure of 5 cases in the preceding 7 years, not one.

### ii.   *Younger* **Abstention Prevents this Court from Adjudicating this Issue**

Having established *supra* that the Defendants fail under the state vexatiousness statute assuming, *arguendo*, that the Court did adjudicate the state vexatiousness statute, the Plaintiff shall now illustrate why this Court **should not even reach that far**. As the Plaintiff elucidated *supra*, Opposing Counsel lies to this Court and indicates that the Plaintiff prosecuted claims that have been terminated against the Plaintiff. But why does the Opposing Counsel lie,

1
2
3
4
5
6
7

other than her pathological psychic issues? Because if she does not lie and attempt to deceive this Court, then Defendants fail under *both* the state vexatiousness statute *and* multiple abstention doctrines. Although the *Younger* abstention as developed in *Younger v. Harris*, 401 U.S. 37 (1971) applied to federal court jurisdiction while there was a state criminal proceeding that was ensuing at the same time, the *Younger* abstention has been extended in its reach—particularly in *Exxon mobile corp. v. Saudi Basic Industries Corp*., 544 U.S. 280 (2005) and *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

8
9
10
11
12
13
14
15
16
17
18
19
20
21

   *Younger* abstention mandates that a federal court abstains from reaching to the merits of an issue if the same issue is being prosecuted, concurrently, in the state court. In the instant case, **the Defendants are impliedly asking this Court to rule whether the Plaintiff's claims (and subsequent appeals) are meritorious**. **The state court system *is* assessing these claims simultaneously with this action**. As such, this Court *must* abstain from reaching those issues that are being dealt with in state court system. Opposing Counsel wishes this court to become a state trial court, state appellate court, and a federal district court at the same time. What is more, Opposing Counsel wishes *her subjective judgement about the merits of a pending state action* to be substituted by this Court as this Court's own judgement, thereby **rendering the Opposing Counsel a state court judge and a state appellate court justice.** Opposing Counsel's career ambitions are not binding to this Court and the Court should abstain from making any judgements on pending state action claims.

22
23

   **iii.   Even if *Younger* Abstention Did Not Apply, *Colorado River* Abstention Should be Applied in the Instant Case**

24
25
26

Even if *Younger* abstention did not apply in the instant case (it does), this Court must defer judgement due to *Colorado River* abstention as developed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme

27
28

Court even extended further the reach of federal abstention doctrine when an issue is being litigated in a state court. The Supreme Court held that when federal and state court proceedings are simultaneously being carried out, the federal court must abstain from hearing or deciding on the matter, absent exceptional circumstances. As JUSTICE BRENNAN wrote for the majority, abstention of federal courts is not only concerned with comity but also with waste of judicial resources. **Here, in the instant case, the Defendants ask this Court to look over 900 page of state court filings and make independent determination about the veracity of the state law claims contained therein where appellate and trial court procedures are still in progress**. Such "piecemeal adjudication" of state-law claims was precisely what JUSTICE BRENNAN cautioned against while he was writing for a majority of the Supreme Court.

Again, writing for the majority of the Court, JUSTICE BRENNAN cautioned that "[i]t has [often] been held […] that the court first assuming jurisdiction […] may exercise that jurisdiction to the exclusion of other courts[.]" (*Colorado River*, 424 U.S. at 817-818). As *Colorado River* held, there are three main considerations that a federal court must assess when attempting to adjudicate state-law claims: (1) Inconvenience of the federal forum, (2) The desirability of avoiding piecemeal litigation, and (3) The order in which jurisdiction was obtained by the concurrent forums (*Ibid*). In the instant case, this Court is incredibly inconvenient of a forum. This Court *does not* know with sufficient specificity the events of the state litigation that has been ensuing for the past 1.5 years. **The Opposing Counsel's doctored and cherry-picked exhibits do not provide an accurate depiction of the claims contained therein in the state court proceeding**. As such, the Plaintiff has to file her own exhibits and have this Court potentially read through 1500 pages of state court documents in merely 2 weeks. Second, the Defendants resolutely attempt to move this Court for piecemeal litigation. The entire

record of these state court proceedings are being considered by the state appellate court. The

Defendants wish that judicial proceeding to be upended and this Court to rule that the Plaintiff's

claims were meritless or vexatious based on a *limited* record. Third, the state court gained

jurisdiction over all these cases before this Court. As such, jurisdiction to adjudicate the issue of

the Plaintiff's vexatiousness should lie in that court.

Further, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1

(1983), the Supreme Court held that 'the relative progress of the two actions' is also a factor that

a federal court must consider when making an abstention doctrine determination. Writing again

for the majority of the Court, JUSTICE BRENNAN indicated that if a state court action started

earlier than the federal court action, federal courts must defer jurisdiction to the state court. In the

instant case, all the state court actions over which Defendants seek **judgement** from this Court

declaring that Plaintiff's arguments therein as vexatious and frivolous, have started before this

action has started.

Other factors federal courts have typically considered under *Colorado River* abstention is

(1) whether federal law provides the rule of decision, (2) whether the state court will adequately

protect the rights of all parties, and (3) whether the federal filing was vexatious or reactive. *See*,

generally, *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841-842 (9th Cir. 2017).

*First*, in the instant case, the state-law vexatiousness statute must be employed as established

*supra*. As such, the Defendants arguments do not warrant the use of federal law. *Second*, there is

no indication that the state court will not adequately protect the rights of all parties, as standard

appellate procedure has been ensuing. **Indeed, having this Court intervene into that regular**

**judicial procedure because the Opposing Counsel is not content with the Plaintiff's legal**

**arguments in state court and her general subjective dissatisfaction thereof would upend**

that regular course of judicial conduct and possibly prejudice a party in that state court proceeding. *Third,* as the Plaintiff has established in her Motion for Sanctions, the Defendants' pleading is vexatious and is filed in reaction to the Plaintiff's claims against the Defendants and, as such, is **reactive**.

