UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, | Case No. 25-cv-03490-PCP |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO SET ASIDE STIPULATED DISMISSAL** |
| JASON A. SMITH, et al., | Re: Dkt. Nos. 66, 90, 106 |
| Defendants. | |

Pro se plaintiff Jane Doe filed this action in April 2025, asserting fifteen claims against the Department of Public Safety at Stanford University (where Doe was then a student) and two of the department's employees, Santa Clara County, and a fellow Stanford student. In August 2025, all parties that had appeared stipulated to dismiss the action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Doe now moves to set aside that stipulated dismissal under Federal Rule of Civil Procedure 60(b). For the reasons below, Doe's motion is denied.

**BACKGROUND**

The genesis of this now-dismissed action was a criminal investigation of Doe by Stanford's Department of Public Safety in April 2025. The investigation began after another Stanford student, whom Doe had sued in a separate action in state court, complained to the department that Doe had impersonated the student while calling the state court in order to have one of the student's pleadings withdrawn. (Doe admits that she asked the state court to "cancel that pleading" but maintains that she did not impersonate the other student when doing so.) In response to the student's complaint, the department opened a criminal investigation, as part of which defendant-officer Jason Smith interviewed Doe in the lobby of the department's office. Doe alleges that, during the interview, Smith made her "feel[] very uncomfortable" due to his height and because he "started walking toward [her]." She also alleges that Smith refused her request to

United States District Court
Northern District of California

unlock the door to the room in which the interview took place, preventing her from leaving until she threatened to pursue legal action against him. Smith denies this account, instead characterizing the interview as entirely routine and asserting that Doe left through an unlocked door just three minutes after the interview began.[1]

The next day, Doe commenced this action. Her complaint asserted ten claims against the department, Smith, and Smith's supervisor Eric Fenton (together, the "Stanford defendants") under 42 U.S.C. § 1983, arguing that the criminal investigation and interview violated her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. Doe also asserted a civil-rights-conspiracy claim under 42 U.S.C. § 1985 and five claims under California law. In addition to naming the Stanford defendants, her complaint asserted claims against Santa Clara County and the student whose complaint had triggered the Department's investigation, arguing that the former had "granted [the Stanford defendants] the right to act under the color of law" and that the latter had "conspired with state officials to deprive … Doe of constitutional rights."

In early July 2025, roughly two months after Doe filed her complaint in this action, Stanford's office of undergraduate admission began investigating potentially fraudulent omissions in Doe's application for admission to Stanford. Richard H. Shaw, Jr., Stanford's dean of undergraduate admission, attested that the admissions investigation stemmed from the earlier criminal investigation, during which Stanford's department of public safety reviewed Doe's driver's license. That license listed an address for a dormitory at Rice University, which "raised concerns for [Shaw]" because Doe had "not disclose[d] her prior matriculation" at that university in her application to Stanford. Doe contends that the proffered reason for Shaw's investigation is entirely pretextual, as she first disclosed her driver's license to Stanford in 2023 without raising alarm. The true reason for the investigation, Doe insists, was Stanford's desire to retaliate against her for filing this lawsuit.

Whatever the root of the investigation, it bore fruit. In response to outreach from Shaw,

---

[1] The Court need not resolve this factual dispute to resolve Doe's Rule 60(b) motion. But video footage of the interview appears to support Smith's recollection of the encounter.

officials at Rice confirmed that Doe had been enrolled at that university from August 2022 to March 2023. Yet Doe applied to Stanford in December 2022 as a first-year student, not as a transfer, and never disclosed her enrollment at Rice, as the Stanford application required.

Shaw wrote to Doe on July 21, 2025 to inform her of the admissions investigation, provide her with an opportunity to respond, and ask that Doe sign a form authorizing Rice to release records related to her enrollment there within four days. Shaw's letter explained that, in her application to Stanford, Doe had agreed that Stanford reserved the right to require her to provide additional information (or to release information) related to the information provided or assertions made in connection with the application. Noting that the investigation might "lead to feelings of stress and anxiety," Shaw also identified mental-health resources available to Doe as a Stanford student. Shortly after receiving the email, Doe requested a two-week extension of the deadline to respond to Shaw's letter and to sign the release form. Shaw granted a three-day extension.

