JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| JANE DOE, an individual, | Case No.:  5:25-cv-03490-PCP |
| Plaintiff, | **ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS** |
| v. | |
| JASON A. SMITH, *et al.*, | |
| Defendants. | |
| | Before the Honorable P. Casey Pitts |

Pursuant to Civil L.R. 7-11, the Plaintiff hereby respectfully moves this Court for "miscellaneous administrative" relief with the hope that this would be the last time she is doing so after what appears to be an incredibly emotionally taxing period of incessant motion practice.

*First,* it appears to the undersigned that all pending and proposed motions before this Court has now been rendered moot, and the Court lacks subject-matter jurisdiction to deny or grant them. The Plaintiff attempted to persuade this Court to answer this question of first impression in her administrative motion at Dkt. No. 76 [asking the Court if the Court reads *Waetzig v. Halliburton Energy Services, Inc.,* 604 U.S. 305 (2025), as providing subject-matter jurisdiction *at the time of*

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS
5:25-cv-03490-PCP

filing a Rule 60(b) motion or whether granting it would be the conferral of subject-matter jurisdiction thereof and thereto], and the Court understandably, given the difficulty of answering such questions of first impression, circumvented that question. But that question comes up again now.

The dismissal of this action by stipulation was "self-effectuating" and divested this Court of any subject-matter jurisdiction. *See United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1145 (9th Cir. 2008). "There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play." *Pedrina v. Chun*, 987 F.2d 608, 610 (9th Cir. 1993). As such, "until […] the judgment is reopened by the granting of a Rule 60 motion," *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 665 (9th Cir. 1997) (citing *Lindauer v. Rogers,* 91 F.3d 1355, 1357 (9th Cir. 1996) (which did not happen in this case), this Court was—and given the denial of that motion—is without subject-matter jurisdiction. This Court further lost jurisdiction on any matter on and related to the Rule 60(b) motion when appeal on this Court's order on that motion was perfected. "The filing of a notice of appeal divests the district court of jurisdiction." *Scott v. Younger* , 739 F.2d 1464, 1466 (9th Cir. 1984) (collecting cases). Indeed, "Ninth Circuit law requires the conclusion that, unless the case is remanded, a district court does not regain jurisdiction after a notice of appeal is filed. The Supreme Court has approved of a better procedure. Thereunder, a district court may decide postjudgment motions without leave of the appellate court, once the appellate mandate has issued. We follow that procedure, holding that the court had jurisdiction to consider Gould's motions." *Gould v. Mut. Life Ins. Co.*, 790 F.2d 769, 775 (9th Cir. 1986).

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP

As such, just as what happened with previous administrative motions to seal and previous administrative motions to consider whether other party's material should be sealed when the stipulated dismissal was filed on August 21, 2025, all of these pending motions were terminated by operation of law when the Court denied the Rule 60(b) motion.

Similar is, of course, this Court's leave to the Plaintiff to file a noticed motion to strike. *See* Dkt. No. 137. The Plaintiff wanted to avoid this precise result and that is why she sought leave from the Court to make her motion to strike on an *ex parte* basis. The Plaintiff finds this result existentially depressing and dreadful, but it appears that this is the procedural law of this Circuit. The Plaintiff laments that this Court recognized that most of what the defendants submitted in their opposition to the Motion to Set Aside Stipulated Dismissal was irrelevant, immaterial and submitted for the sake of scandalousness. *See* ECF No. 155, at p. 2, n. 1. It is lamentable that the Court did not permit the Plaintiff to struck those irrelevant pleadings properly or that it did not strike them *sua sponte*, just as the Court did when the Plaintiff attempted to strike the defendants' ceaseless *ad hominem* attacks on the Plaintiff. *See* ECF No. 124.  "All persons involved in the judicial process— judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647. "[P]arties to litigation should refrain from employing *ad hominem* rhetoric." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 2020 U.S. App. LEXIS 35366, 2020 WL 6578223, *17 (9th Cir. 2020) "'Courts of justice are universally acknowledged to be vested, by their very creation, with the power to impose silence, respect, and decorum'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) "It should go without saying that no participant in a judicial proceeding may address another participant with profanity-laced vitriol." *Ariz. Bd. of Regents v. Doe*, No. CV-20-01638-PHX-DWL, 2020 U.S. Dist. LEXIS 155651, at *2 (D. Ariz. Aug. 27, 2020). "[A]ll

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP

litigants must demonstrate a level of civility in pleadings and proceedings that displays a basic understanding of and respect for the courts and the rule of law in this nation." *Kyler v. Everson*, 442 F.3d 1251, 1253-54 (10th Cir. 2006).

The Plaintiff finds it existentially dreadful that the undersigned could not bring a legal question before this Court (and a *good* legal question—one that involved multiple questions of first impression in this Circuit) without having her genitals be involved. See ECF 108-3 at p. 4 (referring to the Plaintiff as a "biological male"). It is equally regrettable that the Court chose to not struck those pleadings when courts around this country do so without an exception. *See, e.g., Hecox v. Little*, 479 F. Supp. 3d 930, 956-57 (D. Idaho 2020) (indicating that the "Court is concerned by this conduct" of referring to the Plaintiff "using masculine pronouns and refers to other transgender women by their former male names" and calling transgender women "biological males" and admonishing counsel thereto). "Although immaterial to this ruling, the Court would be derelict if it failed to note the defendants' careless disrespect for the plaintiff's transgender identity […] The Court cautions counsel against maintaining a similar tone in future filings." *Canada v. Hall*, 2019 WL 1294660, at *1 n. 1 (N.D. Ill. March 21, 2019).

