JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>*v.*<br><br>JASON A. SMITH, *et al.*,<br><br>Defendants. | Case No.: 5:25-cv-03490-PCP<br><br>**NOTICE OF MOTION AND MOTION FOR THE IMPOSITION OF SANCTIONS UNDER THIS COURT'S INHERENT JURISDICTION ON STANFORD DEFENDANTS; MEMORANDUM OF POINT AND AUTHORITIES**<br><br>Before the Honorable P. Casey Pitts<br><br>(Administrative Motion for Leave to File Declarations for *In Camera* Review and Supporting Documents Filed Seperately) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on **November 12, 2026 at 10:00 a.m.**, or as soon thereafter as the matter may be heard, before The Honorable Casey Pitts in Courtroom 8 of the above-entitled court, located at 280 South First Street, San Jose, CA 95113, Plaintiff Jane Doe will and does hereby move this Court for the imposition of sanctions on certain defendants under its inherent jurisdiction.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

DATED: September 17, 2026.

*/s/ Jane Doe*

JANE DOE
*In Propria Persona*

**TABLE OF CONTENTS**


I. INTRODUCTION ……………………………………………………………………1

II. PROCEDURAL POSTURE……………………………………………………………2

III. PROCEDURAL MATTERS……………………………………………………………3

a. The General Standard for the Imposition of Sanctions under this Court's Inherent Jurisdiction for Misrepresentation of Factual Matters and Legal Authority…………..3

b. The General Standard for the Imposition of Sanctions under this Court's Inherent Jurisdiction for General Misconduct ……………………………………………………6

c. A Motion for Inherent Sanctions Is Not Subject to Federal Rules of Civil Procedure 11's Safe Harbor Rule……………………………………………………………7

d. This Court's Adjudication of Rule 60(b) Motion Does Not Pre-Empt the Filing and Adjudication of this Motion……………………………………………………..7

e. This Court Can and Must Impose Additional Non-Monetary and Monetary Sanctions……………………………………………………………………………8

f. To the Extent that the Court Denied the Rule 60(b) Motion because of Its Determination that Any Misconduct that Occurred Took Place During this Proceeding, this Court Can Levy Inherent Sanctions for Such Misconduct………………………..9

g. There Is No Divestiture of Jurisdiction due to the Appeal on the Rule 60(b) Motion..10

IV. ARGUMENT

a. This Court Should Impose Non-Monetary Sanctions on the Counsel for Stanford Defendants For Filing Pleadings with Misrepresented Facts and Legal Citation under its Inherent Jurisdiction and Its Standing Order…………………………………..12

b. This Court Should Impose Non-Monetary Sanctions on the Counsel for Stanford Defendants and Stanford Defendants For Filing Untruthful Declarations during the Adjudication of this Court's Rule 60(b) and Rule 11 Motions……………..………..13

c. This Court Should Impose Non-Monetary Sanctions for Litigation Abuse and Strike the Notice of Dismissal…………………………………………………………14

d. This Court Should Impose Non-Monetary Sanctions by Way of Striking the Notice of Dismissal for Misrepresentation of Law During the Obtaining of the Stipulated Dismissal ……………………………………………………………………15

e. Sanctions Are Particularly Proper because It Is Beyond Dispute that Defendants Will Continue Scheming Courts of Law Absent Sanctions…………………………….…15

III. CONCLUSION……………………………………………………………………..16

## TABLE OF AUTHORITIES

**Caselaw:**

*1142 Lewis v. Tel. Emps. Credit Union*,
87 F.3d 1537 (9th Cir.1996)……………………………………………………8, 15
*Anheuser–Busch, Inc. v. Natural Beverage Distribs*.,
69 F.3d 337 (9th Cir.1995) ……………………………………………………8
*B.K.B. v. Maui Police Dept*.,
276 F.3d 1099 (9th Cir. 2002)……………………………………………………5
*Ben E. Keith Co. v. Dining All., Inc.,*
80 F.4th 695 (5th Cir. 2023) ……………………………………………………5
*Casey v. Albertson's*,
362 F.3d 1254 (9th Cir. 2004)……………………………………………………3, 9
*Chambers v. NASCO, Inc*.,
501 U.S. 32 (1991). ……………………………………………………*passim*
*Cooke v. United States*,
267 U.S. 517 (1925) ……………………………………………………1
*Earl of Oxford's Case*
21 ER 485 (1615)……………………………………………………11
*Edmo v. Corizon, Inc*.,
949 F.3d 489 (9th Cir. 2020)……………………………………………………2
*Fallbrook Hosp. Corp. v. Cal. Nurses Association/National Nurses Org. Comm. (CNA/NNOC*),
2014 WL 4385465 (S.D. Cal. Sep. 4, 2014)……………………………………………………5
*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ……………………………………………………4, 6, 15
*Gallop v. Cheney*,
667 F.3d 226 (2d Cir.2012) ……………………………………………………9
*Griggs v. Provident Consumer Discount*,
459 U.S. 56 (1982)……………………………………………………10
*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc*.,
527 U.S. 308 (1999) ……………………………………………………11
*Haeger v. Goodyear Tire & Rubber Co.*,
793 F.3d 1122 (9th Cir. 2015)……………………………………………………8
*Haeger v. Goodyear Tire & Rubber Co*.,
906 F. Supp. 2d 938 (D. Ariz. 2012)……………………………………………………9
*Hecox v. Little*,
No. 1:20-cv-00184-DCN, 2025 WL 2917023 (D. Idaho Oct. 14, 2025)*; aff'd sub nom., West Virginia v. B.P.J*., 146 S. Ct. 2356 (2026) ……………………………………………………8
*Hester v. Vision Airlines, Inc*.,
687 F.3d 1162 (9th Cir.2012) ……………………………………………………8
*Hilao v. Est. of Marcos*,
95 F.3d 848 (9th.Cir. 1999)……………………………………………………11