**As such, this Court cannot adjudicate the issue as to whether the Plaintiff is vexatious. Because the Court cannot adjudicate that question, and because the Defendants' Motion for Disclosure and Request for Judicial Notice lie** (double entendre intended) **on the fact that this Court should find the Plaintiff vexatious, the Defendants' request and motion fatally fail.**

> **d. Counsel's Request for Judicial Notice is a Textbook Abuse of the Judicial Notice Procedure and Should be Denied because Counsel is Practically Requesting this Court to Take Judicial Notice of the Truthfulness of State Court Documents**

It is a well-settled rule that while a court may take judicial notice of other judicial proceedings and documents contained therein, such judicial notice is over only the *existence* of such documents, not any factual or legal claims contained therein. *See*, "The Court declines to take judicial notice of the documents. The Court can take judicial notice only of the existence of such documents and not the contents or arguments contained in them[.]" *Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 U.S. Dist. LEXIS 110049, at *6 (C.D. Cal. June 26, 2023) (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015)). In the instant case, the defendants plainly request this Court to take judicial notice over the claims contained in these state court documents—some in the form of *dicta* made by disqualified judicial officers, some in orders that have been automatically stayed due to an appeal, and so forth. As such, judicial notice over such claims is not proper ground for judicial notice.

### e. Even if Opposing Counsel Were Requesting this Court to Only Judicially Notice the Existence of State Court Documents, such a Request Should Fail because Such Documents are Irrelevant to the Instant Matter

Even if assuming, *arguendo*, that the Defendants were only requesting this Court to take judicial notice of the existence of state court documents and not the veracity of the claims contained therein, the Defendants fail. The Defendants' only proffered reason as to why the exhibits in question are relevant is because the Plaintiff is 'vexatious' or a 'serial litigator.' As established *supra*, that is wrong. As also established *supra*, this Court should abstain from that issue. The rule allowing judicial notice requires that the fact at issue also be "an adjudicative fact," Fed. R. Evid. 201(a), and, based upon this requirement, courts require that such facts satisfy the evidentiary rules regarding relevance as well. *See Blye v. Cal. Supreme Court*, No. 11-5046, 2014 U.S. Dist. LEXIS 7329, *3 (N.D. Cal. Jan. 21, 2014) ("[A]n irrelevant fact is one not of consequence in determining the action, *see* Fed. R. Evid. 401(b), and therefore cannot be classified as an adjudicative fact."); *La Spina v. Wucherer*, No. 96- 1359, 1996 U.S. Dist. LEXIS 16095 (S.D. Cal. Oct. 9, 1996) (explaining that judicial notice is used to establish "relevant" facts). *Santa Monica Food Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of two City Council Staff Reports "as they are not relevant to the resolution of this appeal.").

Despite having been informed by the Plaintiff that the Defendants have to establish relevance, however, Defendants ignored that courts in this Circuit (and elsewhere) consistently deny requests to take judicial notice of irrelevant facts, especially in the context of dismissal motions, where the Defendants filed this request for judicial notice soon thereafter, where courts "consider only alleged facts that would be admissible in evidence." *Rosa v. TASER Int'l*, 684 F.3d 941, 948 (9th Cir. 2012); *Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010) (denying

-11-

judicial notice because materials submitted were "not relevant to the disposition of this appeal"); *Donastorg v. Riverside County Sheriff's Dep't*, No. 12-1654, 2014 U.S. Dist. LEXIS 91169, *6-7 (C.D. Cal. May 7, 2014) (denying judicial notice where evidence irrelevant to summary judgment motion); *Chyna v. Bayview Loan Servicing, LLC*, No. 14-cv-01415, 2016 U.S. Dist. LEXIS 133849, *9 n.3 (S.D. Cal. Sept. 27, 2016) (same).

Under Federal Rule of Evidence 401, evidence is deemed relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Accordingly, "only facts having rational probative value are admissible," *i.e.*, only where it is "[e]vidence which has any tendency in reason to prove any material fact[.]" *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973). The requirement of materiality is unqualified—the proposed evidence must go to "a matter properly provable in the case" and must be "of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee's notes to 1972 Proposed Rules.

Here, the Plaintiff's previous litigation is of no consequence to this action. The Defendants concede that argue that the materials over which judicial notice is sought is relevant because the Plaintiff is 'vexatious.' This is a circular nightmare: Request for judicial notice is appropriate and relevant because the Plaintiff is vexatious and the vexatiousness is the reason why judicial notice is appropriate but also that the judicial notice of exhibits need to establish *a priori* the exhibits' relevance. Defendants' fail under any conceivable notion of logic. If one's entire litigation history is relevant, should the Plaintiff move this Court to take judicial notice of every pleading Opposing Counsel has written?.

The Defendants wish this Court to be a forum of incessant personal attacks, where one's person matters more than their legal argument. Such a view of our court is inconceivable with

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC

the notion that federal courts are places of solemn and serious adjudication of disputes—by attempting to turn this Court into a personal attack forum, the Defendants wish to turn this Court into their own playground. This Court should **deny** allowing such personal attacks to take place only because Opposing Counsel wishes and desires to be an uncivil bulldog[9] (apologies to the Court for the strong language, but one can only refrain so much in the face of a 900-page personal diatribe filled with lies.).

### f. Even if Opposing Counsel Were Requesting this Court to Only Judicially Notice the Existence of State Court Documents, such a Request Should Fail because Counsel has Submitted Cropped and Doctored Exhibits

What lies as an assumption under the fact that a federal court can take judicial notice over the existence of other judicial records in the Public Record is the fact that such documents are presumed to be *true and correct copies* of their originals (how shocking of an assumption!). As set in the Plaintiff's Motion for Sanctions, the Defendants severely edited and cropped individual legal documents, sometimes changing the writing on them. As such, judicial notice over *ex post facto* edited state court documents is not proper.