That same week, Doe began negotiating a potential dismissal of this action with the Stanford defendants' counsel. Three days after Shaw notified her of the admissions investigation, Doe met with defense counsel over Zoom in connection with another action she had filed against Stanford in state court. During that meeting, Doe proposed dismissing both this action and the state-court action in exchange for an agreement by Stanford to terminate the admissions investigation and allow her to remain at the university. Doe attests that she did so because the admissions investigation "was obviously related to [her] pending civil matters." Defense counsel responded that they would convey Doe's offer to their clients. Later that day, Doe emailed defense counsel to ask whether Stanford would suspend her deadline to respond to Shaw's letter while the university considered her dismissal offer. Defense counsel instructed Doe to "address any questions … regarding deadlines related to the admissions matter with the admissions office directly."

Two days after her meeting with defense counsel, Doe again emailed Shaw to request that he extend her deadline to respond to his letter and sign the release form. She explained that the second extension was necessary because she was "in an emergency room" after "ha[ving] two panic attacks, experienc[ing] a quite serious case of dyspnea, and faint[ing] multiple times in the

… week since receiving [Shaw's] email." Doe stated that Stanford's mental-health services were inaccessible to her because she was outside the United States and that she "fe[lt] like [she] might hurt [her]self." Shaw responded about ten minutes later, granting an additional three-day extension. Shaw's email also identified and encouraged Doe to use two Stanford crisis-support lines that were available to her "regardless of [her] location."

On the same day, Doe also emailed defense counsel with notice that several forthcoming motions in the state-court action would be delayed due to Doe's mental-health emergency. Defense counsel responded to "encourage [Doe] to get whatever help [she] need[ed] to address [her] health concerns," identifying two counseling resources available to Stanford students. Doe responded two days later, initiating an additional email exchange concerning Stanford's proposed demurrer in the state-court action. In that exchange, Doe noted that she was "unwell," "at the hospital," and "too discombobulated" to engage in substantive negotiation.

On July 29 and 30, 2025, Shaw and defense counsel received the same automated email from Doe in response to further outreach concerning mental-health resources and an upcoming deadline in the state-court action. The email stated that Doe had died by suicide as a result of the "unspeakable pain" caused by Shaw's July 21, 2025 letter "indicating … that [her] admissions offer might be retroactively revoked." Doe represents that she created this auto-response shortly before attempting suicide, but set the auto-response to begin sending twelve hours later. Doe also represents that, as a result of her attempted suicide, she lost consciousness for roughly one week before waking up in a hospital. During that week, Stanford engaged its global-risk team to locate Doe but was unable to do so.

Doe reappeared on August 5, 2025. That day, she emailed counsel for the Stanford defendants to confirm that she was still alive and "to ask if [their] clients ha[d] communicated their response to [counsel]" concerning Doe's "proposed settlement"—that is, her offer to dismiss this action in exchange for the termination of the admissions investigation. Doe then attempted to call defense counsel on August 8, 2026. Counsel responded by email later that day, stating in unambiguous terms that "Stanford reject[ed] [her] proposal" to "terminate [the] ongoing admissions matter and allow [Doe] to remain enrolled as part of a settlement." Counsel explained

4

that "[a]dmissions matters … w[ould] be determined independently by the admissions office." But counsel indicated that the Stanford defendants were open to "dismissing the litigation with prejudice in exchange for a waiver of costs and … ceasing further motion practice." At Doe's request, counsel for the Stanford defendants met with her by Zoom later that day. Defense counsel attests, and Doe does not dispute, that Doe "again asked if there were any circumstances under which Stanford was willing to reach an agreement allowing her to stay at Stanford." Counsel "reiterated that the admissions process was separate from the litigation," but "discussed dismissing the pending lawsuits in exchange for costs." Following the meeting, Doe emailed defense counsel to inquire "whether [Stanford] would be amenable to *any* kind of settlement offer in which the [admission] matter … might become part of the settlement offer."