It is regretful—nay, unbearable—that the Court chose to let the solemnity of the judiciary be destroyed because of defense counsel's pathological obsession to *destroy* his opponent, but not her legal arguments. It is regrettable—depressing—that the Court allowed such "political whims" *United States v. Skrmetti*, 605 U.S. 495, 579, 145 S. Ct. 1816, 1868 (2025) (Sotomayor, J., dissenting) to dominate his courtroom. And, in that process, it destroyed the place of the Judiciary in the public imagination as a place of "silence, respect, and decorum" *Chambers, ibid.*

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP

The injury herein becomes ever-the-more injurious because the conduct in question is "not just the stab of present insult, but the stinging barbs of history, which catch and tear at the psyche the way thorns tear at the skin." *Bailey v. S.F. Dist. Attorney's Office*, 16 Cal. 5th 611, 631 (2024), citing *McGinest v. GTE Service Corp*. 360 F.3d 1103, 1116 (9th Cir. 2004). The speculative ideal of transgender people as evil deceiver and make-believers[1] who impersonate some fiction is a common historical way of positing that said identity writ large in the law enforcement's petty and limited imagination. *See, e.g., Skrmetti,* 605 U.S. at 601 (Sotomayor, J., dissenting and writing in opposition to Justice Barrett's contention that there existed no historical form of government-sponsored discrimination against transgender people by suggesting the existence of such "*de jure* discrimination in the form of cross-dressing bans, police brutality, and anti-sodomy laws." [collecting authority]).

It is equally regrettable that these important questions of first impression are not going to be able to address before the Ninth Circuit as *important legal debates* and the Ninth Circuit's review will inadvertently be tied to Defendant Smith's perception of the Plaintiff's genital morphology. It is saddening that the Plaintiff cannot be a 'person' before a court of law without her personhood being attached to her bodily morphology. It is equally saddening that the law, *nom propre*, continues to be what is, in common parlance, referred to as an "old boys club." And not much changes in it. The old way of doing business continues. What defense counsel did in this case…is analogous to arguing that petitioners that sought *certiorari* relief before the Supreme Court on their Fourteenth

---

[1] *See* TALIA MAE BETTCHER, "Evil Deceivers and Make-Believers: On Transphobic Violence and the Politics of Illusion," *Hypatia* (Vol. 22, No. 3), at pp. 45-65 (Cambridge UP, 2007 summer ed.) (writing after Gwen Araujo's murder in California where law enforcement branded her as a deceitful impersonator who lured her murdered to have sexual relations with her, invoking the so-called 'trans panic defense').

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP

Amendment rights were purportedly part of a "so-called homosexual agenda, […] [an] agenda promoted by some homosexual activists directed at eliminating the moral opprobrium that has traditionally attached to homosexual conduct." *Lawrence v. Texas*, 539 U.S. 558, 602, 123 S. Ct. 2472, 2496 (2003) (Scalia, J., dissenting). That kind of *ad hominem* attack defense counsel uses to such exaggerated proportions, where the *certiorari* petitioners in *Lawrence* were part of some global cabal to make children (and your children!) gay—that "same dangerous logic underlying"—was "redeploy[ed]" *Trump v. Hawaii*, 585 U.S. 667, 754, 138 S. Ct. 2392, 2448 (2018) (Sotomayor, J., dissenting). That redeployment once again evokes a similar panic—that the Plaintiff "sounds female" while being a "biological male" and, thus, should be a two-time felon for impersonation. And this Court, plainly, played along and *sub silentio* condoned it. The undersigned is afraid that this Court's playing along would be looked at with the same level of moral opprobrium one looks with at *Korematsu*. *See Trump, ibid* (drawing parallels between *Korematsu* and *Trump*).

*Second*, in the case that the Court finds jurisdiction in itself to continue to entertain the sealing motions, the Plaintiff submits that briefing on them be stayed pending the disposition of the Plaintiff's motion to proceed pseudonymously in the non-related yet related case.  This Court's "inherent power to control [its] docket[,]" *see In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006), wold permit such a stay. And such a stay would serve equity. Although the Court ruled that the cases are not related, *see* Dkt. No. 159, it is clear from this Court's docket that the there-plaintiff is the plaintiff herein as well. As such, if leave to proceed pseudonymously in that case is granted, any record herein that will reveal the Plaintiff's particulars would inadvertently violate that order. *See Doe v. Board of Trustees of Leland Stanford Junior University, et al.,* 5:26-cv-03809, Dkt. No. 28 (granting plaintiff's interim sealing motions pending

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP

the disposition of the motion for leave to proceed under a pseudonym) and No. 29 (granting plaintiff leave to file an unnoticed motion for leave to proceed under a pseudonym).

In "[d]ashed hopes" (ECF No. 155, at p. 10) that even the undersigned would be able to become a person under our constitutional order who would be able to argue legal cases on their legal merits,

Hereby submitted,

DATED: May 8, 2026.

/s/ Jane Doe
_____

JANE DOE
In Propria Persona

ADMINISTRATIVE MOTION RE: AS TO WHETHER THIS COURT CONSIDERS THE REMAINING MOTIONS IN THIS CASE MOOT GIVEN ITS RULING ON THE RULE 60(B) MOTION; OR, IN THE ALTERNATIVE, ADMINISTRATIVE MOTION TO STAY BRIEFING ON THE SEALING MOTIONS

5:25-cv-03490-PCP