*In re Itel Sec. Litig.*,
791 F.2d 672 (9th Cir. 1986)……………………………………………………4, 6
*In re Mroz*,
65 F.3d 1567 (11th Cir. 1995)……………………………………………………5
*Jeffrey C. Stone, Inc. v. Greenberg Traurig, LLP*,
2011 WL 995930 (D. Az. Mar. 21, 2011)……………………………………5
*Keathley v. Buddy Ayers Constr., Inc.*,
608 U.S. 647 (2026) ……………………………………………………………11
*Kloberdanz v. Martin*,
No. 98-16686, 1999 U.S. App. LEXIS 38084 (9th Cir. Nov. 29, 1999)……………7
*Link v. Wabash R. Co.*,
370 U.S. 626 (1962)……………………………………………………………4
*Liteky v. United States*,
510 U.S. 540 (1994) ……………………………………………………………1
*Lnu v. Blanche*,
177 F.4th 1014 (9th Cir. 2026)………………………………………………9
*Marrama v. Citizens Bank of Massachusetts*,
549 U.S. 365 (2007)……………………………………………………………4
*Offutt v. United States*,
348 U.S. 11 (1954)………………………………………………………………1
*Oregon R.S.A. No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership*,
76 F.3d 1003 (9th Cir. 1996). ……………………………………………………7
*Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000)……………………………………………………7
*Plotkin v. Pac. Tel. & Tel. Co.*,
688 F.2d 1291 (9th Cir. 1982)…………………………………………………10
*Procup v. Strickland*,
792 F.2d 1069 (11th Cir. 1986)…………………………………………………1
*Ready Transp., Inc. v. AAR Mfg., Inc.*,
627 F.3d 402 (9th Cir. 2010)……………………………………………………8
*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980)…………………………………………………………5, 7
*Stainback v. Mo Hock Ke Lok Po*,
336 U.S. 368 (1949)……………………………………………………………11
*Thompson v. Hous. Auth. of Los Angeles*,
782 F.2d 829 (9th Cir.1986) ……………………………………………………8
*Trump v. IRS.*,
836 F. Supp. 3d 1225 (S.D. Fla. 2026), *aff'd sub nom., Trump v. IRS*, No. 26-12692, 2026 WL 2931539 (11th Cir. Sep. 29, 2026). ……………………………7
*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*,
982 F.2d 363 (9th Cir. 1992)……………………………………………………5
*United States for Use & Benefit of Nasatka Barrier, Inc. v. Int'l Fid. Ins. Co.*,
No. CV168064, 2019 WL 6971381 (C.D. Cal. Apr. 2, 2019)…………………3, 9

*United States v. Claiborne*,
727 F.2d 842 (9th Cir. 1984)……..…………………………………...…..…..…………10
*United States v. Pitner*,
307 F.3d 1178 (9th Cir. 2002)……..………………………………………..……………10
*United States v. Primrose*,
No. 24-1462, 2026 WL 2834419 (9th Cir. Sep. 22, 2026).……..………………………...16
*United States v. Stoneberger*,
805 F.2d 1391 (9th Cir. 1986)……..…………………………………………..……………6
*Z.A. v. Blanche*,
837 F. Supp. 3d 1036 (N.D. Cal. 2026)……..………………………….. ………..…11
*Zambrano v. City of Tustin*,
885 F.2d 1473 (9th Cir. 1989)……..…………………………………………..……………5, 6

**Miscellaneous:**

William Shakespeare,
*Henry IV*, *Part 2*, act 3, sc. 2, ll. 1926-7……..………………………………...……………16
William Shakespeare,
*Othello* act 5, sc. 2, l. 216……..……………………………………..…..…………..…..16
HANNAH ARENDT,
*Lying in Politics*, CRISIS OF THE REPUBLIC (Harcourt, 1972 ed.)…….……………….. ………16
JUDITH BUTLER,
GENDER TROUBLE: FEMINISM AND SUBVERSION OF IDENTITY (Routledge, 1999 ed.).….16
CHIEF JUSTICE BURGER,
*What's Wrong With the Courts: The Chief Justice Speaks Out (address to ABA meeting, Aug. 10, 1970),* U.S. NEWS & WORLD REPORT. Vol. 69, no. 8…….……………………….1