### g. Opposing Counsel Has Clearly Filed this Request to Attempt to Prejudice this Court in the Wake of Her Motion to Dismiss and Requests for Judicial Notice that Will Prejudice a Party Unduly Should be Denied

Defendants' motion also fails to address—again, despite advance notice of Plaintiff's position that the proffered facts fall short of Federal Rule of Evidence 403—the many decisions

---

[9] Plaintiff shall file with this Court a Motion to Disqualify Khyrstyn Rhyannon McGarry for Ethics Misconduct; or, in the Alternative, Motion to Appoint Counsel to the Plaintiff under 28 U.S.C. § 1915 (e)(1) soon that will elucidate in detail why this Court has an **affirmative duty** to disqualify counsel who acts in this way—*i.e.* is a pathological liar. *See* "A court has inherent power to discipline attorneys, including through disqualification." *United States v. Wunsch*, 84 F.3d 1110, 114-16 (9th Cir. 1996). *See also* "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar[.]" *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir. 1985)).

within and outside the Ninth Circuit denying requests for judicial notice on the grounds of undue

prejudice. *See, e.g., Keyes v. Coley*, No. 09-1297, 2011 U.S. Dist. LEXIS 59625, *8-9 (E.D. Cal.

June 2, 2011) (sustaining objection to request for judicial notice on the basis that the evidence

was irrelevant, unduly prejudicial, and hearsay); *Cooper v. Redding*, No. 8:15CV441, 2017 U.S.

Dist. LEXIS 10942, *2 (D. Neb. Jan. 26, 2017) (denying judicial notice request under Fed. R.

Evid. 201(b) because "taking judicial notice of such matters could unduly prejudice

Defendant.").  *See, also and e.g., United States v. Gonzalez-Flores,* 418 F.3d 1093, 1098-99 (9th

Cir. 2005) (evidence presenting even a "modest likelihood of unfair prejudice" is "high enough

to outweigh the . . . probative value" of marginally relevant evidence); *United States v. Hitt,* 981

F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's

an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a

small risk of misleading the jury."). Accordingly, these facts are not properly the subject of

judicial notice.

In the instant case, the Plaintiff's alleged and proffered litigation history has no probative

value. As indicated *supra*, the Defendants' fraudulent motion and request is a simple attempt to

prejudice this Court in the wake of Defendants' Motion to Dismiss the action in its entirety with

no leave to amend. *See* also*, infra* at Section V (arguing that defendants simply wish this Court

to deliver moral opprobrium to the Plaintiff because the Plaintiff's actions do not comply with

the moral palatability standard of Opposing Counsel.).

### h.   Motion for Disclosure Should be Denied
#### i.   Defendants' Motion is a Logical Fallacy and They Cannot Logically Claim any Prejudice

Defendants' main and overarching argument in their motion is that allowing the Plaintiff

to proceed under a pseudonym would prejudice them and affect their defense because the

1
2
3
4
5

Plaintiff is vexatious. Assuming, *arguendo,* that the Plaintiff is vexatious, the Defendants cannot logically assert that they need the Plaintiff to proceed under a legal name to be able to establish the so-alleged vexatiousness **because the Defendants were able bring to this Court's attention the issue of vexatiousness** <u>while the Plaintiff was proceeding pseudonymously.</u> As such, the Defendants' motion, right out the gate, is a product of logical absurdity.

6
7
8
9
10
11
12
13

Further, the Defendants cannot logically claim that they are prejudiced by pseudonymous proceeding because the Defendants, as they admit, are aware of the true identity of the Plaintiff (given that they can obsessively stalk the Plaintiff online). How could defendants be thus prejudiced by pseudonymous proceeding? *See*, "Defendant will not be prejudiced if Plaintiffs proceed pseudonymously because **Plaintiffs have agreed to disclose their identifies** to Defendant for the purpose of the litigation[.]" *Roe v. City & Cty. of S.F.*, No. 24-cv-01562-JST, 2024 U.S. Dist. LEXIS 68388, at *3 (N.D. Cal. Apr. 15, 2024) (emphasis added).

14
15
16
17
18
19
20
21
22
23
24
25
26

As the Ninth Circuit repeatedly elucidated, **where a defendant does not know** the plaintiff's name, "at some later point in the proceedings it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute [their] individualized accusations." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1058, 1067-68 (9th Cir. 2000). **"But where the defendants know the plaintiffs' names, 'anonymity need not, and should not, impede either party's ability to develop its case' even though it is 'foreseeable that anonymity [will] raise problems for discovery**.'" *Doe 1 v. Nat'l Collegiate Athletic Assoc.*, No. 22-cv-01559-LB, 2022 U.S. Dist. LEXIS 156695, 2022 WL 3974098, at *2 (N.D. Cal. Aug. 30, 2022) (quoting *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015)) (emphasis added). *See,* further*,* "Plaintiffs have disclosed their true names to Defendants subject to a protective order, so pseudonymity should not impede Defendants' ability to develop their

27
28

1
2
3
4
5
6
7
8
9
10
11

case[.]" *Doe v. Github, Inc.*, 672 F. Supp. 3d 837 (2023). Though pseudonymity may pose

certain logistical challenges during discovery, this case remains at the pleadings stage. *See Doe*

*v. County of El Dorado*, No. 2:13-CV-01433-KJM, 2013 U.S. Dist. LEXIS 169883, 2013 WL

6230342, at *5 (E.D. Cal. Dec. 2, 2013) (explaining that, "**at the prediscovery stage . . . the**

**court need not yet consider the prejudice defendant will suffer during discovery**," as "**the**

**relevant prejudice is that which defendant presently suffers as a result of plaintiff's**

**anonymity**" (emphasis added)). Defendants do not articulate any prejudice associated with

Plaintiff proceeding pseudonymously at this stage of the litigation, and this Plaintiff cannot think

of any prejudice. Opposing Counsel's mere vague meanderings about prejudice are not

sufficient.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     Finally, the public interest factor does not weigh against permitting Plaintiffs to proceed

pseudonymously.  "The normal presumption in litigation . . . that parties must use their real

names . . . is loosely related to the public's right to open courts and the right of private

individuals to confront their accusers." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042 (9th Cir.