During this period, Shaw continued to investigate Doe's application for admission. On August 1, 2025, while Doe may still have been unconscious, Shaw received a previously scheduled email from Doe responding to his letter. The letter claimed that Doe "never took classes at Rice or ever attended classes" and had withdrawn shortly after the start of her orientation in August 2022. As a result, Doe explained, she did not understand that she had "enrolled" at Rice or that she was required to disclose such enrollment to Stanford. Doe's letter also stated that she would not agree to release information related to her time at Rice without first consulting with counsel. After Doe's reappearance, Shaw responded to this letter by email on August 5, 2025, asking to "schedule a time … to connect via Zoom or telephone" and advising Doe that he would proceed with his investigation on the available record if Doe chose not to sign a release form. Over the next week, Doe agreed to answer a series of written questions concerning her time at Rice and to meet with Shaw by Zoom on August 14, 2025.

The parties vigorously dispute what occurred at the August 14, 2025 meeting. All agree that Doe met with Shaw and Mike Devlin, Stanford's associate dean and director of undergraduate admission, by Zoom. In a declaration filed in support of her Rule 60(b) motion, Doe attested that Shaw "indicated … that [Stanford's] Office of General Counsel asked him to" investigate Doe's admission. She also attested that, when asked "if the university w[ould] terminate the investigation … if the lawsuit w[ere] dismissed," Shaw "answered in the affirmative and asked that [she]

United States District Court
Northern District of California

United States District Court
Northern District of California

contact counsel for the defendants to facilitate the process." Both Shaw and Devlin flatly deny this account, attesting that Shaw's decision to conduct the investigation was entirely independent and that he never discussed terminating the investigation in exchange for dismissal of this or any other action. In her reply declarations, Doe concedes that Shaw "did not say that" he would terminate the investigation "directly." But she asserts that Shaw "told [Doe] that [she] should 'talk to the lawyers' for 'that to happen,'" thus "impl[ying] or ma[king] a clear promise" that "he would stop investigating [her] admissions application."

If Shaw made such a promise, whether expressly or impliedly, it is not reflected in the written record. Following the Zoom call, Doe exchanged several emails with Shaw concerning, among other matters, her authorization for a limited release of information from Rice. But neither Shaw's emails nor Doe's emails discussed the possibility of cutting off the investigation, whether in exchange for dismissal of a lawsuit or for any other reason. To the contrary, Shaw stated that if Doe did not authorize a full release of information from Rice by August 15, 2025, he would "commence a final review with intent to render a decision regarding [her] original admissions status."

Doe's subsequent emails with counsel for the Stanford defendants are similarly devoid of language suggesting any agreement to terminate the admissions investigation. On August 15, 2025, defense counsel responded to Doe's earlier request for a settlement including the termination of the admissions investigation. Counsel reiterated that "[t]he admissions process is separate from the pending litigation and … will be determined independently by the admissions office," but noted that defendants were amenable to waiving costs in exchange for dismissal of Doe's two pending lawsuits. On August 20, 2025, in response to another proposal by Doe to condition dismissal on assurances that her admissions would not be rescinded, defense counsel repeated "that admissions matters will continue to be handled by the admissions department— separately from the pending litigation." Counsel again asked Doe whether she would be amenable to dismiss her lawsuits in exchange for a waiver of costs. This time, Doe said yes.[2] As Doe had

---

[2] Doe represents that, beginning on August 18, 2025, her then-fiancé (now husband) wrote and sent emails to defense counsel on her behalf. As evidence, Doe filed an anonymized declaration by

expressed in an email to defense counsel earlier that week, she "wish[ed] to have all pending matters resolved quickly and quietly." And Doe attested that although "defendants' counsel refused to put … Shaw's promise in writing and … persistently indicated that the admissions [investigation] was unrelated to th[is] federal suit," she "hope[d] th[at] … Shaw's promise to [her] would be honored."