## I. INTRODUCTION

It is an axiomatic truism by now that "[j]ustice should not only be done, but should manifestly and undoubtedly be seen to be done." *Liteky v. United States*, 510 U.S. 540, 564, 114 S. Ct. 1147, 1162 (1994) (KENNEDY, J., concurring), quoting *Ex parte McCarthy*, [1924] 1 K. B. 256, 259 (1923) (opinion of LORD HEWART, C.J., writing for a unanimous King's Bench) (internal quotation marks omitted). "Justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 99 L. Ed. 11, 75 S. Ct. 11 (1954). Preserving the image of courts of law in this Nation where a court of law is not a place to exhibit and exert one's excessive talents in deception and fraud mandates certain measures to be taken by courts of law—among them, chiefly, is a court's ability to sanction those that lack comprehension of the aforesaid, most basic, principle. If such were not the law, "[a] sense of confidence in the courts"—"essential to maintain the fabric of ordered liberty for a free people"— would be "destroy[ed]" "and do incalculable damage to society" by having "people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching[.]" CHIEF JUSTICE BURGER, *What's Wrong With the Courts: The Chief Justice Speaks Out (address to ABA meeting, Aug. 10, 1970)*, U.S. NEWS & WORLD REPORT. Vol. 69, no. 8. pp. 68, 71. After all, "inherent powers derive from [and exist because of] the **<u>absolute need</u>** of a trial judge to maintain order and **preserve the dignity of the court**." *Cooke v. United States*, 267 U.S. 517, 539, 69 L. Ed. 767, 45 S. Ct. 390 (1925) (emphasis added).

That is certainly why "[f]ederal courts have both the inherent power and the **constitutional obligation** to protect their jurisdiction from conduct which" **attempts** to render courts of law as places where fraud and deception rule and determine the course of justice. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (emphasis added). This Court's duty to the Constitution and the

rule of law, therefore, mandates that it punishes fraud perpetuated within and through it—that it does not reward it, **nor does it stand idly by**. "The Rule of Law, which is the bedrock of our legal system, promises that all individuals will be afforded the full protection of our legal system and the rights guaranteed by our Constitution." *Edmo v. Corizon, Inc.*, 949 F.3d 489, 505 (9th Cir. 2020) (BUMATAY, J., dissental[1]), quoting *Edmo v. Idaho Dep't of Corr.*, 358 F. Supp. 3d 1103, 1109 (D. Idaho 2018). Because not levying sanctions here would thwart the image of a court of law by creating an image where justice depends solely on the the level of talent in fraud of one's opponent, this Court must impose sanctions on the Defendants and their counsel[2]; anything less would take away from the perception of a court of law as a place where full protection of our legal system is extended to all…despite whatever fraud one's opponent perpetuates. Justice does not, and cannot, depend on the talent of gamesmanship of which one's opponent appears and is capable.

## II. PROCEDURAL POSTURE

This action has been dismissed with prejudice due to a putative voluntary dismissal notice filed by the parties. *See* Dkt. No. 64, 65. The Plaintiff has subsequently brought a motion to set aside the stipulated dismissal pursuant to Federal Rules of Civil Procedure 60(b), *see* Dkt. No. 66, which this Court has denied. *See* Dkt. No. 155. The Court's denial of the Rule 60(b) motion has been appealed to the United States District Court for the Ninth Circuit. *See Doe v. Smith, et al.*, no. 26-2976 (9th. Cir. __) (appeal pending).

---

[1] Though immaterial to this motion, Judge Bumatay's historical 'analysis' in much of his writing on the Eight Amendment in *Edmo* (and elsewhere) is a scholarly disaster, based on some shallow and speculative misreading of Justice Thomas' misreading of the purported original meaning of the Eight Amendment, lifted verbatim without much intellectual cognition that could be attributed to Judge Bumatay if not for some transient yet emphatic and perpetually-present lack of intellectual rigor thereof.

[2] Any reference to the defendants in this pleading excludes the Defendant County of Santa Clara and any defendant for which a Clerk's default has been entered.

After this Court's denial of the Rule 60(b) motion, Plaintiff brought another suit in this judicial district, entitled *Doe v. Board of Trustees of Leland Stanford Junior University*, no. 5:26-cv-03809-BLF (N.D. Cal. 2026) (*Doe II*), which has been dismissed and is pending appellate adjudication before the Ninth Circuit. Pending before the Ninth Circuit are questions related to whether the here-Defendants are state actors within the meaning of the Fourteenth Amendment and whether the Plaintiff's expulsion resulted in an impermissible constitutional violation in breach of the First and Fourteenth Amendments. *See Doe v. Board of Trustees of Leland Stanford Junior University*, no. 26-4997 (9th. Cir. __ ), Document Entries 56-2 (summarizing the issues in a proposed order).

The Court has subsequently granted, see Dkt. No. 206, the Plaintiff leave to file a motion for sanctions after the Plaintiff indicated that though Rule 60(b) relief might have been inappropriate because misconduct occurred *during* this proceeding[3], inherent sanctions in the form of striking the stipulated dismissal notice (among other measures) might be proper for this Court to sanction misconduct perpetuated on it by its putative officers.

This motion now comes before this Court for adjudication.

## III.PROCEDURAL MATTERS

### a. The General Standard for the Imposition of Sanctions under this Court's Inherent Jurisdiction for Misrepresentation of Factual Matters and Legal

---

[3] This Court wrote, "Even assuming that defendants acted with a retaliatory motive, Doe knew of the alleged retaliation before stipulating to dismiss this action. Indeed, she insists that Shaw revealed the retaliatory nature of his investigation on August 14, 2025, one full week before the dismissal. [...] Rule 60(b) (3) relief requires that the misconduct 'not be discoverable by due diligence before or during the proceedings.' ' *United States for Use & Benefit of Nasatka Barrier, Inc. v. Int'l Fid. Ins. Co*., No. CV168064, 2019 WL 6971381, at *2 (C.D. Cal. Apr. 2, 2019) (quoting *Casey v. Albertson' s*, 362 F.3d 1254, 1260 (9th Cir. 2004)). Doe asserts that Shaw's retaliation was not just discover*able* but actually discover*ed* prior to dismissal, so it cannot provide a basis for relief under Rule 60(b)(3)." Dkt. No. 155 at 10-11 (italics in the original).