2010). **Where the plaintiffs' identities are not central to the issues raised by a case, however,**

**the public interest may not be harmed by permitting plaintiffs to proceed**

**pseudonymously**. *See Advanced Textile* , 214 F.3d at 1072 (reversing denial of anonymity where

"[t]he district court did not explain, and we fail to see, how disguising plaintiffs' identities will

obstruct public scrutiny of the important issues in th[e] case"); *Kamehameha*, 596 F.3d at

1043 (noting that, where plaintiffs brought "claims of widespread discrimination," "it [wa]s

difficult to see 'how disguising plaintiffs' identities w[ould] obstruct public scrutiny of the

important issues in th[e] case'") (quoting *Advanced Textile*, 214 F.3d at 1072).

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND
REQUEST FOR JUDICIAL NOTICE

1
2

Defendants cannot, thus, establish either prejudice on their side or on the side of public's right to scrutinize the functioning of the federal court system.

3

### ii. Opposing Counsel Lacks an Iota of Understanding as to how the Safe at Home Act Operates

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Opposing Counsel seems to maliciously act as if she is illiterate when it comes to reading statute that does not support her arguments. But before addressing Counsel's inability to understand written English, the Plaintiff must address the *Erie* doctrine and whether this Court should be applying state law for pseudonymous proceeding. The defendants do not seem to be disputing that state law is relevant to this Court's adjudication of pseudonymous proceeding (or that the Plaintiff is an active member of the Safe at Home Program), as they repeatedly mention the Safe At Home Act, which is state law. Regardless, *first*, this is not a diversity jurisdiction case, so the provisions of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) do not seem to be relevant to the instant case. *Gasperini v. Center for Humanities*, 518 U.S. 415 (1996)[10] extended the reach of the *Erie* doctrine. Here, it appears that the Safe at Home Act (codified as California Code of Civil Procedure, section 367.3) protects an important state interest—*id est*, California's interest in protecting victims of certain crimes from having their county of residence[11] be published in the Public Record. Classification of a law as "substantive" or "procedural" for *Erie* purposes is sometimes a challenging endeavor. *Guaranty Trust Co. v. York*, 326 U. S. 99. However, the substantive law in the instant case seems to be the Safe at Home Act, whereas the

21

---

22
23
24

[10] Page limitations prevent the Plaintiff from being able to fully explicate how *Gasperini* extended the reach of the *Erie* doctrine beyond diversity jurisdiction cases. If the court wishes to hear more arguments on this matter, the Plaintiff respectfully requests the Court to issue an order for supplemental briefing.

25
26
27

[11] Accordingly, simply sealing the Plaintiff's address will not help because the Plaintiff's name will imply that she is a resident of this County. Insofar as the Defendants allege that the Plaintiff's county of residence is already in the Public Record, **this claim is fatally mistaken because the defendants plainly lie to this Court about sealing motions that have been granted in the state court.** *See* Motion for Sanctions.

28

procedural law is the federal law. As such, under *Gasperini*, by analogy, even though this is not a diversity jurisdiction case, this Court should apply the Safe at Home as the substantive law for pseudonymous proceeding. Further, this "court [should] consider[] state law in mixed federal/state claims. While federal law is controlling, state law is nevertheless relevant, especially in mixed claims[.]" *Estate of Maldonado v. Sec'y of the Cal. Dep't of Corr. & Rehab.*, No. 2:06CV02696-MCE/GGH, 2007 U.S. Dist. LEXIS 91084, at *6 (E.D. Cal. Nov. 30, 2007).

Doing so results in the Plaintiff being permitted to proceed pseudonymously. The Safe at Home Act includes two provisions: (1) the ability to be proceeding pseudonymously in litigation that was initiated *after* a litigant became a member of the Safe at Home Act program, and (2) the provision of being able to seal *past* court documents because of one's membership in the Safe at Home Act program *after* the initiation of the membership. The two provisions are **independently available**. Whereas state court judges have discretion to deny motions to seal based on the second provisions of the Act, a judge does not seem to have discretion to *not allow* a party to proceed in a case that was initiated after one's enrollment in the Safe at Home program. Even the disqualified[12] state court judge recognized this fact and noted that "[i]f future filings take place in this case, the Safe at Home protocols will be followed" (*Ibid.*).

Further, the Defendants' reliance on *Del Nero v. Allstate Ins. Co.*, No. 200CV01126GMNVCF, 2022 WL 1618839, at *3 (D. Nev. May 23, 2022) is misplaced. There, the Court denied a *retroactive sealing* motion under the Safe at Home Act because the federal court was not *sitting* in the state of California. *Id*, at p. 5-7. In all cases where a litigant brought a claim to seal under the Safe at Home Act in a federal court that was sitting in California, the

---

[12] Defendants, like always, lie to this Court. This judge has been disqualified pursuant to an Alternative Writ of Mandate issued by the Court of Appeal. *See* Motion for Sanctions.

motion was granted and the litigant's identifying information was sealed. *Doe v. Univ. Accounting Serv., LLC*, No. 09-CV-01563-BAS-JLB, 2022 U.S. Dist. LEXIS 38151, at *1 (S.D. Cal. Mar. 3, 2022). To the extent that defendants wish to cherry-pick and decide which identifying information must be redacted and what must be not redacted…that is not how the statute works. The statute provides a litigant in the Safe at Home program the right to proceed pseudonymously, where the judge does not have the discretion to deny *prospective* pseudonymous proceeding—but *retroactive* sealing is a discretionary decision. *See*, California Code of Civil Procedure, section 367.3 (a) (1). As such, the defendants are fatally mistaken on the provisions of the Safe at Home program.[13]