The parties stipulated to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) on August 21, 2025. The same day, Shaw notified Doe that Stanford had rescinded her admission based on a finding that her application had willfully omitted material information concerning her prior enrollment at Rice. Shaw's decision letter explained, among other grounds for his findings, that Rice's records contradicted Doe's assertions that she had never taken classes there and had withdrawn shortly after her orientation. As a result of the rescission, Doe—who is not a United States citizen and was abroad at the time of the rescission—has been unable to return to this country.[3]

Eight months after stipulating to dismiss this action, Doe filed a motion to set aside that dismissal under Federal Rule of Civil Procedure 60(b)(3) and (6). Doe argues that the dismissal was the result of fraud, retaliation, and exploitation of her mental incapacity. Doe also sought leave to amend or supplement her complaint in order to add new defendants and claims related to the rescission of her admission. And she sought a temporary restraining order that would, among other relief, compel Stanford to readmit her.

---

her husband, attesting that Doe "asked [him] to respond to her emails." The declaration states that Doe "authorize[d] the stipulation" to dismiss this action, but that he (not Doe) "emailed [counsel] her approval." Doe's husband attested that his declaration was not intended "to imply that the stipulation was obtained without [Doe]'s consent," but notes that Doe was extremely "weakened during this time."

[3] Doe represents that she had been residing in the United States on an F-1 visa, which permitted her to enter and remain in the country only so long as she maintained her status as a full-time student at an institution certified by Immigration and Customs Enforcement's Student and Exchange Visitors Program. Upon the rescission of her admission, Stanford allegedly terminated her record in the Student and Exchange Visitor Information System (SEVIS), which "[s]chools that sponsor F-1 nonimmigrants must use … to obtain certification from ICE." *Doe v. Trump*, 784 F. Supp. 3d 1297, 1304 (N.D. Cal. 2025). "[W]hen a SEVIS record is terminated …, an F-1 nonimmigrant … cannot re-enter the United States on the terminated SEVIS record." *Id.* at 1308 (citation omitted).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) defines the circumstances under which a court may set aside "a final judgment, order, or proceeding," including a stipulated dismissal under Rule 41(a). *See Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 307 (2025). "[A]ll Rule 60(b) motions[] must be made 'within a reasonable time.'" *Kemp v. United States*, 596 U.S. 528, 530 (2022) (quoting Fed. R. Civ. P. 60(c)).

Rule 60(b)(3) authorizes such relief in the case of "fraud …, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). A party moving under Rule 60(b)(3) "must prove by clear and convincing evidence" that the challenged dismissal "was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the [moving] party from fully and fairly presenting" her case. *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

Where another provision of Rule 60(b) does not apply, Rule 60(b)(6) permits a court to set aside a dismissal for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Although couched in broad terms, subparagraph (6) requires a showing that the grounds justifying relief are extraordinary." *Reynolds v. Lomas*, No. C 11-03218 JSW, 2012 WL 4714525, at *1 (N.D. Cal. Oct. 3, 2012) (citing *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1981)), *aff'd*, 554 F. App'x 548 (9th Cir. 2014).

**ANALYSIS**

**I.    Doe has not established a basis for relief from the stipulated dismissal.**

Doe moves to set aside the parties' stipulated dismissal of this action pursuant to Rules 60(b)(3) and 60(b)(6).[4] As explained below, Doe has not carried the significant burden required to

---

[4] Doe also makes passing assertions that she is entitled to relief under two other provisions of Rule 60. First, her motion suggests that, "[t]aking the facts of the case … as a whole, the defendants' conduct … amount[s] to fraud upon the court" that could support setting aside the parties' stipulated dismissal under Rule 60(d)(3). Doe properly appears to abandon this argument in her reply. As an initial matter, Rule 60(d)(3) applies only to "a judgment." Fed. R. Civ. P. 60(d)(3). The Court is unaware of any authority suggesting that a stipulated dismissal under Rule 41 is a "judgment," and the Supreme Court has suggested the opposite. *See Waetzig*, 604 U.S. at 317 (explaining that a "judgment" generally involves a "judicial determination" and suggesting that a voluntary dismissal involves no such judicial determination). In any event, the record contains no evidence suggesting "fraud on the court" leading to the stipulated dismissal. "[F]raud on the court

8

secure relief under either provision.

### A. Doe has not demonstrated by clear and convincing evidence that defendants secured the dismissal this action through fraud or misconduct.