**Authority**

District courts have inherent powers to impose sanctions on counsel and parties. *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). This inherent-jurisdiction sanctioning power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962). “A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.” *Chambers*, 501 U.S. at 44-5. Rules and statutes do not displace a court's inherent power to impose sanctions for bad-faith conduct. *Chambers*, 501 U.S. at 46-47. “At the very least, the inherent power must continue to exist to fill in the interstices." *Id*. at 46. Under the inherent power, "every federal court" may sanction "abusive litigation practices." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 1112, 166 L. Ed. 2d 956 (2007).

A "district court has the inherent authority to impose sanctions for bad faith, which includes a **broad range** of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (emphasis added). "The imposition of sanctions under the inherent power of the court is proper where counsel [or a party] has 'willfull[y] abuse[d] judicial process' or otherwise conducted litigation in bad faith." *In re Itel Sec. Litig*., 791 F.2d 672, 675 (9th Cir. 1986) (citations omitted) (second and third alterations in the original). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant [or their counsel] is substantially motivated by vindictiveness, obduracy, or *mala fides*,” sanctions is proper. *Id*. (citation omitted).

The Court's inherent authority allows for sanctions when there is evidence of bad faith,

willfulness, or fault by the offending party. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992)). Courts must exercise this inherent power with "restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.”). Courts may not impose sanctions for conduct that is merely "inadvertent." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1485 (9th Cir. 1989).

This Court has authority to issue sanctions based on legal and factual misrepresentations made to the Court pursuant to the Court's inherent authority (and Rule 11, which the Plaintiff does not invoke herein). *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107-08 (9th Cir. 2002). Misrepresentation of factual and legal matters and breach of duty of care is a proper basis for imposing sanctions under a court’s inherent jurisdiction. *Ibid*. Misstatements of either fact or law can support sanctions based on the court's inherent power. *See, inter alia, Jeffrey C. Stone, Inc. v. Greenberg Traurig*, LLP, 2011 WL 995930 (D. Az. Mar. 21, 2011); *Fallbrook Hosp. Corp. v. Cal. Nurses Association/National Nurses Org. Comm. (CNA/NNOC)*, 2014 WL 4385465, at *5 (S.D. Cal. Sep. 4, 2014); *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 703 (5th Cir. 2023)(affirming inherent-power sanctions where attorney misrepresented a fact).

“And the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct[,]” *Chambers*, 501 U.S. at 49, “for these rules are not substitutes for the inherent power.” *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). This Court is *not* required to “first […] apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct” because that “would serve only to foster extensive and needless satellite litigation, which is contrary to the aim

of the Rules themselves." *Chambers*, 501 U.S. at 51.

This Court has aptly summarized the nature of an inherent-power sanction for misrepresentation: "Citations and factual assertions must be completely accurate. Misrepresentations of law or fact, however subtle, may result in sanctions." Civil Cases Standing Order of the Honorable P. Casey Pitts at 2. "To insure that restraint is properly exercised, [however] we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power." *Zambrano v. Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989). As such, after finding that "[m]isrepresentations of law or fact, however subtle" existed, this Court must make a finding of bad faith before imposing inherent-power sanctions because a "specific finding of bad faith by the trial judge or magistrate must accompany the sanction order in all such cases." *Zambrano, ibid.,* quoting *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986).

**b. The General Standard for the Imposition of Sanctions under this Court's Inherent Jurisdiction for General Misconduct**

It has been established *supra* that a district court has the inherent authority to impose sanctions for "a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. We may now move to elucidate upon what "improper" means herein. "[*In re Itel Securities Litigation*, 791 F.2d 672 (9th Cir.1986)] teaches that sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection. In *Itel,* the improper purpose was the attempt to gain tactical advantage in another case." *Fink*, 239 F.3d at 992. "This approach is in harmony with *Roadway [Express],* where the Supreme Court made clear that courts possess inherent power to impose sanctions for 'willful abuse of judicial processes.' 447 U.S. at 766, 100 S.Ct. 2455." *Fink*, 239 F.3d at 992. As such, "improper conduct" herein is not circumscribed by a *what* but more of a *why* and *for what reason*.

**c. A Motion for Inherent Sanctions Is Not Subject to Federal Rules of Civil Procedure 11's Safe Harbor Rule**

Defendants seem to hold onto the position that Rule 11's so-called safe-harbor rule applies to a motion for inherent sanctions. *See Doe II*, Dkt. No. 130 at 1-4 (lying to and scheming another judicial officer in this judicial district to indicate that *this* Court putatively held that inherent sanctions motions are subject to Rule 11's safe-harbor rule) (pleading signed by Emily Young, Esq.). It does not. The only procedural requirement "[p]rior to issuing an order imposing sanctions under […] inherent powers [is that] a district court must […] provide an attorney with notice and an opportunity to be heard[4]." *Kloberdanz v. Martin*, No. 98-16686, 1999 U.S. App. LEXIS 38084, at *5 (9th Cir. Nov. 29, 1999), citing *Roadway Express*, 447 U.S. at 767 and *Oregon R.S.A. No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir. 1996). As such, the Plaintiff is filing this motion before having complied with Rule 11's procedural requirements because this is not a Rule 11 sanctions motion and Rule 11 does not "displace" a court's inherent power to impose sanctions. *Chambers*, 501 U.S. at 46-47.