### iii. Pseudonymous Proceeding is Warranted (For Reasons in Addition to the Safe at Home Act)

#### 1. Plaintiff is a Young Adult Proceeding Against her University

First, the Plaintiff must note that she is <u>uproariously lamenting</u> the Court not allowing the Plaintiff to file a separate motion for leave to proceed pseudonymously.  The Plaintiff's argument for pseudonymous proceeding, thus, needs to be <u>severely</u> contrived[14]. The Court's order rewards the defendants for flouting regular procedure. *See ante*, at 2-3 (setting out the appropriate procedure for opposing a party pseudonymously proceeding). The Plaintiff is initiating this action against her university. The Plaintiff fears that the university officials will retaliate against the Plaintiff because of her litigation. This fact is supported by the fact that certain university officials already retaliated against her, and there is a state action on that very retaliation. *See* Defendants' Exhibit O. As an undergraduate student who will be attending the same university for at least one more year, the Plaintiff's fear of retaliation is reasonable under

---

[13] Plaintiff also notes that in a state action against these very Defendants, represented by the same counsel, counsel did not oppose the Plaintiff proceeding pseudonymously under the Safe at Home Act because there is no viable statutory support for opposing *prospective* pseudonymous proceeding, as opposed to *retroactive* sealing.

[14] The Plaintiff, thus, implores this Court to at least issue an order to show cause if the Court decides that the Plaintiff should not proceed pseudonymously so that these arguments can be explicated at length and the Plaintiff can show cause against the issuance of such an order.

1
2
3
4
5
6
7
8
9
10
11

the second prong of the *Kamehameha* test. The Plaintiff is also particularly vulnerable to the feared harm, given the power the university officials can exert over her, thereby satisfying the third prong of the *Kamehameha* test. As established *supra*, there is no prejudice to the defendants or the public interest. And given that the power over which the Defendant University has over the Plaintiff, the fear is particularly strong. That the Defendants' counsel knows the Plaintiff's identity is not the same as *every* university employee, including the Plaintiff's professors, to know her litigation activity and possibly retaliate against her. Further, in all cases where a litigant proceeded against their school, the party was allowed to proceed pseudonymously, including the litigants in *Kamehameha*, who sued the Kamehameha school district. *See*, precisely, *Roe v. San Jose Unified Sch. Dist. Bd.*, No. 20-CV-02798-LHK, 2021 U.S. Dist. LEXIS 16633 (N.D. Cal. Jan. 28, 2021) (allowing the plaintiffs to proceed pseudonymously because they are active students in the school against whom the action was initiated).[15]

12

**2. In the Ninth Circuit, Transgender Status Is a Factor that Must be Considered for Pseudonymous Proceeding**

13
14
15
16

As set in the Complaint and the Opposition to Motion to Dismiss (*Id*., at 21), the Plaintiff has initiated this action in part due to discrimination[16] based on transgender status. In the Ninth Circuit and other circuits, plaintiffs similarly situated have been routinely (and without an

17
18
19
20
21
22
23
24
25
26
27

[15] Courts routinely allow young people to proceed pseudonymously. *See Doe v. Colgate Univ.,* No. 5:15-cv-1069-LEK-DEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016); *Doe v. Alger,* 317 F.R.D. 37, 40–41 (W.D. Va. 2016); *Doe v. New York Univ.*, 537 F. Supp. 4d 483, 496–97 (S.D.N.Y. 2021); *Doe v. Univ. of Chi.*, No. 16-cv-08298, 2017 WL 4163960, at *1 n.1 (N.D. Ill. Sept. 20, 2017); *Yacovelli v. Moser*, No. 1:02-cv-596, 2004 WL 1144183, at *9 (M.D.N.C. May 20, 2014); *Doe v. School Dist*. 214, No. 1:16-cv-07642, at 8–9 (N.D. Ill. Mar. 24, 2017); *Charles H. v. D.C*., No. 1:21-cv-00997, 2021 WL 6619327, at *3 (D.D.C. Apr. 9, 2021*); M.F. on behalf of R.L. v. Magellan Healthcare Inc*., No. 20-cv-3928, 2021 WL 1121042, at *1 n.2 (N.D. Ill. Mar. 24, 2021); *Roe v. Doe*, 319 F. Supp. 3d 422, 428 (D.D.C. 2018)(rejecting pseudonymity in part because the defendant was above 18), rev'd, 2019 WL 1778053, at *3 (D.D.C. Apr. 23, 2019) (allowing pseudonymity, in part because of the defendant's youth, and in part because "the pending motion now seeks to protect the identities of both parties, both of whom are young"); see also *Doe v. Doe*, 90 Mass. App. Ct. 1120, 2016 Mass. App. Unpub. LEXIS 1195, at *4 (2016) (upholding trial court's sealing of a college student's unsuccessful abuse prevention order case against another student, partly because "**the parties were young college students**").
[16] Whether transgender status can form a quasi-suspect or suspect class is an issue that must be addressed in a different pleading.

28

1
2
3
4
5
6
7
8
9

exception) allowed to proceed pseudonymously because of, *inter alia*, social stigma[17] and possible violence[18] that might result from non-pseudonymous proceeding. *See*, "Pseudonymous filing would be appropriate in this context [where transgender young people challenge a so-called 'conversion' therapy measure] to preserve privacy in a matter of sensitive and highly personal nature." *Tingley v. Ferguson*, 47 F.4th 1055, 1070 (9th Cir. 2022) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)) (internal quotation marks omitted).[19]

     *See*, further, *Delaware Valley Aesthetics, PLLC v. Doe* 1, No. CV 20-0456, 2021 WL 2681286, at *7 (E.D. Pa. June 30, 2021); *Doe v. Woodward Properties, Inc*., No. 2:20-cv-05090-JMY (E.D. Pa. Oct. 20, 2020), granting Motion for Order to Proceed Anonymously, id. (Oct. 14,

10
11
12
13
14
15
16
17
18

[17] *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704, 720 (D. Md. 2018) (noting that transgender individuals suffer "very high rates of violence" due to their status); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) ("[T]ransgender people have suffered a history of persecution and discrimination."); *Phillips v. Cane*, No. C13-596 RSM, 2013 WL 4049047, at *6 (W.D. Wash. Aug. 9, 2013) (finding that putting a transgender lawyer's personal information in the pleadings, including her name prior to gender reassignment, subjected her to an increased risk of physical danger and harassment); *Brocksmith v. United States*, 99 A.3d 690, 698 n.8 (D.C. 2014) ("The hostility and discrimination that transgender individuals face in our society today is well-documented."); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that disclosure of transgender status "creates a very real threat to Plaintiffs' personal security and bodily integrity").