Doe argues that she is entitled to relief under Rule 60(b)(3) because defendants obtained the stipulated dismissal through fraud and misconduct. *See De Saracho*, 206 F.3d at 880. But Doe has not established the alleged fraud or the alleged misconduct by clear and convincing evidence, as Rule 60(b)(3) requires. *See id*.

First, Doe contends that the stipulated dismissal was the result of fraud because Shaw "promised [her] that the [admission] matter would be dropped if [she] dismissed this suit." Doe's only evidence of that promise is her own declarations describing the August 14, 2025 video conference with Shaw and Devlin. Both Shaw and Devlin attested that Shaw made no such promise, directly contradicting Doe's assertions. And Doe's subsequent communications with Shaw support his and Devlin's account. Less than a day after the Zoom call, Shaw told Doe that he would soon "commence a final review with intent to render a decision regarding [her] original admissions status." Shaw would have little reason to prepare a final decision if he had already agreed to terminate the investigation. And Doe alleges that she sent an email to Shaw alerting him that she was "dropping the suits, if they are, indeed related to this [admissions] matter."[5] A

---

must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *United States v. Sierra Pacific Industries, Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) (citation modified). The parties' stipulated dismissal under Rule 41 was self-executing and required no decision of the Court that could have been improperly influenced by fraud.

Second, Doe argues in her reply that new evidence discovered after she filed her Rule 60(b) motion warrants relief under Rule 60(b)(2), which authorizes relief where a moving party discovers new evidence "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). But to warrant relief under Rule 60(b)(2), "the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987)). Doe argues that newly discovered evidence shows that Shaw initiated the admissions investigation in retaliation for her filing of this lawsuit. As discussed below, however, Doe was aware of the alleged retaliation before she stipulated to dismiss this action. Accordingly, there is no basis to conclude that additional evidence of that retaliation would have changed the outcome here.

[5] This email is not in the record. Doe explains that she sent it from her Stanford email account, to which she no longer has access, and Shaw has not produced any such email.

United States District Court
Northern District of California

statement querying "if" there was any connection between the admissions investigation and Doe's lawsuits does not suggest that Doe had already secured a promise from Shaw to terminate the investigation upon dismissal of this action.

Doe attempts to explain the lack of evidence as the result of necessary caution. Discussing the promised exchange in writing would, she worried, reveal the retaliatory nature of the admissions investigation and "make Stanford walk back on its offer" to avoid future liability. If Doe's goal was to hide any evidence of her purported agreement with Shaw, she was successful. Whether Doe's assertions are truthful or not, the record does not contain clear and convincing evidence to support them.

Even crediting Doe's declarations, however, would not establish fraud. Doe concedes that Shaw did not make any express promise. At most, her declarations demonstrate that Shaw "implied" that Doe might secure an agreement to terminate the investigation by "talk[ing] to the lawyers." Yet in the following days, counsel for the Stanford defendants—the only individuals expressly authorized to represent Stanford in connection with this lawsuit—repeatedly and unambiguously told Doe that the dismissal of this action would not impact the admissions investigation. Doe concedes as much but attests that she nevertheless dismissed the action "in the hopes that … Shaw's promise to [her] would be honored." Dashed hopes do not amount to fraud. And they do not warrant relief under Rule 60(b)(3).

Second, Doe argues that defendants engaged in "misconduct" within the meaning of Rule 60(b)(3) by using the admissions investigation to retaliate against her for filing this and other lawsuits and to pressure her into dismissing the actions. Even assuming that defendants acted with a retaliatory motive, Doe knew of the alleged retaliation before stipulating to dismiss this action. Indeed, she insists that Shaw revealed the retaliatory nature of his investigation on August 14, 2025, one full week before the dismissal. And she asserts that she raised concerns about the retaliation by email to Shaw as early as July 21, 2025.[6] "Rule 60(b)(3) relief requires that the

---

[6] This email, which Doe asserts was sent from her now-inaccessible Stanford account, is not in the record.