**d. This Court's Adjudication of Rule 60(b) Motion Does Not Pre-Empt the Filing and Adjudication of this Motion**

This Court's ruling and denial of the Plaintiff's earlier Rule 60(b) ruling does not have preclusive or preëmptive effect on any inherent-sanctions motion because both the questions and the standard under which those motions are assessed are different. *See, e.g., Trump v. IRS.*, 836 F. Supp. 3d 1225, 1253 n. 59 (S.D. Fla. 2026), *aff'd sub nom., Trump v. IRS*, No. 26-12692, 2026 WL 2931539 (11th Cir. Sep. 29, 2026).

---

[4] The Plaintiff respectfully requests that the Court not vacate the hearing on this motion *sua sponte*. *See* Civil Cases Standing Order of the Honorable P. Casey Pitts at 3. At any event, assuming, *arguendo*, the Court had vacated the hearing, procedural requirements of an inherent-sanctions motion would still have been satisfied. *See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).

**e. This Court Can and Must Impose Additional Non-Monetary and Monetary Sanctions**

District courts have the inherent power to impose various non-monetary sanctions. *See Thompson v. Hous. Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir.1986) (inherent power includes power to "impose sanctions including, where appropriate, default or dismissal"); *Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir.1995) (dismissal pursuant to inherent powers); *Hester v. Vision Airlines, Inc*., 687 F.3d 1162 (9th Cir.2012) (affirming order striking answer and entering default judgment). However, even if a given sanction is available, the scope of the sanction must also be appropriate." *1142 Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1558 (9th Cir.1996). A sanction should be "carefully fashioned to deny [the party] the fruits of its misconduct[.]" *Id*.

As exampled *supra*, there is a large succession of cases where striking of a pleading from the docket of a court is part of a non-monetary inherent-power sanction a court can levy, given this Court's inherent supervisory power, *see Ready Transp., Inc. v. AAR Mfg., Inc*., 627 F.3d 402, 404 (9th Cir. 2010), over the documents on its docket. And though a Rule 45 dismissal notice is said to be 'self-effectuating,' it still is a pleading on the docket of this Court that this Court can strike. *See Hecox v. Little*, No. 1:20-cv-00184-DCN, 2025 WL 2917023 at *11 (D. Idaho Oct. 14, 2025); *aff'd sub nom., West Virginia v. B.P.J.*, 146 S. Ct. 2356, 2373 n.4 (2026) (affirming the district court striking the notice of dismissal). Alternatively, this Court can vacate the 'judgement' of dismissal as an inherent-power sanctions. "Courts have the inherent power to […] vacate judgments[.]" *Haeger v. Goodyear Tire & Rubber Co.,* 906 F. Supp. 2d 938, 975 (D. Ariz. 2012).

Beyond striking the notice of dismissal from its docket, this Court can levy a wide range of non-monetary sanctions. For instance, this Court can order defendants and and their counsel to

provide the "notice of the sanctions imposed upon [them] in this case ... to any federal court in this Circuit before which [they] appears[] or seek[] to appear for a period of [time]" *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1142 (9th Cir. 2015), quoting *Gallop v. Cheney*, 667 F.3d 226 (2d Cir.2012) (internal quotation marks omitted). *See also Lnu v. Blanche*, 177 F.4th 1014, 1032 (9th Cir. 2026). This Court could also order the "Clerk of Court to serve a copy of [its] Order on the State Bar of California and any other applicable licensing authorities for further proceedings as appropriate." *Id*. It can also refer defense counsels to this Court's Standing Committee. *See* Civil L.R. 11-6 (e). And this Court can have a copy of its order be delivered to the U.S. Attorney's Office for the Northern District of California for prosecution-determination under 18 U.S.C. § 1621, 18 U.S.C. § 1623, 18 U.S.C. § 1622, 18 U.S.C. § 1001.

**f. To the Extent that the Court Denied the Rule 60(b) Motion because of Its Determination that Any Misconduct that Occurred Took Place During this Proceeding, this Court Can Levy Inherent Sanctions for Such Misconduct**

As quoted *ante* at note 2, this Court noted that, "Even assuming that defendants acted with a retaliatory motive, Doe knew of the alleged retaliation before stipulating to dismiss this action. Indeed, she insists that Shaw revealed the retaliatory nature of his investigation on August 14, 2025, one full week before the dismissal. [...] Rule 60(b) (3) relief requires that the misconduct 'not be discoverable by due diligence before or during the proceedings.' ' *United States for Use & Benefit of Nasatka Barrier, Inc. v. Int'l Fid. Ins. Co*., No. CV168064, 2019 WL 6971381, at *2 (C.D. Cal. Apr. 2, 2019) (quoting *Casey v. Albertson's*, 362 F.3d 1254, 1260 (9th Cir. 2004)). Doe asserts that Shaw's retaliation was not just discover*able* but actually discover*ed* prior to dismissal, so it cannot provide a basis for relief under Rule 60(b)(3)." Dkt. No. 155 at 10-11 (italics in the original). While Rule 60(b)(3) relief *does* require misconduct to have been perpetuated *after* a final judgement or order or proceeding, inherent-power sanctions exist precisely to address and rectify misconduct that

occurred *during* judicial proceedings.