19
20
21
22
23
24
25

[18] *See, e.g., Bd. Of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016) (allowing minor transgender plaintiff to proceed as John Doe, recognizing "courts have allowed non-minor transgender plaintiffs to proceed anonymously due to the social stigma associated with their gender identity" and collecting cases); *Doe v. City of Detroit*, No. 18-CV-11295, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) (finding that the transgender plaintiff was "justified" in her fear of being harmed by someone who learns that she is transgender and taking judicial notice of "the increased threat of violence to which transgender individuals are exposed"); *Ray v. Dir., Ohio Dep't of Health*, 2:18-CV-272, 2018 WL 8804858, at *1 (S.D. Ohio April 5, 2018) (noting that transgender people of all ages are "susceptible to retaliation, harassment, and social stigma due to their gender identity").

26
27

[19] The public has more of a right to scrutinize how this Court is tackling a discrimination analysis by a transgender litigant than the Plaintiff's identity.

28

2020); *Doe v. Gray*, No. 3:20-cv-00129-DRL-MGG, at 3 (N.D. Ind. Apr. 23, 2020); *Doe v. Gardens for Memory Care at Easton*, No. 18-cv-4027, at *2 (E.D. Pa. Sept. 21, 2018); *Doe v. Triangle Doughnuts, LLC*, No. 19-cv-5275, 2020 WL 3425150, at *6 (E.D. Pa. June 23, 2020); *Doe v. Dallas*, 16-cv-787-JCJ, at *1 n.1 (E.D. Pa. Mar. 10, 2016); *Doe v. Romberger*, 16-cv-2337-JP, at *1 n.1 (E.D. Pa. June 27, 2016); *Doe v. Dee Packaging Solutions, Inc*., No. 20-cv-2467, at 1 n.1 (E.D. Pa. July 23, 2020); *Roe v. Tabu Lounge & Sports Bar*, No. 20-cv-3688, at *1 (E.D. Pa. Sept. 10, 2020), granting Motion, id. (July 29, 2020); *Doe v. Colonial Intermediate Unit* 20, No. 20-cv-1215 (E.D. Pa. Aug. 25, 2020); *Doe v. Pa. Dep't of Corrections*, No. 19-cv-1584, 2019 WL 5683437, at *3 (M.D. Pa. Nov. 1, 2019); *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 73 (D.R.I. 1992); *Meriwether v. Trs. of Shawnee State Univ*., No. 1:18-cv753, 2019 WL 2392958, at *4 (S.D. Ohio Jan. 30, 2019); cf. *In the Matter of the Application of T.I.C.-C to Assume the Name of A.B.C.-C*., 271 A.3d 350, 359 (N.J. Super. Ct. App. Div.) (allowing sealing of identifying records in a transgender person's name change application). *In re M.T.*, 106 Cal. App. 5th 322, 326 Cal. Rptr. 3d 808 (2024) (same).

As the Second Circuit has explained: "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see K.L. v. State*, No. 3AN-11-05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is entitled to protection"); *see also Arroyo v. Rossello*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (internal quotation marks omitted) ("[T]here are few areas which more closely intimate facts of a personal nature than one's transgender status"); *Doe v. City of Detroit*, No. 18-CV-11295, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) (internal quotation marks omitted) (permitting a transgender individual to proceed by pseudonym upon finding that the individual's transgender status "certainly qualifies as information of the utmost intimacy"); *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992) (granting a transgender litigant's request for a pseudonym because, "[a]s a transsexual, plaintiff's privacy interest is both precious and fragile").

Viewed in this light, the Plaintiff satisfies all prongs of the *Kamehameha* test.

### 3. Defendants' Counsel has the Habit of Revealing Confidential Information in the Public Record

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC

As set in the Plaintiff's Opposition to Motion to Dismiss (*Id*. at 1-3), the Defendants' counsel has a habit of revealing in the Public Record student record information that must be kept private under federal law[20]. Although not in this Circuit, in *Meriwether*, the Court allowed a college student to proceed pseudonymously because the defendants' counsel released confidential student-record information in their pleadings. *Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-cv-753, 2019 U.S. Dist. LEXIS 98625, at *13-14 (S.D. Ohio Jan. 30, 2019). Similarly here, this Court should accordingly factor this fact in its analysis.

> #### iv.  Stanford Defendants Are Not Prejudiced and, indeed, Want Disclosure to Precisely Chill Litigation Efforts by Strongarming the Plaintiff with Harm she Reasonably Expects Absent Pseudonymous Litigation, and Counsel's Online Stalking Is a Testament to That Fact

Defendants' and their counsel's obsession with the Plaintiff and their incredible online stalking and the fact that they misrepresented material facts to this Court to reveal the Plaintiff's identity establishes an eerily malicious *mens rea* on the side of the defendants, and the Plaintiff contends that such obsessiveness should form a part of this Court's analysis. If they had no malicious intent to harm the Plaintiff, then why did defendants lie to this Court for 15 pages?