United States District Court
Northern District of California

misconduct 'not be discoverable by due diligence before or during the proceedings.'" *United States for Use & Benefit of Nasatka Barrier, Inc. v. Int'l Fid. Ins. Co.*, No. CV168064, 2019 WL 6971381, at *2 (C.D. Cal. Apr. 2, 2019) (quoting *Casey v. Albertson's*, 362 F.3d 1254, 1260 (9th Cir. 2004)). Doe asserts that Shaw's retaliation was not just discover*able* but actually discover*ed* prior to dismissal, so it cannot provide a basis for relief under Rule 60(b)(3).

### B.     Doe has not established "extraordinary circumstances" justifying relief under Rule 60(b)(6).

"Judgments are not often set aside under Rule 60(b)(6)." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006). Nevertheless, Doe argues that "extraordinary circumstances" warranting relief under Rule 60(b)(6) exist for two reasons.

First, Doe contends that defendants were aware that she was mentally "incapacitated" at the time of the stipulation and took advantage of her incapacitation to secure an agreement to dismiss this action. It is possible, of course, that Doe lacked sufficient mental capacity for a period following her attempted suicide.[7] But the record does not support her assertion that she remained incapacitated when she stipulated to a dismissal. Far from it—in the period between her reappearance on August 5, 2025 and the stipulated dismissal on August 21, 2025, Doe litigated this case (and the admissions matter) with gusto. For example, she corresponded at length and in great detail with both Shaw and defense counsel, sending far more emails than she received. She participated in at least two video calls related to these matters on August 8 and 14, 2025, and she requested several other virtual meetings. She had her fiancé serve defense counsel with a 26-page motion for sanctions on August 13, 2025. And she filed three separate administrative motions in this action in one day on August 10, 2025. None of this conduct suggests incapacitation. At the very least, any incapacitation would not have been readily apparent to defendants.

If defendants understood Doe to be incapacitated, no evidence suggests that they seized on that vulnerability to secure her stipulation to a dismissal, as Doe asserts. The available email communications between Doe and counsel for the Stanford defendants show that Doe was the first

---

[7] While defendants assert that Doe's claimed suicide attempt "is just another set of lies," the Court need not and therefore does not address this factual dispute.

party to broach the topic of a stipulated dismissal. And it was at Doe's constant urging through daily emails to defense counsel in the week before the stipulated dismissal that the parties quickly reached an agreement. Defendants had good reason to think the dismissal would be of solace to Doe in her allegedly weakened state—as she stated in an email on August 15, 2025, she had "indicated multiple times" that she "wish[ed] to have all pending matters resolve quickly and quietly" so that she could "focus [her] energy on [her] newly-officialized family—not fighting against [defense counsel] and their [clients]." Doe stated that she "just want[ed] to be left alone," and defendants complied. That is hardly extraordinary.

To the extent Doe's alleged incapacitation and defendants' alleged exploitation thereof might once have merited relief under Rule 60(b)(6), Doe's delay in seeking such relief counsels against granting her motion on that basis. *See Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012) (explaining that a "delay between the finality of the judgment [or proceeding] and the motion for Rule 60(b)(6) relief" is an important factor to be considered (quoting *Phelps v. Alameida,* 569 F.3d 1120, 1138 (9th Cir. 2009)). As with her claim of retaliation, Doe knew of defendants' claimed exploitation of her mental incapacitation before she stipulated to dismissal, as evidenced by multiple accusatory emails she sent to Shaw in early August 2025. Yet she waited until eight months after the stipulated dismissal was filed to pursue relief under Rule 60(b). She has provided little explanation for that delay.

Second, Doe argues that extraordinary circumstances exist here because various traditional equitable doctrines entitle her to relief, including promissory estoppel, estoppel by convention, conflict estoppel, and unconscionability. Defendants insist that these doctrines have no place in a Rule 60(b)(6) analysis. Whether or not principles of estoppel and unconscionability could ever justify setting aside a stipulated dismissal, they are clearly inapplicable here.

Doe's estoppel theories all hinge on her already-rejected argument that Shaw promised not to rescind her admission if she dismissed this action. Given that Doe's subsequent communications with the attorneys authorized to represent the Stanford defendants in connection with this proceeding made Stanford's position and the terms of the dismissal clear—i.e., that the admissions inquiry was a separate matter and that the stipulated dismissal would not bear upon

United States District Court
Northern District of California

that inquiry in any way—there is no basis to apply any theory of estoppel here.