After noting that "I don't know that any of this really focuses on what happened after the judgement [*id est*, 'proceeding' of dismissal] was entered[,] *see* Hearing Tr. 12: 15-17, April 28, 2026, this Court has also noted, "I think that ultimately, you know, the core driving concern for me was, as I laid out earlier, is that in some ways, the circumstances that we're talking about now were contemplated in the written record between the parties prior to the entry of the stipulation of dismissal. And so I— in my view, under those circumstances[—]find a **Rule 60 motion** is inappropriate." *Id*. at 35: 10-17 (emphasis added). As such, to the extent that this Court denied the Rule 60(b) relief *because* the misconduct did not occur *after* the proceeding, this Court should now impose inherent-power sanctions for misconduct that occurred during the proceeding.

**g. There Is No Divestiture of Jurisdiction due to the Appeal on the Rule 60(b) Motion**

Divestiture of jurisdiction because of the jurisdictional significance of a notice of appeal filed on this Court's ruling on the Rule 60(b) motion, *see Griggs v. Provident Consumer Discount,* 459 U.S. 56, 58, 103 S. Ct. 400, 401, 74 L. Ed. 2d 225 (1982), does not apply on matters that are not on appeal. The "divestiture of jurisdiction rule is not based upon statutory provisions or the rules of civil or criminal procedure. Instead, it is a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having **the same issues** before two courts at the same time." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984) (emphasis added). *See also United States v. Pitner,* 307 F.3d 1178, 1183 n.5 (9th Cir. 2002); *Plotkin v. Pac. Tel. & Tel. Co*., 688 F.2d 1291, 1293 (9th Cir. 1982).

The only question before the Ninth Circuit is whether this Court abused its discretion in denying the Rule 60(b) motion **in not setting aside the 'proceeding' of dismissal**. More particularly, the question is whether this Court erred in concluding that because "the Federal Rules

have the force of statute," *Hilao v. Est. of Marcos*, 95 F.3d 848, 852 (9th Cir. 1996)[5], it might foreclose a certain remedy in equity. But *see, cf., Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383, 69 S. Ct. 606, 614, 93 L. Ed. 741 (1949) (emphasis added) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, **the substantive principles of Courts of Chancery remain unaffected**.").[6] And relief at law does not, and can never, override relief in equity. This has been the **black-letter law since early 17th century**. *See Earl of Oxford's Case,* 21 ER 485 (1615) (opinion of LORD ELLESMERE)[7]. *See, accord., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 322, 119 S.Ct. 1961, 1970 (1999) (SCALIA, J., writing for the majority).

---

[5] But *see, contra,* Hearing Tr. 7: 14-22, April 28, 2026 ["That is the way I read the case law and interpret that rule, so I have to fit my order into one of those, so it's not -- it's not simply procedural [as the Plaintiff has claimed] in that sense. [In colloquy with the Plaintiff,] you know, the federal rules do have some substantive content and, and they may be in doing -- you know, they have the -- because they're, they're approved effectively by Congress, they have the effect of statutes that they, they sit as statutes, so I do think I have to fit it into one of those boxes."].

[6] So, for instance, although this Court cannot quash a grand jury subpoena it has not issued under its own seal under Federal Rules of Criminal Procedure 17, to the extent that the court finds historical availability of quashal power in the English Chancery (which does, indeed, exist), the Court can quash such a subpoena as a relief in equity, even if that relief would 'clash' with relief at law…unless there is some indication that the Congress *expressly* curtailed that very power of equity. *See Z.A. v. Blanche*, 837 F. Supp. 3d 1036, 1065 (N.D. Cal. 2026). As such, the question is not whether law can "***displace***" equity (it cannot—*ever*) but whether the Congress explicitly curtailed a certain kind of a relief or remedy in equity, by limiting the power accorded to federal courts via the Judiciary Act of 1789. So, say, the litigants in *Z.A.* move to quash the grand jury subpoena as a remedy in equity *in this Court* and not before the Court under whose seal it was issued…and not under Rule 17: The question is not whether law displaces equity, but whether Congress actually curtailed the quashal equity jurisdiction. And Rule 17 imposes requirements for the quashal relief *at law*, not *in equity*.

[7] Indeed, Lord Ellesmere was infamous for too often awarding relief that effectively 'overruled' judgements of the King's Bench and often so 'overruled' the judgements of, notably, Lord Cooke, then-Chief Justice, and he eventually persuaded King James for Lord Cooke's dismissal from the bench. Lord Ellesmere believed, firmly, that the Royal Prerogative (the authority under which the Lord High Chancellor operated) always took precedence over any remedy and proceeding at law. Lord Ellesmere, however, became particularly concerned later in life with the contours of the unenumerated powers driven from the Royal Prerogative and sought to carve out the jurisdictional outline of the Royal Prerogative. One might see the resemblance of Lord Ellesmere's worry in *Keathley v. Buddy Ayers Constr., Inc.,* 608 U.S. 647, 657, 146 S. Ct. 1532, 1540, 225 L. Ed. 2d 214 (2026) (THOMAS, J., concurring) (suggesting that there is no jurisdictional basis for judicial estoppel). But both Justice Thomas and Justice Gorsuch err in searching for a jurisdictional conferral *at law* for a remedy *in equity*. Advocating that the law (and the remedies it can provide) stay put in the early 14th century yet not knowing much about such jurisprudence is irresponsible at best and nauseating at worst. It is more maddening in the case of Justice Gorsuch, who does, indeed, hold a DPhil in jurisprudence.