**IV.  Opposing Counsel's Main Argument Is Not that The Plaintiff Has Taken Actions Not Supported by the Law in her Previous Cases but that the Plaintiff's Litigation Strategy is against the Religious/Moral Views of the Opposing Counsel and that the Plaintiff's Speech Does Not Conform to her Palatability Standard, thereby Barring this Court's Review due to Doctrine of Ecclesiastical Abstention**

Having failed under any conceivable legal standard, and having attempted to deceive this Court repeatedly on virtually every factual point, the last—and the most offensive—blow Opposing Counsel delivers is the most reprehensible, the most alarming, and the most repugnant argument one could possibly make in a legal pleading: According to the Opposing

---

[20] Although the Defendant University seems to have classified this piece of information as 'directory information,' the Plaintiff opted out of the release of directory information when she enrolled in the said university. *See* 34 CFR § 99.37. As such, the counsel's release of this information violated the provisions of Family Educational Rights and Privacy Act.

-23-

1
2
3
4
5
6

Counsel, even if someone is correct in law and on facts, they have to satisfy a third and nebulous standard to be able to 'deserve' the right to appear before federal courts without having their integrity and personhood audited: That they must satisfy the arbitrary moralisms[21] of Opposing Counsel and they must speak in legal pleadings in a language that is palatable to her. And if someone does not, **a scarlet letter** with an A (for amoral) must be engraved, or tattooed, on their head, and they should never be able to appear in a federal court; they should be categorically barred from being properly heard because of who they are.

7
8
9
10
11
12
13
14
15
16
17
18
19

In one of the few instances in her pleading where she does not lie to the Court (those mischaracterizations are to be addressed, as the Plaintiff noted *supra*, in her Motion for Sanctions), Counsel proceeds to attack the Plaintiff's person because **she does not act in a way that is in conformity with Opposing Counsel's views on morality and that the Plaintiff does not speak in a way that is palatable to the Opposing Counsel.** What is even more, Opposing Counsel **maintains that portions of state law that do not conform to her morality should have been not followed by the Plaintiff**, and because the Plaintiff chose to follow the state law rather than Counsel's **vague meanderings on morality**, Plaintiff should receive moral censure from this Court. As the Plaintiff shall illustrate *infra* and *post*, what Opposing Counsel wishes this Court to become overrides millennia of caselaw and the *entire purpose* of the Judiciary. If the Judiciary is to become (or already is) the place Opposing Counsel wishes it to become, then this Nation's descent into lawless fascism and theocracy is already complete and those that *do* actually want to live in a civil and equal society should pack their bags and take a trans-continental flight elsewhere.

20
21
22
23

There are so many places to point—but given page limitations, the Plaintiff will point out to a couple. In California state law, a failure to answer or otherwise respond to a pleading 30 days after personal service gives a litigant the right to enter a clerk's[22] default against the non-

24
25
26
27

---

[21] That this moralism is delivered by someone who finds it morally palatable to lie to a court of law for 15 continuous pages only illustrates the point. It is a common trans-historical trend that those that seek moral condemnation of others often commit actions worthy of much greater moral condemnation.

[22] Common law

28

answering party. *See* California Rules of Court, Rule 5.401. In California state law, **unlike Ninth Circuit precedent**, a *pro se* litigant is held to the same restrictive standards as to procedural law as a member of the California Bar[23]—with no exceptions. Opposing Counsel argues that the Plaintiff and the state court should not have followed binding case law. Why? Because, Opposing Counsel maintains, her corrupt and arbitrary moralism require that *pro se* litigants be held above the law.[24] Why? No answer is provided. And, apparently, for the twisted mind of the Opposing Counsel, those that are liked by her should get special treatment and be held above the law—and following the law despite subjective dissatisfaction with the demands the law places on one makes one into someone that employs "aggressive litigation tactics" (Mot. at 5). What exactly is the point of Opposing Counsel? Although the Plaintiff is "not [a] mindreader[], … here is [her] best guess as to what the [Opposing Counsel] means[]" *Dobbs v. Jackson Women's Health Organization*, 597 U. S. 215, 376 (2022) (Breyer, Sotomayor, and Kagan, J.J., dissenting): She should become the Queen of the United States. The laws should be set according to her arbitrary moral meanderings and daily whims and desires. Any time a court is confronted with a legal issue, courts should ignore binding caselaw but should, instead, call Opposing Counsel, who would, in turn, deliver the appropriate moral opprobrium. She is the Law, similar to the Hobbesian sovereign.

Opposing Counsel next argues that the Plaintiff uses "disparaging language in filings" (Mot. for Disclosure, at p.5). Assuming*, arguendo*, that the Plaintiff does, the Opposing Counsel, this Court, or, for that matter, no one has the right to chill or regulate the Plaintiff's speech to a point "**where it is grammatically palatable to the most squeamish among us**" (*Cohen v.*

---

[23] *See* Defendants' Exhibit M, pp. 362-364 (collecting authority to find that *pro se* litigants are held to the same standard as attorneys in the California bar).

[24] Indeed, if one person is held above the law, then the law collapses into itself in its entirety. It is *shameful* that someone who is in the Bar cannot see that. *See* GIORGIO AGAMBEN, HOMO SACER: SOVERIGN POWER and BARE LIFE, (1988, Stanford UP ed.) (arguing, *inter alia*, that the concept of the sacred human in Roman republican law is the early precursor of the Schmidtian 'state of exception' which formed an important legal doctrine in Nazi-era Germanic law).

1
2
3
4

*California* 403 U.S. 15 (1971) (emphasis added)). Perhaps the Plaintiff speaks[25] "more distasteful than most others," but "it is nevertheless often true that one man's [*sic*] vulgarity is another's lyric" (*Ibid*). Who, precisely, is the Opposing Counsel that the entire American populace *must, resolutely,* speak in terms that will be palatable to her? And why—*why*—and who—*who*—is she precisely that she gets to arbitrate what is palatable speech and not?