Doe separately argues that the parties' agreement to dismiss her lawsuits was substantively unconscionable because the agreement was "severely one[]-sided" in that she "g[ot] nothing" while "[d]efendants g[ot] rid of the multiple civil rights claims" against them. But Doe received a waiver of costs in exchange for dismissing her suits. Though Doe now argues otherwise, her emails with defense counsel make clear that the waiver was of significant value to Doe. On August 18, 2025, three days before stipulating to dismiss this action, Doe explained to defense counsel that her decision as to dismissal would "be influenced" by whether defendants "would be able to recover costs after a possible dismissal." And in her email accepting defendants' offer to waive costs in exchange for dismissal, Doe insisted that they "provide a signed letter indicating that no costs would be recovered," again suggesting the waiver was of value to her. Beyond these tangible benefits, Doe also received the "quick[] and quiet[]" resolution of her lawsuits that she expressly desired. Given these benefits to Doe, her unconscionability argument fails.

Accordingly, the Court concludes that no extraordinary circumstances exist that might warrant relief under Rule 60(b)(6).

### C.    Doe's Rule 60(b) motion may be untimely.

The Court denies the Rule 60(b) motion because Doe has not demonstrated a basis for relief under Rule 60(b)(3) or (6). But even if she had established grounds for relief, her request to set aside the stipulated dismissal might fail for another reason: her delay in filing the motion.

"Rule 60(c) imposes deadlines on Rule 60(b) motions. All must be filed 'within a reasonable time.'" *Kemp*, 596 U.S. at 533 (quoting Fed. R. Civ. P. 60(c)(1)). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge v. United States*, 587 F.3d 1188, 1196–97 (9th Cir. 2009) (quoting *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam)). Here, Doe knew of each of the bases for her motion—Stanford's rescission of her admission, the allegedly retaliatory nature of the admissions investigation, and her alleged incapacitation at the time of the stipulation—no later than a few days after stipulating to dismiss this action. As already

discussed, she filed her Rule 60(b) motion eight months after the stipulated dismissal.

Doe has offered little explanation for this delay, likely because defendants did not argue in their opposition that Doe's motion was untimely under Rule 60(c)(1). But the Court has an independent obligation to enforce Rule 60(c)(1)'s time limit. *See Wolff v. California*, 236 F. Supp. 3d 1154, 1164 (C.D. Cal. 2017); *see also McKnight v. Neven*, 366 Fed. Appx. 841, 842–43 (9th Cir. 2010) (unpublished). For that reason, had Doe established a basis to set aside the dismissal under either Rule 60(b)(3) or (6), the Court still could not grant her motion on the present record. At the least, the Court would require supplemental briefing to explain the reasonableness of her delay in seeking such relief.

**II.    Doe's motions for leave to amend or supplement the complaint and for a temporary restraining order are denied for lack of jurisdiction.**

In addition to her Rule 60(b) motion, Doe filed a motion for leave to file an amended or supplemental complaint and a motion for a temporary restraining order seeking, among other relief, to reinstate her Stanford admission, financial aid package, and housing. Because the parties dismissed this action pursuant to Rule 41, and the Court denies Doe's motion to reopen the action under Rule 60, the Court no longer has jurisdiction to address the merits of Doe's claims or to grant substantive relief related to those claims. *See United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1145 (9th Cir. 2008); *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 665 (9th Cir. 1997). As a result, Doe's motions for leave to amend or supplement her complaint and for a temporary restraining order must also be denied. *Cf. Jou v. Kimberly-Clark Corp.*, No. 13-CV-03075, 2015 WL 4537533, at *3 (N.D. Cal. July 27, 2015) (explaining that dismissal under Rule 41 mooted a pending motion to intervene).

### CONCLUSION

Doe's motion to set aside the stipulated dismissal (Dkt. No. 66) is DENIED. Doe's motions for leave to amend or supplement her complaint (Dkt. No. 90) and for a temporary restraining order (Dkt. No. 106) are DENIED for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated: May 4, 2026

_____
P. Casey Pitts
United States District Judge