And the question before the Ninth Circuit is whether this Court misconstrued the estoppel relief that was ordinarily and historically available in the English Chancery—and, more specifically, whether this Court misconstrued the relief of estoppel by convention available in federal equity power with estoppel by acquiesce (which have been subsumed under the banner of equitable estoppel or equitable in pais as a matter of convention later in American jurisprudence). These have nothing to do with whether misconduct exists in the context of inherent-power sanctions and this Court's inherent power strike pleadings from its docket. There is no divestiture of jurisdiction here.[8] At the bottom, the Plaintiff does not move this Court to amend its order of not *setting aside* the notice of dismissal (instead is moving to *strike* it), nor does the Plaintiff move this Court to amend its ruling on or analysis for Rule 60(b) relief and misconduct that would entitle one to relief under Rule 60(b).

## IV. ARGUMENT

### a. This Court Should Impose Non-Monetary Sanctions on the Counsel for Stanford Defendants For Filing Pleadings with Misrepresented Facts and Legal Citation under its Inherent Jurisdiction and Its Standing Order

The Court must impose sanctions on defendants because they did not file even *one* pleading in this Court that did not have either misrepresented recitations of facts or law. The table below attempts to collect defendants' fraud, but given the volume, and to the extent that the Plaintiff missed more fraud present on the docket of this case, this Court has the jurisdiction to *sua sponte* add instances of fraud to the list below after providing the defendants an additional opportunity to respond to their fraud not contained herein.

Plaintiff requests judicial notice over Docket Numbers 88 and 91 of *Doe II*. Particularly, the Plaintiff seeks judicial notice over, and incorporates by reference herein, pages Docket Number

[8] Even assuming, *arguendo*, there was, this would be an apt circumstance to issue an indicative ruling, but because there is no divestiture of jurisdiction, it is unnecessary to entertain this discussion.

91-1, pages 2 through 12[9], and pages 20 through 25, and the supporting exhibits at Document Number 91 thereto. The Plainitff seeks judicial notice over Docker Number 164 at 1: 15-22. This Court can take judicial notice over the existence of arguments made in the docket of other federal cases and courts. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992). Plaintiff's request for judicial notice fully complies with the requirements of *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018).[10]

Defendants' misrepresentation of material facts and law is a proper basis for inherent-power sanctions to be levied thereto.

There is also evidence to support that all of these misrepresentations were made with *mala fides*. As this Court has acknowledged, Doe "had her fiancé serve defense counsel with a 26-page motion for sanctions on August 13, 2025[,]" *see* Dkt. No. 155 at 11, but instead of correcting her conwomanship, defense counsel decided to double down. If counsel did not actually want to deceive this Court, she would have corrected her corruption of factual matters. *Mala fides* is apparent and clear as day; defense counsel *wanted* to (and indeed did) con this Court. However artful counsel's conwomanship was—that artfulness does not preclude inherent-power sanctions.

**b. This Court Should Impose Non-Monetary Sanctions on the Counsel for Stanford**

[9] This Court ruled that Doe may not "circumvent the page limits by incorporating by reference other documents." *See* Dkt. No. 205, citing *Pagtakhan v. Doe*, No. 08-CV-2188, 2013 WL 3052865, at *5 (N.D. Cal. June 17, 2013). The incorporated by reference herein material is around 10 pages, and Doe's motion is around 15 pages, so Doe is not "circumventing" the page limit with her request for judicial notice.

[10] It is important to note that this Court can always take judicial notice over contested *claims* made by a party without that judicial notice being over the purported truthfulness of claims contained therein—and after such a judicial notice, this Court can resolve a contested matter of whose existence over which it took judicial notice. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001). At any event, *Khoja* was about judicial notice while ruling on a motion to dismiss, not an inherent-powers sanction.

**Defendants and Stanford Defendants For Filing Untruthful Declarations during the Adjudication of this Court's Rule 60(b)**

This Court should also impose sanctions for filing and writing perjurious declarations on the docket of this Court, which include:

1. Declaration of Michael Devlin at ECF No. 109-1.
    a. "Ms. Doe [n]ever rais[ed] this topic at all." ECF No. 109-1 at paragraph 7.

This statement is perjurious because there is evidence that Doe *did indeed* "rais[e] this topic" of Mr. Shaw's retaliation. *See* Exhibit A.

2. Declaration of Richard Harding Shaw, Jr. at ECF No. 109-2.
    a. "Identification card that […] came from the criminal file[.]" ECF No. 109-2 at paragraph 8.
    b. "I was not directed to do this by Stanford's General Counsel[.]" ECF No. 109-2 at paragraph 9.

Both of these statements are perjurious. The identification card did not "come from" "*the criminal file*[.]" And if Mr. Shaw's statement was true that he was not "directed" by "Stanford's General Counsel" then the initial communication that was directed to Mr. Shaw to investigate the Plaintiff's admission application would not be protected by attorney-client privilege. *See* Exhibit B.

Beyond the obvious reality that perjuring oneself, and suborning it thereof, always carries *mala fides*, the extent the defendants went to attempt to occlude their perjury also underscores the strength of the *mala fides* in question. Defendants purposefully avoided releasing—allegedly "inadvertently"—the only email that would have showed that Mr. Devlin's declaration is a product of perjury. *See* ECF No. 204-2.