5
6
7
8
9
10
11
12
13

Perhaps the Plaintiff's remark "was strong language, intemperate language" (*Craig v. Harney*, 331 U.S. 367 (1947), but the Plaintiff, nonetheless, has the First Amendment protection to protest and criticize any court order unless her criticism presents a clear and evident danger to the safety of the court. *See, inter alia, Bridges v. California,* 314 U.S. 252 (1941), *Pennekamp v. Florida*, 328 U.S. 331 (1946), *In re Little*, 404 U.S. 553 (1972). And, indeed, "[s]trong and effective extemporaneous rhetoric cannot be **nicely channeled in purely dulcet phrases**" (*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 928 (1982) (emphasis added)). And the state court judge against whom the criticism was raised clearly found so and did not start contempt proceedings against the Plaintiff. So, what exactly is the Opposing Counsel's point?

14
15
16
17
18
19
20
21
22
23

**Further—and this is perhaps *the most important* portion of this entire pleading**—the Opposing Counsel wishes this Court to go back to a dark stage and time of statutory construction and judicial conduct that many are glad we have left behind. If courts take the Opposing Counsel's position and start delivering judgment based on their arbitrary understanding of morality, then courts become churches, and the entire Establishment Clause is nullified in power. If courts pursue the Opposing Counsel's corrupt understanding of the law and the juridical, then any judicial officer should act as the Chief Justice did in *Bowers v. Hardwick* 478 U.S. 186 (1986) and make supposedly 'legal' judgements according to *ad hoc* concocted 'Judeo-Christian values.' *See* "As the Court notes, *ante* at 478 U. S. 192, the proscriptions against sodomy have very 'ancient roots.' […] Condemnation of those practices is firmly rooted

24
25
26
27

[25] The Plaintiff vehemently disputes this characterization and maintains that her criticism of the court order the judge that issued the said order later admitted was wrong in law was inappropriate. A judge who ignores 150 years' worth of precedent and when brough into his attention only acts arrogantly and does not correct himself until a writ petition is filed on that order is a judge without judicial humility—and the Plaintiff noted as such.

28

in Judeo-Christian moral and ethical standards**.** […] To hold that the act of homosexual sodomy is somehow protected as a fundamental right would be to cast aside millennia of moral teaching" (*Bowers,* at 478 U.S. at 197). But, *see*, precisely, "the Court's almost obsessive focus on homosexual activity is particularly hard to justify[.]" (*Bowers,* 478 U.S. at 200 (Blackmun, J., dissenting)). ***Precisely***, "[t]hat certain, but by no means all, religious groups condemn the behavior at issue gives the State **no license to impose their judgments on the entire citizenry**." (*Bowers,* 478 U.S. at 211 (Blackmun, J., dissenting) (emphasis added)). **Similarly here, Opposing Counsel's vague meanderings about why the Plaintiff's conduct does not satisfy her arbitrary moral beliefs are not enough**. Most of us do not desire—and the Constitution explicitly prohibits—laws to be set according to 3-4 people's religious or moral viewpoint. Most of us do not want to live lives whose boundaries are set according to "the proclivities of individuals[.]" (*Dobbs*, 597 U.S. at 364 (Breyer, Sotomayor, and Kagan, J.J., dissenting)). And although this pleading has now become quite academic, *see*, indeed, "When a majority is included in a faction, the form of popular government, on the other hand, enables it to sacrifice to its ruling passion or interest both the public good and the rights of other citizens." THE FEDERALIST, NO. 10 (Alexander Hamilton) (Wesleyan 1982 ed.). Normative morality, thus, is *never* an appropriate method of judicial adjudication because it is normative precisely because a majority faction decided to believe in it.

**Today, the only relief this Opposing Counsel asks from this Court—dressed up in so many words—is to punish the Plaintiff for not having complied with the Opposing Counsel's understanding of morality and ethics and that she did not speak in the matter Opposing Counsel wished the Plaintiff to speak or found palatable to her ears.** Although Opposing Counsel masquerades her request from this court as legal relief and attempts to be perceived as seeking legal relief from this Court, the Opposing Counsel ***simply is requesting moral opprobrium against the Plaintiff from this Court in the form of a legal judgement.*** Such judgements are usually delivered by one's parental unit, not a U.S. District Court judge. The crime? Having acted in a way (*id est*, requesting that everyone be treated equally before our courts) to which the Opposing Counsel's corrupt moral beliefs are, apparently, opposed.

1
2
3
4
5

Because the Defendants ask moral judgement from this Court, this Court must abstain from delivering such a judgment because of, *inter alia*, doctrine of ecclesiastical abstention. This Court delivering moral opprobrium would place the "power of the state into the forbidden area of religious freedom contrary to the principles of the First Amendment." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952) (elaborating the doctrine of ecclesiastical abstention).

6

### V.    CONCLUSION

7
8
9
10
11
12
13
14

For the foregoing reasons—but more so than anything because the Opposing Counsel thinks this Plaintiff is anserine enough to not realize her lies to this Court and because she thinks this Court is gullible enough to believe those lies (and because she thinks she could lie to this Court and get away with it), and because the Opposing Counsel wishes this Court to be a medieval Inquisition and because, thus, she wishes our Judiciary to be spined on its head and become an instrumentality for the random and arbitrary whims and moralisms of a tyrannical majority—the Plaintiff, in utter disgust by the Opposing Counsel's arguments, respectfully, but emphatically, implores that this Court denies the Stanford Defendants' Motion for Disclosure and Request for Judicial Notice.

15
16
17
18

In deep sadness with having acquired the unbearably heavy knowledge that such crude and cruel *ad hominem* attacks our entertained in our Judiciary and seen permissible by those in the legal profession, and that the Judiciary continues to be one ruled by the arbitrary moralisms of a tyrannical majority, having become the exact place that the Framers of our Constitution were (rightfully) worried it would become,

19
20

Respectfully submitted,

21
22

Dated:  July 21, 2025.

23
24
25

By:    */s/ Jane Doe*

JANE DOE

In Propria Persona

26
27
28

COMBINED OPPOSITION TO STANFORD, FENTON, AND SMITH'S MOTION FOR DISCLOSURE AND REQUEST FOR JUDICIAL NOTICE

Case No. 5:25-CV-03490-PCP-NMC