**c. This Court Should Impose Non-Monetary Sanctions for Litigation Abuse as Retaliation and Strike the Notice of Dismissal**

Defendants' retaliation-as-misconduct in the form of expelling the Plaintiff for filing this suit is a proper basis for a finding of willful misconduct. As this Court would recall, to the extent that the defendants strategically employed the pressure driven from their supposed 'admissions investigation' to obtain a stipulation for dismissal, and expelled the Plaintiff three hours after the notice of dismissal was filed in this Court, striking the notice of dismissal would only "deny [the defendants] the fruits of [their] misconduct[,]" *1142 Lewis,* 87 F.3d at 1558, because they have possessed "improper purpose [in an] [...] attempt to gain tactical advantage." *Fink*, 239 F.3d at 992.

**d. This Court Should Impose Non-Monetary Sanctions by Way of Striking the Notice of Dismissal for Misrepresentation of Law During the Obtaining of the Stipulated Dismissal**

As set in the declarations filed concurrently with this motion, see Administrative Motion to Lodge Declarations for *In Camera* Review, defendants obtained the stipulated dismissal via fraud and by violating California Rules of Professional Conduct, Rule 4.1. Striking the dismissal notice under these circumstances would precisely "deny [the defendants] the fruits of [their] misconduct[.]" *1142 Lewis,* 87 F.3d at 1558. And the facts of the declaration make the inference of bad faith possible insofar as the defendants went to great lengths to ensure that the Plaintiff was not aware that they were misrepresenting the law to her in order to threaten the Plaintiff with collecting costs in the process of obtaining a stipulation for dismissal by making her believe that they would be able to recover their costs even when they could not.

**e. Sanctions Are Particularly Proper because It Is Beyond Dispute that Defendants Will Continue Scheming Courts of Law Absent Sanctions**

One salient point about inherent-power sanctions is that it would deter future sanctionable conduct. There is very little reason ton believe that defense counsel's conning of courts of law would halt absent sanctions. Indeed, because of the absence of such sanctions, defense counsels continued to scheme courts of law. *See, among many others,* ECF No. 169 at 2: 3-5 (scheming

another judicial officer in this district to believe that this Court imposed a pre-filing injunction against the Plaintiff when this Court did not). At the end of the day, nothing is going to prevent defense counsel from continuing to be a conwoman-with-an-undeserved-law-license unless this Court imposes necessary sanctions.

## III. CONCLUSION

At the end of the day, the Plaintiff does not seek this Court to answer the age-old question, "Lord! Lord! how subject we […] men are to this vice of lying[,]" William Shakespeare, *Henry IV*, *Part 2* , act 3, sc. 2, ll. 1926-7, and why "we men" are "subject" thereto, but she merely moves this Court to conclude, as it must, that defendants and their counsel "'told a lie[11], an odious, damned lie,' William Shakespeare, *Othello* act 5, sc. 2, l. 216." *United States v. Primrose*, No. 24-1462, 2026 WL 2834419, at *14 (9th Cir. Sep. 22, 2026).

This Court must, if (a hefty *if*) the Judiciary has any chance of survival in a world where "men" whose "vice of lying" rule the course of legal proceedings, teach the defendants a long-delayed lesson: "The trouble with lying and deceiving is that their efficacy depends entirely upon a clear notion of the truth that the liar and deceiver wishes to hide." HANNAH ARENDT, *Lying in Politics*, CRISIS OF THE REPUBLIC (Harcourt, 1972 ed.). That dependence on truth on which the defendants' gamesmanship always ironically and comedically relied, then, should "spawn[] unexpected permutations of itself[,]" "and a vital instability [of truth] is [and must be] produced by that performative surprise." JUDITH BUTLER, GENDER TROUBLE: FEMINISM AND SUBVERSION OF IDENTITY (Routledge, 1999 ed.).

---

[11] A more accurate description would be be the pluralized version of the word in the question, but the Plaintiff does not find in her feeble mind the will to edit Shakespeare's verbiage.

Accordingly, the Plaintiff moves this Court to (1) refer Khrystyn Rhyannon McGarry[12] to the Standing Committee of this Court under Civil L.R. 11-6 (e)[13], (2) order the Clerk of the Court to transmit a copy of this Court's order to the State Bar of California for the State Bar to consider levying necessary sanctions against Khrystyn Rhyannon McGarry, (3) strike ECF No. 64 from the docket of this case, (4) order all defense counsel who entered an appearance on this case (except the Defendant County) to be required to serve this Court's order imposing sanctions with any appearance in any court within this Circuit, (5) order the Clerk of this Court to transmit a copy of this Court's sanctions order to the United States Attorney for this judicial district for possible prosecution determination[14] against non-parties Shaw and Devlin, and (6) any further relief this Court deems just and proper.

Respectfully submitted,

DATED: September 17, 2026.

*/s/ Jane Doe*

JANE DOE
*In Propria Persona*

[12] Although courts usually impose monetary sanctions on an entire defense team, non-monetary sanctions, especially those with respect to violating Rules of Professional Conduct, can be imposed on a particular counsel.

[13] To the extent that this Court can recommend an imposition of a particular penalty to the Standing Committee, the Plaintiff moves that this Court recommend that Khrystyn R. McGarry's license to practice law in the Northern District of California be revoked for a period of 3 years for conning judicial officers in this district, repeatedly and with narcissistic jubilance.

[14] Plaintiff does not include any discussion that Messrs. Shaw and Devlin's declarations are actually perjurious as a matter of criminal law because that is a determination that must be left to the court that is adjudicating that matter of criminal law.